# EXHIBIT A



# The Cincinnati Insurance Company
### A Stock Insurance Company

**Headquarters:** 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address:** P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

NEW

Previous Policy Number

# HOSPITALITY PROGRAM
# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

| POLICY NUMBER | **ETD 051 52 30 / ETA 051 52 30** |
|---|---|

**NAMED INSURED** THE BEND HOTEL DEVELOPMENT COMPANY LLC
ATTN: RAY STODDARD

**ADDRESS** 111 BEND BLVD
(Number & Street, EAST MOLINE, IL 61244-5501
Town, County,
State & Zip Code)

This is a true and certified copy of the complete policy:

*Jennifer Baker*
Jennifer Baker, Assistant Vice President

**Policy Period:** At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
Policy number: **ETD 051 52 30**      FROM: **12-12-2018**   TO: **12-12-2021**

**Automobile and / or Garage**
Policy number: **ETA 051 52 30**      FROM: **12-12-2018**   TO: **12-12-2019**

Agency   **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**

City   **DAVENPORT, IA**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS: (show numbers)

| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IA102A | 09/08 | SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IA4399IL | 07/11 | NOTICE TO POLICYHOLDERS - ILLINOIS RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT |
| IA4433IL | 03/17 | IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS |
| IP409IL | 01/91 | IMPORTANT INFORMATION TO POLICYHOLDERS ILLINOIS |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4156IL | 01/18 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| IA4210IL | 01/18 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IA4382IL | 07/17 | ILLINOIS CHANGES |
| IA4395IL | 04/17 | ILLINOIS CHANGES - CIVIL UNION |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| AA505 | 03/06 | BUSINESS AUTO COVERAGE PART DECLARATIONS |

FORMS APPLICABLE TO ALL COVERAGE PARTS: (show numbers)

```
XSC504    05/10 EXCESS LIABILITY COVERAGE PART DECLARATIONS
HC502     01/18 CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS
HC503     01/18 CINCINNATI NETWORK DEFENDER™ COVERAGE PART DECLARATIONS
```

---

01-02-2019 12:12

Countersigned _____  By _____
                        (Date)                              (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**IL 00 17 11 98**        Copyright, Insurance Services Office, Inc., 1998

CIC0003

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: **ETD 051 52 30 / ETA 051 52 30**        Effective Date: **12-12-2018**

Named Insured: **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part **W/EBC** | $ 23,326 |
| Commercial General Liability Coverage Part | $ |
| Commercial Auto Coverage Part | $ 2,794 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 2,500 |
| **DATA DEFENDER COVERAGE PART** | $ 143 |
| **NETWORK DEFENDER COVERAGE PART** | $ 187 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 196 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 29,146 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **ANNUAL** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

CIC0004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 111 BEND BOULEVARD | | | |
| | EAST MOLINE, IL 61244 | | | |

**IA 904 04 04**

CIC0005

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

**Premium:**

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

**Federal Participation:**

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

**Cap on Insurer Participation:**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY <u>AND</u> (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# NOTICE TO POLICY HOLDERS
# ILLINOIS RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

As of June 1, 2011, the Illinois Religious Freedom Protection and Civil Union Act (Civil Union Act) allows opposite- and same-sex couples to enter into a civil union.

The Civil Union Act defines a "civil union" as a legal relationship between two persons, either of the same or opposite sex. Further, a "party to a civil union" means and shall be included in any definition or use of the terms spouse, family, immediate family, dependent, next of kin, and other terms that denote the spousal relationship.

Under the Civil Union Act, a person in a civil union is entitled to the same legal obligations, responsibilities, protections and benefits as are afforded or recognized by Illinois law to spouses whether they derive from statute, administrative rule, policy, common law or any other source of civil law.

For purposes of insurance laws, policies, eligibility and benefits governed by Illinois law, all spouses are treated identically.

**IA 4399 IL 07 11**

# IMPORTANT POLICYHOLDERS NOTICE - ILLINOIS

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to contact the Illinois Department of Insurance, it maintains a Consumer Division at:

122. S. Michigan Ave., 19th Floor, Chicago, Illinois 60603; and

320 West Washington Street, Springfield, Illinois 62767,

You may also reach the Illinois Department of Insurance at http://insurance.illinois.gov; or

312-814-2420 or 217-782-4515.

Should you have any complaints arise regarding this insurance you may contact the following:

Complaint Department of The Cincinnati Insurance Company at P.O. Box 145496, Cincinnati, Ohio, 45250-5496.

Public Service Section of the Department of Insurance at Illinois Department of Insurance, Consumer Division, Springfield, Illinois, 62767.

**IA 4433 IL 03 17**

CIC0008

## IMPORTANT INFORMATION TO POLICYHOLDERS

### ILLINOIS

In the event you need to contact someone about this policy for any reason, please contact your agent. If you have additional questions, you may contact the insurance company issuing this policy at the following address or telephone collect:

The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Casualty Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

The Cincinnati Indemnity Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone (513) 870-2278

**IP 409IL (1/91)**

CIC0009

# THE **CINCINNATI INSURANCE COMPANY**
# THE **CINCINNATI CASUALTY COMPANY**
# THE **CINCINNATI INDEMNITY COMPANY**

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company. The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

CIC0010

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

**A.** The **Cancellation** Common Policy Condition is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** You have violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

   If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you at your last mailing address known to us, any mortgagee or lienholder listed on the policy and to the broker, if known, or agent of record, if known. Proof of mailing will be sufficient proof of notice.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we or the first Named Insured cancel, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. Our notice of cancellation will state the reason for cancellation.

8. **Real Property Other Than Residential Properties Occupied by 4 Families or Less**

   The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

   If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation if:

   **a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

   **b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

      **(1)** Seasonal unoccupancy; or

      **(2)** Buildings under repair, construction or reconstruction, if properly

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

CIC0011

secured against unauthorized entry.

**c.** The building has:

**(1)** An outstanding order to vacate;

**(2)** An outstanding demolition order; or

**(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named insured(s).

**9. Residential Properties Occupied by 4 Families or Less**

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**10.** For insurance provided under the Commercial Property Coverage Part, the following applies:

**GRAIN IN PUBLIC GRAIN WAREHOUSES**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew or continue this policy, we will mail you, at your last mailing address known to us, your broker, if known, or your agent of record, if known and any mortgagee or lienholder listed on the policy written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

Proof of mailing will be sufficient proof of notice.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**2.** The following provision applies only if this policy covers residential properties occupied by 4 families or less:

**a.** If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

**(1)** The policy was obtained by misrepresentation or fraud;

**(2)** The risk originally accepted has measurably increased; or

**(3)** You received 60 days' notice of our intent not to renew as provided in **1.** above.

**b.** If this policy has been issued to you and in effect with us for less than 5 years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

**IA 4156 IL 01 18**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 2 of 2**

CIC0012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM - CLAIMS-MADE**
**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE FORM**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**EMPLOYEE BENEFIT LIABILITY COVERAGE FORM**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE FORM**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM**
**HOLE-IN-ONE COVERAGE FORM**
**ILLINOIS CONTRACTORS' LIMITED WORKSITE POLLUTION LIABILITY COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**SEPTIC SYSTEMS DESIGN INSPECTION ERRORS AND OMISSIONS COVERAGE PART**

**A.** **Cancellation** (Common Policy Conditions) is deleted in its entirety and replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to you, at your last mailing address known to us, written notice stating the reason for cancellation. Proof of mailing will be sufficient proof of notice. If we cancel:

   **a.** For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   **b.** For a reason other than nonpayment of premium, we will mail the notice at least:

      **(1)** 30 days prior to the effective date of cancellation if the policy has been in effect for 60 days or less.

      **(2)** 60 days prior to the effective date of cancellation if the policy has been in effect for more than 60 days.

3. If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   **a.** Nonpayment of premium;

   **b.** The policy was obtained through a material misrepresentation;

   **c.** Any insured has violated any of the terms and conditions of the policy;

   **d.** The risk originally accepted has measurably increased;

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   **f.** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the insurance laws of this State.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0013

**4.** Notification of cancellation will also be sent to your broker, if known, or agent of record, if known.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled we will send the first Named Insured any premium refund due. If we or the first Named Insured cancels, the refund will be pro rata. The cancellation will be effective even if we have not offered a refund.

**B.** The following is added and supersedes any provision to the contrary:

**1. NONRENEWAL**

**a.** If we decide not to renew or continue this policy, we will mail you, at your last mailing address known to us, written notice, stating the reason for the nonrenewal, at least:

**(1)** 60 days before the end of the policy period. for all policies other than that described in **a.(2)**; or

**(2)** 30 days before the end of the policy period for all commercial excess and umbrella liability policies as defined in 215 ILL. COMP. STAT.143.13 (h). The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

**b.** Proof of mailing will be sufficient proof of notice.

**c.** Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known.

**d.** If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**e.** If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

For the purposes of Paragraph **a.(2)**, commercial excess and umbrella liability policies are defined in 215 ILL. COMP. STAT. 143.13.(h) as follows:

(h) "Commercial excess and umbrella liability policy" means a policy written over one or more underlying policies for an insured:

**(1)** that has at least 25 full-time employee at the time the commercial excess and umbrella liability policy is written and procures the insurance of any risk or risks, other than life, accident and health, and annuity contracts ,as described in clauses (a) and (b) of Class 1 of Section 4 and clause (a) of Class 2 of Section 4, by use of the services of a full-time employee acting as an insurance manager or buyer; or

**(2)** whose aggregate annual premiums for all property and casualty insurance on all risks is at least $50,000.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** **Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C.** **Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D.** **Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

**IA 4238 01 15**

CIC0015

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

|  |  |
|---|---|
| Secretary | President |

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

CIC0016

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART
> STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The 2 year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

**1.** The following in **a.** and **b.**, then Paragraphs **2.** and **3.** apply:

**a.** Real property used principally for residential purposes up to and including a four family dwelling; or

**b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

**2.** The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

**a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

**b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

**(1)** You demanded the appraisal; and

**(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**3.** The **Concealment, Misrepresentation or Fraud** Condition is replaced by the following:

CONCEALMENT, MISREPRESENTATION OR FRAUD

**a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

**(1)** Was made with actual intent to deceive; or

**(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

**b.** We do not provide coverage under this Coverage Part or Coverage Form to you or any other insured ("insured") who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

**(1)** This Coverage Part or Coverage Form;

**(2)** The Covered Property;

**(3)** Your interest in the Covered Property; or

**(4)** A claim under this Coverage Part or Coverage Form.

**c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in

CIC0017

accordance with the terms of the Cancellation Condition.

**D.** For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

1. We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

   In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

2. However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

   **a.** The loss arose out of a pattern of criminal domestic violence; and

   **b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **D.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no

event will we pay more than the Limit of Insurance.

**E.** The **Intentional Loss Exclusion** in the Causes of Loss Form - Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

1. We will not pay for loss ("loss") or damage arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss ("loss").

   In the event of such loss ("loss"), no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss ("loss").

2. However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

   **a.** The loss ("loss") arose out of a pattern of criminal domestic violence; and

   **b.** The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

3. If we pay a claim pursuant to Paragraph **E.2.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

CIC0018

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CIVIL UNION

This endorsement modifies insurance provided under the following:

**CHEMICAL DRIFT LIMITED LIABILITY COVERAGE FORM**
**COMMERCIAL AUTOMOBILE COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE**
**EMPLOYEE BENEFIT LIABILITY COVERAGE FORM**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**
**EXCESS LIABILITY COVERAGE FORM**
**EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM**
**HOLE-IN-ONE COVERAGE FORM**
**ILLINOIS CONTRACTORS' LIMITED WORKSITE POLLUTION LIABILITY COVERAGE FORM**
**FARM COVERAGE PART**
**LIQUOR LIABILITY COVERAGE PART**
**MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**POLLUTION LIABILITY COVERAGE PART**
**PRODUCT WITHDRAWAL COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
**PROFESSIONAL LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**
**SEPTIC SYSTEMS DESIGN INSPECTION ERRORS AND OMISSIONS COVERAGE PART**
**UNDERGROUND STORAGE TANK POLICY**

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage - Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

**IA 4395 IL 04 17**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0019

# THE **CINCINNATI INSURANCE COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:  **ETD 051 52 30**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.** **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

|  |  |  |  |  | OPTIONAL COVERAGES | | | | | | |
|  |  |  |  |  | Applicable only when an entry is made | | | | | | |
| | COVERAGE PROVIDED | | | | | | | Business Income Indemnity | | | |
| | | | Coin-surance | Covered Cause Of Loss | | | | | | | |
| Item | Coverage | Limits | | | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Ind. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| 1-1 | BUILDING | 28,000,000<br>SEE FA104 | 80% | SPECIAL<br>EQ<br>FLOOD | | X | | X | | | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 5,300,000<br>SEE FA104 | 80% | SPECIAL<br>EQ<br>FLOOD | | X | | X | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 4,000,000<br>SEE FA104 | 80% | SPECIAL<br>EQ<br>FLOOD | | | | X | | | 180 |

DEDUCTIBLE: $500.00 unless otherwise stated $   25,000
EARTHQUAKE DEDUCTIBLE: 5%
FLOOD DEDUCTIBLE: 25,000

MORTGAGE HOLDER

| Item | Name and Address |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA104S | 05/15 | FLOOD COVERAGE SUPPLEMENTAL SCHEDULE |
| FA104 | 05/16 | FLOOD COVERAGE ENDORSEMENT |
| FA268 | 05/16 | HOTEL COMMERCIAL PROPERTY ENDORSEMENT |
| FA283IL | 05/16 | CRISIS EVENT EXPENSE COVERAGE ENDORSEMENT - ILLINOIS |
| FA286 | 05/16 | THE BRIDGE ENDORSEMENT |
| FA4028IL | 07/17 | ILLINOIS CHANGES |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| IP425 | 08/04 | ILLINOIS MINE SUBSIDENCE WAIVER FORM WAIVER OF INSURANCE |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA213IL | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM - ILLINOIS |
| FA240 | 05/16 | EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT |

CIC0020

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

|  |  |  | Begins on Page |
|---|---|---|---|
| **SECTION A. COVERAGE** | | | 3 |
| **1.** | **Covered Property** | | 3 |
| | a. | Building | 3 |
| | b. | Outdoor Signs | 3 |
| | c. | Outdoor Fences | 3 |
| | d. | Business Personal Property | 3 |
| **2.** | **Property Not Covered** | | 4 |
| | a. | Accounts, Deeds, Money or Securities | 4 |
| | b. | Animals | 4 |
| | c. | Automobiles | 4 |
| | d. | Contraband | 4 |
| | e. | Electronic Data | 4 |
| | f. | Excavations, Grading & Backfilling | 4 |
| | g. | Foundations | 4 |
| | h. | Land, Water or Growing Crops | 4 |
| | i. | Paved Surfaces | 4 |
| | j. | Property While Airborne or Waterborne | 4 |
| | k. | Pilings or Piers | 4 |
| | l. | Property More Specifically Insured | 4 |
| | m. | Retaining Walls | 4 |
| | n. | Underground Pipes, Flues or Drains | 4 |
| | o. | Valuable Papers & Records and Cost to Research | 5 |
| | p. | Vehicles or Self-Propelled Machines | 5 |
| | q. | Property While Outside of Buildings | 5 |
| **3.** | **Covered Causes of Loss** | | 5 |
| | a. | Covered Causes of Loss | 5 |
| | b. | Exclusions | 5 |
| | c. | Limitations | 11 |
| **4.** | **Additional Coverages** | | 13 |
| | a. | Change in Temperature or Humidity | 13 |
| | b. | Debris Removal | 13 |
| | c. | Fire Department Service Charge | 14 |
| | d. | Fire Protection Equipment Recharge | 14 |
| | e. | Inventory or Appraisal | 14 |
| | f. | Key and Lock Expense | 15 |
| | g. | Ordinance or Law | 15 |
| | h. | Pollutant Clean Up and Removal | 16 |
| | i. | Preservation of Property | 16 |
| | j. | Rewards | 16 |

CIC0021

## TABLE OF CONTENTS (CONT'D)

**Begins on Page**

    5.   Coverage Extensions .................................................................................16
        a.   Accounts Receivable.................................................................17
        b.   Business Income and Extra Expense ..................................................18
        c.   Collapse....................................................................................21
        d.   Electronic Data ..........................................................................22
        e.   Exhibitions, Fairs or Trade Shows.................................................23
        f.   Fences .....................................................................................23
        g.   Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage ................23
        h.   Glass .......................................................................................24
        i.   Newly Purchased, Leased or Constructed Property.........................25
        j.   Nonowned Building Damage .........................................................26
        k.   Outdoor Property........................................................................26
        l.   Personal Effects ........................................................................26
        m.   Property Off Premises .................................................................27
        n.   Signs .......................................................................................27
        o.   Trailers (Nonowned Detached).....................................................27
        p.   Transportation ...........................................................................27
        q.   Utility Services ...........................................................................27
        r.   Valuable Papers and Records ......................................................28
        s.   Water Damage, Other Liquids, Powder or Molten Material Damage .....29
**SECTION B. LIMITS OF INSURANCE**..........................................................29
**SECTION C. DEDUCTIBLE**......................................................................29
    1.   Deductible Examples ..................................................................30
    2.   Glass Deductible .......................................................................30
**SECTION D. LOSS CONDITIONS**..............................................................30
    1.   Abandonment............................................................................30
    2.   Appraisal..................................................................................30
    3.   Duties in the Event of Loss or Damage .........................................30
    4.   Loss Payment...........................................................................31
    5.   Recovered Property ...................................................................34
    6.   Vacancy...................................................................................34
        a.   Description of Terms...................................................................34
        b.   Vacancy Provisions....................................................................34
    7.   Valuation .................................................................................34
**SECTION E. ADDITIONAL CONDITIONS**......................................................35
    1.   Coinsurance..............................................................................35
    2.   Mortgage Holders .....................................................................36
**SECTION F. OPTIONAL COVERAGES**........................................................36
    1.   Agreed Value ...........................................................................37
    2.   Inflation Guard ..........................................................................37
    3.   Replacement Cost......................................................................37
**SECTION G. DEFINITIONS**.....................................................................38

CIC0022

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

1. **Covered Property**

   Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

   a. **Building**

      Building, means the building or structure described in the Declarations, including:

      (1) Completed additions;

      (2) Fixtures, including outdoor fixtures;

      (3) Permanently installed:

         (a) Machinery and equipment;

         (b) Building glass, including any lettering and ornamentation;

         (c) Signs attached to a building or structure that is Covered Property;

         (d) Awnings and canopies;

      (4) Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

         (a) Fire extinguishing equipment;

         (b) Outdoor furniture;

         (c) Floor coverings; and

         (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

      (5) If not covered by other insurance:

         (a) Additions under construction, alterations and repairs to a covered building;

         (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

   b. **Outdoor Signs**

      Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

   c. **Outdoor Fences**

      Your outdoor fences.

   d. **Business Personal Property**

      Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

      (1) Furniture;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) The cost of labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

         (a) Made a part of the building or structure you occupy but do not own; and

         (b) You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0023

**(7)** Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

**(8)** Personal Property of Others that is in your care, custody or control or for which you are legally liable.

    **(a)** This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

    **(b)** This does not include property of others for which you are legally liable as:

      **1)** A carrier for hire; or

      **2)** An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

**(9)** Sales samples.

**2. Property Not Covered**

Covered Property does not include:

**a. Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**b. Animals**

Animals, unless

**(1)** Owned by others and boarded by you; or

**(2)** Owned by you and covered as "stock" while inside of buildings;

and then only as provided in **3. Covered Causes of Loss, c. Limitations**.

**c. Automobiles**

Automobiles held for sale;

**d. Contraband**

Contraband, or property in the course of illegal transportation or trade;

**e. Electronic Data**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**f. Excavations, Grading & Backfilling**

The cost of excavations, grading, backfilling or filling;

**g. Foundations**

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement.

**h. Land, Water or Growing Crops**

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

**i. Paved Surfaces**

Bridges, roadways, walks, patios or other paved surfaces;

**j. Property While Airborne or Waterborne**

Personal property while airborne or waterborne;

**k. Pilings or Piers**

Pilings, piers, bulkheads, wharves or docks;

**l. Property More Specifically Insured**

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

**m. Retaining Walls**

Retaining walls that are not part of any building described in the Declarations;

**n. Underground Pipes, Flues or Drains**

Underground pipes, flues or drains;

CIC0024

**o.** **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

**p.** **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

**q.** **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

**(a)** Signs attached to a covered building or structure;

**(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

**3.** **Covered Causes of Loss**

**a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.** **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)** **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of or compliance with any ordinance or law:

**1)** Regulating the construction, use or repair of any building or structure; or

**2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

**(b)** **Earth Movement**

**1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**2)** Landslide, including any earth sinking, rising or shifting related to such event;

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0025

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause set-tling, cracking or other dis-arrangement of foundations or other parts of realty. Soil conditions include contrac-tion, expansion, freezing, thawing, erosion, improperly compacted soil and the ac-tion of water under the ground surface.

But if Earth Movement, as de-scribed in **(b)1)** through **4)** above, results in fire or explo-sion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effu-sion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means di-rect "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occur-rence.

Volcanic action does not in-clude the cost to remove ash, dust or particulate mat-ter that does not cause di-rect "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5),** is caused by an act of nature or is otherwise caused.

**(c)** **Governmental Action**

Seizure or destruction of proper-ty by order of governmental au-thority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to pre-vent its spread, if the fire would be covered under this Coverage Part.

**(d)** **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, how-ever caused.

**(e)** **Utility Services**

**1)** Except as provided in **SEC-TION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility ser-vices supplied to the "prem-ises", however caused, if the failure:

**a)** Originates away from the "premises"; or

**b)** Originates at the "prem-ises", but only if such failure involves equip-ment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also ex-cluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the fail-ure of communication, wa-ter, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services in-clude but are not limited to

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0026

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

**1)** War, including undeclared or civil war;

**2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

**1)** Flood, meaning the partial or complete inundation of normally dry land areas due to:

**a)** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b)** Waves, tidal waters, tidal waves (including tsunami); or

**c)** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

and all whether driven by wind or not, including storm surge.

**2)** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1)** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

**3)** Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

**4)** Water under the ground surface pressing on, or flowing or seeping through:

**a)** Foundations, walls, floors or paved surfaces;

**b)** Basements, whether paved or not; or

**c)** Doors, windows or other openings.

**5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5),** results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

**1)** Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0027

**2)** This exclusion does not apply:

**a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

**b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system or network; or

**2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

**7)** The following causes of loss to personal property:

**a)** Marring or scratching;

**b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

**i)** Dampness or dryness of atmosphere; and

**ii)** Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1** through **7** results in a "specified cause of loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

CIC0028

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**1)** You did your best to maintain heat in the building or structure; or

**2)** You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i) Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

**1)** An abrupt falling down or caving in;

**2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

**1)** To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

**2)** To collapse caused by one or more of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0029

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l)** **Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m)** **Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n)** **Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c)**. However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a)** **Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b)** **Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c)** **Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0030

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse

or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.** <u>Limitations</u>

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0031

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0032

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

4. **Additional Coverages**

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

a. **Change in Temperature or Humidity**

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

b. **Debris Removal**

(1) Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property**.

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

CIC0033

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable | $49,500 |
| ($50,000 - $500) | |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable | $10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | |
| | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable | $79,500 |
| ($80,000 - $500) | |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
|     Basic Amount | $10,500 |
|     Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.** **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.** **Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

    **(a)** To combat a covered fire to which this insurance applies;

    **(b)** As a result of another covered Cause of Loss other than fire; or

    **(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.** **Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

    **(a)** Taking inventories;

    **(b)** Making appraisals; and

CIC0034

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

**f.** **Key and Lock Expense**

**(1)** If a key or master key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**g.** **Ordinance or Law**

**(1)** If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

**(a)** **Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

**(b)** **Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph **g.(1)(a)** above.

**(c)** **Increased Costs of Construction**

**1)** For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

**a)** Repair or reconstruct damaged portions of that building or structure; and

**b)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**2)** For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

CIC0035

**a)** The cost of excavations, grading, backfilling and filling;

**b)** Foundation of the building;

**c)** Pilings;

**d)** Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**;

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h. Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i. Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j. Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5. Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

CIC0036

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

**a.** <u>**Accounts Receivable**</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

    (a) All amounts due from your customers that you are unable to collect;

    (b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

    (c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

    (d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

    (a) Records of accounts receivable in storage away from the "premises"; or

    (b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

    (a) Removal

    If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

      1) At a safe place away from your "premises"; or

      2) Being taken to and returned from that place.

    This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

    (b) Away From Your Premises

    The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

    This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

    (a) **Exclusion (1)(c) Governmental Action;**

    (b) **Exclusion (1)(d) Nuclear Hazard;**

    (c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

    (a) Dishonest or criminal acts by:

      1) You, your partners, employees, directors, trustees or authorized representatives;

      2) A manager or a member if you are a limited liability company;

      3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

      4) Anyone else entrusted with the records of accounts receivable for any purpose.

    This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

    However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

    (b) Alteration, falsification, concealment or destruction of records of

CIC0037

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6) Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no direct "loss"; and

**2)** The amount of the accounts that you are able to re-establish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**b.** <u>**Business Income and Extra Expense**</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area ser-

CIC0038

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0039

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**1)** Used in the construction, alterations or additions; or

**2)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

**(a)** For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

**1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**2)** Ends on the earlier of:

**a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(a)1)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)** For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**1)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**2)** Ends on the earlier of:

**a)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(b)1)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0040

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

**c. Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0041

**3)** Breakage of building glass;

**4)** Weight of people or personal property; or

**5)** Weight of rain that collects on a roof.

**(3)** This Coverage Extension does not apply to:

**(a)** A building or structure or any part of a building or structure that is in danger of falling down or caving in;

**(b)** A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

**(c)** A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph **c.(2)(a)** through **c.(2)(d)**, we will pay for "loss" to that property only if:

**(a)** Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

**(b)** The property is Covered Property under this Coverage Part.

**(5)** If personal property abruptly falls down or caves in and such collapse

is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

**(8)** The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

**d.** <u>Electronic Data</u>

**(1)** This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e.** **Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f.** **Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g.** **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

CIC0043

sent or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

**(b)** **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

**(6)** The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(7)** This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

**h.** **Glass**

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**(a)** Exclusion **(1)(b) Earth Movement;**

**(b)** Exclusion **(1)(c) Governmental Action;**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0044

**(c)** Exclusion (1)(d) Nuclear Hazard;

**(d)** Exclusion (1)(f) War and Military Action;

**(e)** Exclusion (2)(d)1) Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2**: Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** <u>Newly Purchased, Leased or Constructed Property</u>

**(1) Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

**(a)** Your new buildings or additions while being built on the "premises";

**(b)** Buildings you newly purchase or become newly required to insure by written contract that are:

**1)** Intended for use by you as a warehouse; or

**2)** Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

**(2) Business Personal Property**

**(a)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

**1)** While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

**2)** While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

**(b)** Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

**1)** Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

**2)** Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

**3)** Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3) Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires,

**(b)** For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(c)** For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1)**, 90 days after your purchase or lease;

**(d)** For business personal property described in Paragraph **(2)(a)2)**, 90 days from the effective date

CIC0045

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j.** **Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

**(a)** Repair or replacement of encasing frames or alarm tapes; and

**(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k.** **Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l.** **Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0046

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m.** **Property Off Premises**

    **(1)** We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

        **(a)** Temporarily at a location you do not own, lease or operate; or

        **(b)** In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

    **(2)** This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n.** **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o.** **Trailers (Nonowned Detached)**

    **(1)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

        **(a)** The trailer is used in your business;

        **(b)** The trailer is temporarily in your care, custody or control at the "premises"; and

        **(c)** You have a contractual responsibility to pay for "loss" to the trailer.

    **(2)** We will not pay for any direct "loss" that occurs:

        **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

        **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

    **(3)** This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

    **(4)** This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p.** **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q.** **Utility Services**

We will pay for:

    **(1)** Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

    **(2)** Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

    **(1)** Power Supply Property, meaning the following types of property supplying

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 27 of 40**

CIC0047

electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

**(a)** Pumping stations; and

**(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

**(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

**(a)** Property that cannot be replaced with other property of like kind and quality;

**(b)** Property held as samples or for delivery after sale;

**(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

**(d)** Contraband, or property in the course of illegal transportation or trade;

**(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

**(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

**(b)** The cost of replacing the damaged property with substantially identical property; or

**(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

**(a)** **Removal**

If you give us written notice within 30 days of removal of your "valuable papers and records"

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0048

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s. Water Damage, Other Liquids, Powder or Molten Material Damage**

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

CIC0049

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

    **Example No. 1:**

    (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

    | | |
    |---|---|
    | Deductible: | $250 |
    | Limit of Insurance - Bldg. 1: | $60,000 |
    | Limit of Insurance - Bldg. 2: | $80,000 |
    | "Loss" to Bldg. 1: | $60,100 |
    | "Loss" to Bldg. 2: | $90,000 |

    The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

    The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

    $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

    The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

    Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

    **Example No. 2:**

    (This example also assumes there is no coinsurance penalty).

    The Deductible and Limits of Insurance are the same as those in Example No. 1:

    "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

    "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

    "Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

    "Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

    Total amount of "loss" payable: $140,000.

2. **Glass Deductible**

    When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

    **a.** $500; or

    **b.** The Deductible shown in the Declarations for that Covered Property.

**SECTION D. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

1. **Abandonment**

    There can be no abandonment of any property to us.

2. **Appraisal**

    If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

    **a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Give us prompt notice of the "loss". Include a description of the property involved.

    **(3)** As soon as possible, give us a description of how, when and where the "loss" occurred.

    **(4)** Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

CIC0050

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4.** <u>Loss Payment</u>

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i.** **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1)** **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

CIC0051

**(a)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(b)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

**1)** The "actual cash value" of the building at the time of "loss"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

**(a)** The amount you actually spend to demolish and clear the site of the "premises"; or

**(b)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

**1)** The increased cost of construction at the same "premises"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(c)** If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new location; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0052

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.** **Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)** The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

  **(a)** The Net Income of the business before the direct "loss" occurred;

  **(b)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

  **(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

  **(d)** Other relevant sources of information, including;

    **1)** Your financial records and accounting procedures;

    **2)** Bills, invoices and other vouchers; and

    **3)** Deeds, liens or contracts.

**(2)** The amount of Extra Expense will be determined based on:

  **(a)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

  **1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

  **2)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

  **(b)** Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3)** **Resumption of Operations**

We will reduce the amount of your:

  **(a)** "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

  **(b)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.** **Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

CIC0053

**(1)** Limit of Insurance shown in the Declarations;

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation**; and

**(3)** **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**.

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5.** **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** **Vacancy**

**a.** **Description of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b.** **Vacancy Provisions**

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7.** **Valuation**

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b., c., d.,** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0054

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

   **(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

   **(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

      **(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

      **(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

   If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

   **(3)** Nothing if others pay for repairs or replacement.

   **(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1.** **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

   **(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

   **(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

   **(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

   **(4)** Subtract the deductible from the figure determined in step **(3)**.

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

**Example No. 1 (Underinsurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $100,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

   $250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

   $100,000 divided by $200,000 = .50

Step (3):

   $40,000 X .50 = $20,000

Step (4):

   $20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| | |
|---|---|
| The value of the property is: | $250,000 |
| The coinsurance percentage is: | 80% |
| The Limit of Insurance is: | $200,000 |
| The Deductible is: | $250 |
| The amount of "loss" is: | $40,000 |

Step (1):

   $250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

   $200,000 : $200,000 = 1.00

Step (3):

   $40,000 X 1.00 = $40,000

Step (4):

   $40,000 - $250 = $39,750.

CIC0055

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

The coinsurance percentage is: 90%
The Limit of Insurance for Buildings and Personal

| | |
|---|---|
| Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |

The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):
$180,000 : $225,000 = .80

Step (3):
$50,000 X .80 = $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2.** **Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

**SECTION F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0056

1. **Agreed Value**

   a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

   b. If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

   c. The terms of this Optional Coverage apply only to "loss" that occurs:

      (1) On or after the effective date of this Optional Coverage; and

      (2) Before the policy expiration date.

   d. This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

2. **Inflation Guard**

   a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

      (3) The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

      Example:

      If: The applicable Limit of Insurance is: $100,000

      The Annual percentage increase is: 8%

      The number of days since the beginning of the policy year (or last policy change) is: 146

      The amount of increase is $100,000 X .08 X (146/365) = $3,200

3. **Replacement Cost**

   a. Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

   b. This Optional Coverage does not apply to:

      (1) Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

      (2) Personal effects;

      (3) Contents of a residence;

      (4) Manuscripts;

      (5) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

      (6) "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

      (7) Property, that at the time of "loss":

         (a) Is outdated, or obsolete and is stored or not being used; or

         (b) Has no practical value to you.

   c. You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

   d. We will not pay on a replacement cost basis for any "loss":

      (1) Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

CIC0057

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

CIC0058

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0059

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water**. Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water**, there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

**18.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**19.** "Suspension" means:

    **a.** The slowdown or cessation of your business activities; and

    **b.** That a part or all of the "premises" is rendered untenantable.

**20.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0060

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE SUPPLEMENTAL SCHEDULE

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SUPPLEMENTAL SCHEDULE**

**Blanket Flood Coverage**

(Enter an "x" in the appropriate box to activate Coverage)

☒ The Blanket Flood Limit of Insurance applies at all "premises" shown in the Declarations for the following Covered Property:

**Blanket Flood Limit of Insurance** <u>8,500,000</u>     **Flood Deductible** <u>25,000</u>

☒ Building     ☒ Business Income     ☒ Extra Expense     ☒ Business Personal Property
☐ Business Personal Property - Reporting     ☐ Property in the Open

☐ The Blanket Flood Limit of Insurance applies at all "premises" shown below for the following Covered Property:

**Blanket Flood Limit of Insurance** _____     **Flood Deductible** _____

☐ Building     ☐ Business Income     ☐ Extra Expense     ☐ Business Personal Property
☐ Business Personal Property - Reporting     ☐ Property in the Open

**Loc #**          **Bldg #**

---

**FA 104S 05 15**

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

CIC0061

**SUPPLEMENTAL SCHEDULE**

**Scheduled Flood Coverage**

Flood Coverage applies only at the "premises" and to the Covered Property as shown below:

| Loc # | Bldg # | Covered Property* | Flood Limit of Insurance | Flood Deductible |
|-------|--------|-------------------|--------------------------|------------------|
|       |        |                   |                          |                  |

\*   Covered Property should be described as Building, Business Personal Property, Business Personal Property - Reporting, Business Income, Extra Expense, or Property in the Open.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

FA 104S 05 15

CIC0062

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**FLOOD COVERAGE SCHEDULE**

**A. Coverage and Coverage Locations**                    **Limit of Insurance**
(Enter an "x" in the appropriate box)

☒  Coverage for Flood applies at all locations and
    for all Coverages shown in the Declarations

                                                          $  ___SEE FA104S___

☐  Coverage applies for Flood at the Locations
    and Covered Property scheduled below:

                                                          $  _____

**Loc      Bldg      Covered Property**

                                                             $

**B. Annual Aggregate**

The most we will pay for "loss" from flood shall not exceed:

$ _____ in any single "coverage term", regardless of the number of floods

**C. Flood Deductible**

$  _25,000_____ is the deductible per flood

**D.**   ☐ **Underlying Insurance Waiver** ("x" box if this condition applies)

         See **SECTION L. Other Insurance** for an explanation of this option.

CIC0063

## A. Flood Coverage

1. This endorsement applies to the Covered Property and Coverages for which a Flood Limit of Insurance is shown in the Flood Coverage Schedule or in the Declarations.

2. For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

   **a. Covered Causes of Loss**

   (1) Flood, meaning the partial or complete inundation of normally dry land areas due to:

   (a) The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

   (b) Waves, tidal waters, tidal waves (including tsunami); or

   (c) Water from rivers, ponds, lakes, streams or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary; and

   All whether driven by wind or not, including storm surge.

   (2) Mudslides or mudflows, which are caused by flooding as defined in Paragraph **a.(1)** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

   (3) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **a.(1)** and **a.(2)** above, or material carried or otherwise moved by mudslide or mudflow.

   All flooding in a continuous or protracted event will constitute a single flood.

## B. Covered Property for Flood

Unless the following property has already been endorsed to become Covered Property, for the purposes of this endorsement only, the following is added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property:**

1. Foundations below the lowest basement floor or the subsurface of the ground; and

2. Underground pipes, flues and drains.

## C. Property Not Covered by Flood

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is amended to include the following:

1. **Property Not Covered** includes any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 et seq. and the Coastal Barrier Improvement Act of 1990, Pub. L. 101-591, 16 U.S.C. 3501 et seq.

2. **Property Not Covered** includes boathouses and open structures, and any property in or on the foregoing, if the structure is located on or over a body of water.

3. Even if bulkheads, pilings, piers, wharves, docks, or retaining walls that are not part of a building have been removed from **Property Not Covered** and added under **1. Covered Property** by separate endorsement, this Flood Coverage Endorsement does not apply to such property.

## D. Revised Exclusions

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water** is amended to include the following:

   To the extent that a part of this Water exclusion might conflict with coverage provided by this endorsement, that part of the Water exclusion does not apply.

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(b) Earth Movement** is amended to include the following:

   To the extent that a tsunami causes the overflow of tidal waters, then Paragraph **1)** does not apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0064

## E. Exclusions

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (2)** is amended to include the following:

### Pre-Existing Flood or Flood at Inception

We will not pay for any "loss" caused by or resulting from any flood that begins before or within 72 hours after the inception date of this endorsement. However, this limitation does not apply to a particular location if flood coverage was in effect for that location for at least 72 hours immediately prior to the inception date of this endorsement, under a policy issued by us or by another insurer, and this policy replaces the previous policy without a lapse in coverage. If you request and we provide an increase in the stated Limit of Insurance for flood during the term of this policy, with the exception of an increase at the time of renewal of the policy, the increase will not apply to "loss" from any flood that begins before or within 72 hours after your request was made.

If the flood is due to the overflow of inland or tidal waters, then the flood is considered to begin when the water first overflows its banks.

### Destabilization of Land

We will not pay for any "loss" caused by or resulting from destabilization of land arising from the accumulation of water in subsurface land areas.

### Cost of Restoring or Remediating Land

As stated in **A. COVERAGE, 2. Property Not Covered,** land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land due to the collapse or sinking of land caused by or resulting from flood. However, coverage under this endorsement includes damage to the covered portions of the building and to covered personal property, caused by collapse or sinking of land along the shore of a body of water as the result of erosion or undermining caused by waves or currents of water which exceed the cyclical levels and cause flood.

### Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems

We will not pay for any "loss" caused by discharge of water or waterborne material from sewers, drains, septic systems, or sump pump systems or related equipment unless such discharge results from flood and occurs within 72 hours after the flood recedes.

### Property in the Open

We do not cover any "loss" by flood to personal property in the open except to the extent that such coverage, if any, is specified in the Flood Coverage Schedule or in the Declarations.

## F. Debris Removal from Flood

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** (and any additional limit for Debris Removal under a LIMIT OF INSURANCE clause or an endorsement) is deleted in its entirety and replaced by the following:

### b. Debris Removal

(1) We will pay your expense to remove debris of Covered Property and other debris that is on the "premises" when such debris is caused by or results from flood. However, we will not pay to remove deposits of mud or earth from the grounds of the "premises".

(2) We will also pay the expense to remove debris of Covered Property that has floated or been hurled off the "premises" by flood.

(3) This Debris Removal Coverage does not increase the applicable Limit of Insurance for flood. Therefore, the most we will pay for the total of debris removal and "loss" to Covered Property is the Limit of Insurance for flood that applies to the Covered Property at the affected "premises" covered under this endorsement.

## G. Flood for Newly Purchased, Leased or Constructed Property

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is amended to include the following:

(4) With respect to a building or structure covered under this Coverage Extension, the amounts of coverage stated in Paragraphs **(1)** and **(2)** of this Coverage Extension do not apply to flood coverage. Instead, the most we will pay for all "loss" to property covered under this Coverage Extension is 10% of the total of all Limits of Insurance for flood coverage as provided under this endorsement. Such coverage does not increase the Limit of Insurance for flood.

**FA 104 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 3 of 5**

CIC0065

**(5)** With respect to Flood Coverage, this Coverage Extension does not apply to any building or structure that is not fully enclosed by walls and roof.

**H.  Anti-Stacking of Flood Coverage**

For the purposes of this endorsement only with respect to any applicable **Additional Coverages** and **Coverage Extensions** in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, other than those addressed in **SECTIONS F.** and **G.** of this endorsement, amounts payable under such other provisions, as set forth therein, do not increase the Limit of Insurance for flood.

**I.  Limit of Insurance for Flood**

**1.**  General Information

**a.**  Flood coverage may be written at a Limit of Insurance that is equal to or less than the Limit of Insurance which applies to other Covered Causes of Loss (e.g., fire) under this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM.**

**b.**  The Limit of Insurance for flood is shown in the **Flood Coverage Schedule** or in the Declarations. If such Limit of Insurance is not shown, then the Limit of Insurance applicable to fire also applies to flood.

**2.**  Application of Limit and Aggregate

**a.**  The Limit of Insurance for flood is the most we will pay in a single occurrence of flood for "loss" caused by the flood. If there is more than one flood in a "coverage term" the most we will pay for the total of all "loss" sustained during that "coverage term" and caused by flood is the amount that is identified as the Annual Aggregate for flood as shown in the **Flood Coverage Schedule** or the Declarations.

**b.**  If the Limit of Insurance and the Annual Aggregate amount are the same, or if there is no amount stated as an Annual Aggregate, then the Limit of Insurance is the most we will pay for the total of all "loss" that is caused by flood in a "coverage term", even if there is more than one occurrence of flood during that "coverage term". Thus, if the first flood does not exhaust the applicable Limit of Insurance, then the balance of that Limit of Insurance is available for subsequent floods.

**c.**  If a single occurrence of flood begins during one "coverage term" and ends during the following "coverage term", any Limit of Insurance or Annual Aggregate applicable to the following "coverage term" will not apply to that flood.

**d.**  If a Blanket Limit of Insurance option is selected on the **Flood Coverage Schedule,** that Blanket Limit of Insurance does not apply separately to the Locations, Covered Property or Coverages listed. The Blanket Limit of Insurance is the most we will pay for all "loss" to the indicated Covered Property/Coverages at the Locations listed, subject to all other applicable provisions of this **Flood Coverage Endorsement**.

**3.**  Ensuing Loss

In the event of covered ensuing direct "loss", for example, direct "loss" caused by fire, explosion and/or sprinkler leakage which results from the flood, the most we will pay, for the total of all "loss" caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to fire. We will not pay the sum of the fire and flood Limits.

**EXAMPLES - ENSUING LOSS**

The following two examples use these facts: In both examples assume the policy contains the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** (which covers fire) and this **FLOOD COVERAGE ENDORSEMENT.** A building is damaged by flood and by fire which is caused by the flood. The value of the damaged building is $1,000,000. The Limit of Insurance applicable to the building is $800,000. The Limit of Insurance for flood is $400,000. The flood deductible amount is $5,000.

**EXAMPLE #1**

The damage due to flood is $500,000. The damage due to fire is $500,000.

Payment for flood damage is $400,000 ($500,000 damage minus $5,000 flood deductible = $495,000; Limit is $400,000)

Payment for fire damage is $400,000 ($500,000 damage capped at the difference between the Basic Limit and the flood Limit)

Total Loss Payment is $800,000.

**EXAMPLE #2**

The damage due to flood is $800,000. The damage due to fire is $100,000.

Payment for flood damage is $400,000 ($800,000 damage minus $5,000 flood deductible = $795,000; Limit is $400,000)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0066

Payment for fire damage is $100,000 (amount of damage)

Total Loss Payment is $500,000.

**Note:** These Examples are given only to illustrate the situation of flood and ensuing loss. Therefore, the loss payment stated for flood damage does not address the situation where another policy also covers the flood damage.

**J. Deductible**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended to include the following:

**Flood Deductible**

**a.** The deductible for coverage provided under this endorsement is the deductible applicable to flood as shown in the **Flood Coverage Schedule**.

**b.** We will not pay that part of the "loss" that is attributable to any deductible(s) in the National Flood Insurance Program policy.

**c.** If flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause "loss", then only the higher deductible applies (e.g., the Flood Deductible or the fire deductible).

**d.** The Flood Deductible does not apply to the following:

**(1)** **SECTION A. COVERAGE, 5. Coverage Extensions, h. Glass;** and

**(2)** If endorsed to this policy, the following Coverage Forms:

**(a)** **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM;**

**(b)** **BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM;** and

**(c)** **EXTRA EXPENSE COVERAGE FORM.**

**K. Coinsurance**

**1.** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this endorsement.

**L. Other Insurance**

For the purposes of this endorsement only, **SECTION G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS** form is deleted in its entirety and replaced by the following:

**G. Other Insurance**

**1.** **Underlying Insurance Requirement**

If the "loss" is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only the amount of "loss" in excess of the maximum limit that is eligible to be written under that NFIP policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

However, this Provision **G.1. Underlying Insurance Requirement** does not apply under the following circumstances:

**a.** At the time of "loss", the property is eligible to be written under an NFIP policy but such policy is not in effect due solely to ineligibility of the property at the time this **FLOOD COVERAGE ENDORSEMENT** was written; or

**b.** An NFIP policy is not in effect because we have agreed to write this **FLOOD COVERAGE ENDORSEMENT** without underlying NFIP coverage. There is such an agreement only if the **Flood Coverage Schedule** or the Declarations indicate that the **Underlying Insurance Waiver** applies.

**2.** If there is other insurance covering the "loss", other than that described in **G.1.** above, we will pay our share of the "loss". Our share is the proportion that the applicable Limit of Insurance under this endorsement bears to the total of the applicable Limits of Insurance under all other such insurance. But we will not pay more than the applicable Limit of Insurance stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0067

# HOTEL COMMERCIAL PROPERTY ENDORSEMENT

## TABLE OF CONTENTS

Begins on Page:

Summary of Coverage Limits ................................................................2
A.   Accounts Receivable .................................................................4
B.   Debris Removal ........................................................................4
C.   Electronic Data Processing Property...........................................4
D.   Ordinance or Law .....................................................................7
E.   Peak Season ...........................................................................7
F.   Personal Property of Others ......................................................8
G.   Tenant Move Back Expenses ....................................................8
H.   Valuable Papers and Records ...................................................8
I.   Brands and Labels ...................................................................8
J.   Business Income and Extra Expense ..........................................9
K.   Contract Penalties...................................................................13
L.   Customer Inconvenience Remuneration Expenses ......................13
M.   Emergency Vacating Expenses ................................................14
N.   Voluntary Parting Under False Pretense ....................................14
O.   Fences ..................................................................................14
P.   Fine Arts ...............................................................................14
Q.   Fire Department Service Charge ...............................................14
R.   Fire Protection Equipment Recharge..........................................15
S.   Guests' Property Limitation ......................................................15
T.   Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage ..........15
U.   Increased Real Estate Tax Assessment Expense.........................15
V.   Inflation Guard .......................................................................15
W.   Key and Lock Expense ............................................................16
X.   Keying Systems......................................................................16
Y.   Nonowned Building Damage .....................................................16
Z.   Outdoor Property ....................................................................17
AA.  Paved Surfaces ......................................................................17
BB.  Personal Effects .....................................................................17
CC.  Pollutant Clean Up and Removal ..............................................17
DD.  Property Off Premises .............................................................17
EE.  Radio and Television Receiving Equipment ................................18
FF.  Refrigerated Property in Transit................................................18
GG.  Signs....................................................................................18
HH.  Temperature Change ..............................................................18
II.   Transportation .......................................................................20
JJ.   Underground Property .............................................................20
KK.  Unintentional Error in Description .............................................20
LL.   Unscheduled Appurtenant Buildings and Structures ...................20
MM. Utility Services.......................................................................21
NN.  Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems ...........22
OO.  Blanket Coverage Limit ...........................................................23

CIC0068

# HOTEL COMMERCIAL PROPERTY ENDORSEMENT

## SUMMARY OF COVERAGE LIMITS

| Blanket Coverages: | Blanket Coverage Limit: |
|---|---|
| | $500,000 |
| Accounts Receivable | |
| Debris Removal | |
| Electronic Data Processing Property: | |
|     Duplicate and Backup Electronic Data | $2,000 Outside of the Blanket Coverage Limit |
|     In Transit or Away from Premises | $10,000 Included in the Blanket Coverage Limit |
|     Newly Purchased or Leased Electronic Data Processing Property | $10,000 Outside of the Blanket Coverage Limit |
|     Worldwide Laptop Coverage | |
| Ordinance or Law (Increased Construction Costs and Demolition) | |
| Peak Season | |
| Personal Property of Others (including Replacement Cost, if that valuation applies under the Building and Personal Property Coverage Form) | |
| Tenant Move Back Expenses | |
| Valuable Papers and Records | |

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: |
|---|---|
| Brands and Labels | $25,000 |
| Business Income and Extra Expense: | $100,000 |
|     Business Income from Dependent Properties | $100,000 (subject to a 24 hour deductible) |
|     Food Contamination Business Interruption | $50,000 (sublimit, subject to a 24 hour deductible) |
|     Interruption of Computer Operations | $25,000 (sublimit, subject to a 24 hour deductible) |
|     Newly Purchased or Leased Locations | $100,000 for up to 180 days |
|     Reservation System | $10,000 (sublimit) |
|     Special Event Cancellation | $50,000 (sublimit) |
|     Transit Business Income | $25,000 (sublimit) |

CIC0069

| | |
|---|---|
| Contract Penalties | $25,000 |
| Customer Inconvenience Remuneration Expenses | $50,000 ($500 Per Person) |
| Emergency Vacating Expenses | $25,000 |
| Voluntary Parting Under False Pretense | Subject to the Business Personal Property Limit of Insurance |
| Fences | $15,000 |
| Fine Arts | $25,000 |
| Fire Department Service Charge | $25,000 |
| Fire Protection Equipment Recharge | Actual Cost Incurred |
| Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage | $50,000 |
| Increased Real Estate Tax Assessment Expense | $50,000 |
| Inflation Guard | 4% on all Building Property referenced in the Declarations |
| Key and Lock Expense | $15,000 |
| Keying Systems | $100,000 |
| Nonowned Building Damage: | $25,000 |
| Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance |
| Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) |
| Paved Surfaces | $20,000 |
| Personal Effects | $25,000 ($2,500 for any one person and $1,000 for "loss" by theft) |
| Pollutant Clean Up and Removal | $50,000 |
| Property Off Premises | $50,000 |
| Radio and Television Receiving Equipment | $15,000 |
| Refrigerated Property in Transit | $25,000 |
| Signs | $25,000 |
| Temperature Change | $50,000 |
| Transportation | $50,000 |
| Underground Property | Subject to the Building Limit of Insurance |
| Unintentional Error in Description | included |
| Unscheduled Appurtenant Buildings and Structures | $10,000 |
| Utility Services (off premises water, communication, and power supply), for direct and time element "loss" | $75,000 |
| Overhead communication transmission, distribution, service or similar lines | $5,000 sublimit with 24 hour waiting period |
| Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems | $100,000 |

CIC0070

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HOTEL COMMERCIAL PROPERTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

### SCHEDULE

| Blanket Coverage Limit | $500,000 |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement. | |

**A. Accounts Receivable**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Coverage Extension is the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement.

**B. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a direct "loss" insured there under, you may apply the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement to such direct "loss" as is insured under Additional Coverage **b. Debris Removal**.

**C. Electronic Data Processing Property**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-**

**AGE, 5. Coverage Extensions** is amended to include the following:

**Electronic Data Processing Property**

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**;

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

CIC0071

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

**(c)** Your property that you have rented or leased to someone else and that property is not at your "premises".

**(d)** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**(e)** "Production equipment".

**(3) Exclusions**

**(a)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**1)** Exclusion **(1)(c) Governmental Action;**

**2)** Exclusion **(1)(d) Nuclear Hazard;**

**3)** Exclusion **(1)(f) War and Military Action;**

**4)** Exclusion **(2)(b) Delay or Loss of Use;**

**5)** Exclusion **(2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

**6)** Exclusion **(2)(h) Dishonest or Criminal Acts;**

**7)** Exclusion **(3)(b) Acts or Decisions**; and

**8)** Exclusion **(3)(c) Defects, Errors, and Omissions.**

**(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However,

if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting direct "loss".

**(4) Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a "premises" not described in the Declarations providing such "electronic data" is not covered by another policy. The most we will pay for "loss" in any one occurrence is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance for **Duplicate and Backup "Electronic Data"** is in addition to the other limits provided by this Coverage Extension.

**(5) In Transit or Away from Premises**

For this Coverage Extension only, **SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

**(a)** We will pay for direct "loss" from a Covered Cause of Loss to Covered Property as described in Paragraph **(1)** of this Coverage Extension:

**1)** While in or on a vehicle, including loading and unloading; or

**2)** While at a location that is not your "premises".

**(b)** This **In Transit or Away from Premises** coverage does not apply per location.

The most we will pay for loss in any one occurrence is the Limit of Insurance indicated in the Summary of Coverage Limits e. This Limit of Insurance for **In Transit or Away from Premises** coverage is not in addition to the other limits provided by this Coverage Extension.

**(6) Newly Purchased or Leased Electronic Data Processing Property**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased or Constructed Property** is deleted in its entirety and replaced by the following:

**(a)** We will pay for direct "loss" caused by a Covered Cause of Loss to newly purchased or leased Covered Prop-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0072

erty described in Paragraph **(1)** of this Coverage Extension while at:

**1)** Locations that are newly purchased or leased;

**2)** Your newly constructed buildings or additions at a "premises"; or

**3)** Any "premises" described in the **COMMERCIAL PROPERTY COVERAGE PART** Declarations.

**(b)** Coverage provided under this Coverage Extension will end when any of the following first occurs:

**1)** This Coverage Part expires;

**2)** 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

**3)** You report values to us.

The most we will pay for loss in any one occurrence is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance in any one occurrence for **Newly Purchased or Leased Electronic Data Processing Property** is in addition to the other limits provided by this Coverage Extension.

**(7) Worldwide Laptop Coverage**

**(a)** We will pay for direct "loss" from a Covered Cause of Loss to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

**1)** In your or your employee's care, custody and control;

**2)** Not located at a premises you own or lease; and

**3)** Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory**, provided that location is not under a United States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

For this Coverage Extension only, **SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay, for "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

For this Coverage Extension only, **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

**7. Valuation of Electronic Data Processing Property**

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data":

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the direct "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0073

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a direct "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be determined at the time of direct "loss".

**b.** For "electronic data"

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the direct "loss", the most we will pay is the cost of blank media as described in Paragraph **(1)(e)** of this Coverage Extension.

**(10)** **Electronic Data Processing Property Additional Definition**

The following definition is added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS:**

"Production equipment" means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay for loss in any one occurrence under this **Electronic Data Processing Property** Coverage Extension is the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement.

**D.** **Ordinance or Law**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure sustaining "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all loss in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit indicated in the Hotel Commercial Property Endorsement Schedule of this endorsement per building or structure sustaining "loss". This is an additional Limit of Insurance applicable to the building or structure sustaining "loss".

**E.** **Peak Season**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Peak Season**

**1.** In the event that the Limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered direct "loss" due to a Peak Season Demand for your inventory, you may apply the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement to that direct "loss".

**2.** Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0074

**a.** Your previous inventory records for that historical period of time; and

**b.** Custom and practice in your industry.

## F. Personal Property of Others

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Personal Property of Others**

**1.** In the event that the Limit of Insurance stated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered direct "loss" to both your Covered Personal Property and property described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** Paragraph **(8)**, you may apply the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement to such property as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property, (8)**.

**2.** For this Coverage Extension only, **SECTION F. OPTIONAL COVERGES, 3. Replacement Cost, b.(1)** does not apply.

## G. Tenant Move Back Expenses

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Tenant Move Back Expenses**

**1.** We will reimburse you for expenses you pay for Covered Move Back Costs of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

**2.** Covered Move Back Costs means only documented, reasonable and necessary costs of:

**a.** Packing, insuring and transporting business personal property;

**b.** Re-establishing electric utility and communication services, less refunds from discontinued services;

**c.** Assembling and setting up fixtures and equipment; or

**d.** Unpacking and re-shelving stock and supplies.

**3.** If your tenants have valid and collectible insurance for Covered Move Back Costs, we will pay only for the amount of Covered Move Back Costs in excess of the amount payable from such other insurance.

**4.** The most we will pay for in any one occurrence for (the sum of all Covered Move Back Costs under this Coverage Extension is the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement.

## H. Valuable Papers and Records

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Coverage Extension is the Blanket Coverage Limit as provided in Section **OO. Blanket Coverage Limit** of this endorsement.

## I. Brands and Labels

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Brands and Labels**

**(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

**(a)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

**(2)** The most we will pay for loss in any one occurrence under Brands and Labels is

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

the Limit of Insurance indicated in the Hotel Commercial Property Endorsement Summary of Coverage Limits.

## J. Business Income and Extra Expense

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense** is modified as follows:

1. **Business Income from Dependent Properties**

   a. For **Business Income from Dependent Properties** only, Paragraph **(1)** is deleted in its entirety and replaced by the following:

      (1) We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

      However, coverage under this endorsement does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to "electronic data" and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced.

   b. **Limit of Insurance for Dependent Properties**

      The most we will pay for loss in any one occurrence under **Business Income from Dependent Properties** is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the **Business Income and Extra Expense** Coverage Extension.

   c. **Loss Determination for Dependent Properties**

      For this Coverage Extension only, the following is added:

      **Resumption of Operations**

      We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

   (a) Source of materials; or

   (b) Outlet for your products.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. **Definitions**

   (1) **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

      "Dependent Property" means property operated by others whom you depend on to:

      (a) Deliver materials or services to you or to others for your account (Contributing Locations). But any property which delivers the following services is not a Contributing Location with respect to such services:

         1) Water Supply services;

         2) Power Supply services; or

         3) Communication Supply services, including services relating to internet access or access to any electronic network;

      (b) Accept your products or services;

      (c) Manufacture products for delivery to your customers under contract of sale; or

      (d) Attract customers to your business.

   (2) **For Business Income from Dependent Properties** only, **SECTION G. DEFINITIONS, 11.** "Period of restoration", is deleted in its entirety and replaced by the following:

      "Period of restoration" means the period of time that:

      (a) Begins 24 hours after the time of direct "loss" caused

CIC0076

by or resulting from any Covered Cause of Loss at the "premises" of the "dependent property"; and

**(b)** Ends on the date when the property at the "premises" of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

**2. Civil Authority**

For **Civil Authority** only, **COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (3) Civil Authority** is deleted in its entirety and replaced by the following:

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage will apply for a period of up to 180 consecutive days from the date of that action.

**3. Extended Business Income**

For **Extended Business Income** only, Paragraph **b.(6)(a)2)b)** is deleted in its entirety and replaced by the following:

**b)** 180 consecutive days after the date determined in **b.(6)(a)1)** above.

**4. Food Contamination Business Interruption**

**a.** For **Food Contamination Business Interruption** only, Paragraph **(1)** is deleted in its entirety and replaced by the following:

**(1)** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused directly by "food contamination" declared by the Board of Health or other governmental body at a "premises".

**b.** You may use up to $10,000 of the Limit of Insurance applicable to **Food Contamination Business Interruption** after a declaration of "food contamination" at a "premises" by the Board of Health or other governmental body to pay for:

**(1)** Your cost to clean your equipment at the "premises" according to local Board of Health requirements;

**(2)** Your costs to replace consumable goods declared contaminated by the local Board of Health or other governmental body;

**(3)** Necessary medical tests and vaccines for affected employees as required by the Board of Health or other governmental body. This coverage is primary to any other insurance coverage; and

**(4)** Reimbursement of infected patrons for medical care, hospitalization and necessary blood testing.

**c.** With respect only to **Food Contamination Business Interruption, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclu-**

FA 268 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 10 of 23

CIC0077

**sions**, Paragraph **(1)** is amended to include the following:

**Fines or Penalties**

Fines or penalties of any kind.

d. With respect only to **Food Contamination Business Interruption, SECTION D. LOSS CONDITIONS**, Condition **3. Duties in the Event of Loss or Damage** is deleted in its entirety and replaced by the following:

3. <u>Duties in the Event of Loss or Damage</u>

You must see that the following are done in the event of "food contamination" declared by the Board of Health or other governmental body at a "premises":

a. Give us prompt notice of the declaration by the Board of Health or other governmental body, identifying the "premises" involved;

b. Notify any public authority that may have jurisdiction over the incident;

c. As soon as possible, give us a description of how, when and where the "food contamination" was first discovered;

d. Resume all of your "operations" as quickly as possible, we will pay based on the time it would have taken to resume "operations" as quickly as possible;

e. Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request;

f. Cooperate with us in the investigation or settlement of the claim; and

g. Do, or have done on your behalf, all things reasonably practical to avoid or diminish the loss.

e. With respect only to **Food Contamination Business Interruption, SECTION G. DEFINITIONS** is amended as follows:

1. The following definitions are added:

(a) "Communicable disease" means a bacterial microorganism transmitted through human contact to food.

(b) "Food contamination" means the actual or alleged food poisoning or suspected food poisoning of one or more of your customers. The food contamination must have resulted from tainted food purchased by you or "communicable disease" transmitted by one or more of your employees.

2. Definition **2.** "Business Income" is deleted in its entirety and replaced by the following:

"Business Income" means the:

a. Net Income (net profit or loss before income taxes) that would have been earned or incurred;

b. Continuing operating expenses incurred, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the declaration of "food contamination" by the Board of Health or other governmental body at the "premises"; and

c. Extra advertising cost to restore the reputation of your business.

3. Definition **11.** "Period of restoration" is amended as follows:

Paragraphs **a.** and **b.** are deleted in their entirety and replaced by the following:

a. Begins 24 hours after the declaration of "food contamination" at a "premises" by the Board of Health or other governmental body.

b. Ends the earlier of:

(1) The date when the "premises" is cleared to reopen for business, or should have been but for the lack of your due diligence, by the Board of Health or other governmental body; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0078

(2) The date when business is resumed at a new permanent location.

**e. Limit of Insurance for Food Contamination Business Interruption**

The most we will pay for loss in any one occurrence under **Food Contamination Business Interruption** is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the **Business Income and Extra Expense** Coverage Extension.

**5. Interruption of Computer Operations**

**a.** For **Interruption of Computer Operations** only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, 5. Coverage Extensions, b. Business Income and Extra Expense,** all references to $2,500 in Paragraph **b.(7)(c)** are deleted and replaced with the following phrase:

The Limit of Insurance indicated in the Summary of Coverage Limits.

**b.** For **Interruption of Computer Operations** only, **SECTION G. DEFINITIONS, 11.** "Period of restoration", Paragraph **a.** is deleted in its entirety and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

**6. Newly Purchased or Leased Locations**

For **Newly Purchased or Leased Locations** only, Paragraph **(6)(c)** is deleted in its entirety and replaced by the following:

**(c)** 180 days pass from the date you acquire or begin to construct the Covered Property.

**7. Reservation Systems**

**a.** For **Reservation Systems** only, Paragraph **(1)** is deleted in its entirety and replaced by the following:

**(1)** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" caused by or resulting from any Covered Cause of Loss to the reservation system

of a franchiser or to a service upon which you depend for the booking of your reservations. This franchiser or other service cannot be owned by or leased to you and does not include travel agencies or online travel agencies.

**b. Limit of Insurance for Reservation Systems**

The most we will pay for loss in any one occurrence under **Reservation Systems** is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the **Business Income and Extra Expense** Coverage Extension.

**8. Special Event Cancellation**

**a.** For **Special Event Cancellation** only, Paragraph **(1)** is deleted in its entirety and replaced by the following:

**(1)** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property from a Covered Cause of Loss that causes the cancellation of a "special event". Such direct "loss" must occur away from your "premises" within the Coverage Territory.

Direct "loss" to property does not include direct "loss" to property that provides:

**(a)** Water Supply service;

**(b)** Power Supply service; or

**(c)** Communication Supply service, including services relating to internet access or access to any electronic network.

**b. Limits of Insurance for Special Event Cancellation**

The most we will pay for loss in any one occurrence under **Special Event Cancellation** is the Limit of Insurance indicated in the Summary of Coverage Limits. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the **Business Income and Extra Expense** Coverage Extension.

CIC0079

We will reduce the amount we pay by any income you earned from the use of a "guest room" that was reserved for the "special event" and that was reserved prior to the "special event" cancellation.

**c. Definitions**

For **Special Event Cancellation** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions:

"Special Event" means any public or private event including, but not limited to, any banquet, convention, concert, conference, seminar, wedding party, gathering or group meeting, taking place away from your "premises" and for which you have reserved "guest rooms".

"Guest Room" means a room or suite of rooms designed and used as sleeping accommodations.

**9. Transit Business Income**

**a.** For **Transit Business Income** only, Paragraph **(1)** is deleted in its entirety and replaced by the following:

**(1)** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to Covered Property while in due course of transit, caused by or resulting from any Covered Cause of Loss.

**b. Limit of Insurance for Transit Business Income**

The most we will pay under **Transit Business Income** is the Limit of Insurance indicated in the Summary of Coverage Limits in any one occurrence. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the **Business Income and Extra Expense** Coverage Extension.

**10. Business Income and Extra Expense Revised Limits of Insurance**

The last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this **Business Income and Extra Expense** Coverage Extension

is the Limit of Insurance indicated in the Summary of Coverage Limits.

**K. Contract Penalties**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGES, 4. Additional Coverage** is amended to include the following:

**Contract Penalties**

We will pay for written contract penalties you are required to pay due to your failure to provide your product or service as a direct result of a Covered Cause of Loss to Covered Property under this Coverage Part.

The most we will pay for all penalties in any one "coverage term" is the Limit of Insurance indicated in the Hotel Summary of Coverage Limits and is reduced by any coverage available under **L. Customer Inconvenience Remuneration Expenses** for that same customer. The Limit of Insurance provided by this Coverage Extension does not apply per location.

**L. Customer Inconvenience Remuneration Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Customer Inconvenience Remuneration Expenses**

We will pay reasonable customer inconvenience expenses you incur due to a failure to honor prearranged accommodations at your "premises". These expenses must result from direct "loss" to Covered Property at the "premises" as the result of a Covered Cause of Loss:

**(1)** The expenses include, but are not limited to, your costs to secure replacement accommodations of like kind and quality;

**(2)** Your costs to transport your customers to replacement accommodations; and

**(3)** The costs to stay at the replacement accommodations; however, we will only reimburse you for the cost of the customer's replacement accommodations that are in excess of the cost they would have spent at your "premises" had a direct "loss" not occurred.

The most we will pay for loss in any one occurrence is the Limit of Insurance indicated in the Summary of Coverage Limits but no more than $500 per customer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0080

**M. Emergency Vacating Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Emergency Vacating Expenses</u>

We will pay your actual and reasonable expenses to temporarily vacate the "premises", if vacating:

**(a)** Is necessary to prevent additional physical injury or threatened physical injury to persons on "premises"; or

**(b)** Is required by civil authority.

The **Emergency Vacating Expense** only applies if there is actual or threatened direct "loss" to Covered Property by a Covered Cause of Loss.

The most we will pay for loss in any occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

**N. Voluntary Parting Under False Pretense**

For the purposes of this endorsement only, the **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (2)(i), Voluntary Parting Under False Pretense** Exclusion does not apply to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**.

**O. Fences**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, f. Fences** is deleted in its entirety and replaced by the following:

<u>Fences</u>

If Buildings are Covered Property in this Coverage Part, we will pay for "loss" caused by a Covered Cause of Loss to outdoor fences for which a Limit of Insurance is not shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** that are located within 1,000 feet of the "premises". The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

**P. Fine Arts**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

<u>Fine Arts</u>

**(1)** We will pay for direct "loss" caused by a Covered Cause of Loss under this Coverage Part to apply to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

**(2)** The following exclusions in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** are deleted:

**(a)** Exclusion **(1)(b) Earth Movement**; and

**(b)** Exclusion **(1)(g) Water.**

**(3)** **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

We will determine the value of Covered Property in the event of direct "loss" at the market value at the time of direct "loss".

The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

**Q. Fire Department Service Charge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, c. Fire Department Service Charge** is deleted in its entirety and replaced by the following:

**c.** <u>Fire Department Service Charge</u>

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay, up to the Limit of Insurance indicated in the Summary of Coverage Limits in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

This Coverage is in addition to the Limits of Insurance shown in the Declarations and applies per location. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

CIC0081

**R.  Fire Protection Equipment Recharge**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge** is amended as follows:

The last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Additional Coverage is the actual cost you incur to recharge your automatic fire suppression system or portable fire extinguishers. This Coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

**S.  Guests' Property Limitation**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property, (8)** is deleted in its entirety and replaced by the following:

(8)  Personal Property of Others that is in your care, custody or control or for which you are legally liable:

    (a)  This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers);

    (b)  This does not include property of others for which you are legally liable as:

        1)  A carrier for hire; or

        2)  An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

    (c)  This does include property of guests staying at your hotel, but only if direct "loss" is caused by or results from fire, lightning, explosion, sprinkler leakage, or leakage from an automatic fire suppression system.

**T.  Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage,** Paragraph (3) is deleted in its entirety and replaced by the following:

(3)  For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is the Limit of Insurance indicated in the Summary of Coverage Limits. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of direct "loss" which results in "fungi", wet or dry rot, or bacteria, we will not pay more than a total of the Limit of Insurance indicated in the Summary of Coverage Limits even if the "fungi", wet or dry rot, or bacteria continues to be present or active, or recurs, in a subsequent "coverage term".

**U.  Increased Real Estate Tax Assessment Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Increased Real Estate Tax Assessment Expense**

We will pay the first increased real estate tax liability directly attributable to the increased real estate tax assessment resulting directly from the repair or reconstruction of a Covered Property that is damaged by a Covered Cause of Loss that occurs during the "coverage term". This Coverage Extension will apply only if:

    (a)  The real estate tax increase is assessed within 2 years of the covered "loss"; and

    (b)  The repair or reconstruction can be shown to be the cause of the Real Estate Tax Assessment Increase.

The most we will pay for loss in any one occurrence under this Coverage Extension is the lesser of the first increased real estate tax assessment or the Limit of Insurance indicated in the Summary of Coverage Limits.

**V.  Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show "4%" in the **OPTIONAL COVERAGES - Inflation Guard column** for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this 4% is

CIC0082

excess of that Inflation Guard percentage for that Building property.

## W. Key and Lock Expense

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGES, 4. Additional Coverage, f. Key and Lock Expense** is deleted in its entirety and replaced by the following:

### f. Key and Lock Expense

**(1)** If a key or master key to your building at a "premises" is lost, stolen, damaged or otherwise compromised, we will pay the lesser of the cost to**:**

    **a.** Re-key the lock;

    **b.** Install a new lock cylinder;

    **c.** Provide a new master key; or

    **d.** Replace the existing lock with a lock of similar kind and quality.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay for loss in any one occurrence under this Additional Coverage is the Limit of Insurance indicated in the Summary of Coverage Limits. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

## X. Keying Systems

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

### Keying Systems

**(1)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property** is extended to include your "keying systems". We will pay your necessary costs to upgrade or replace your "keying systems" that have suffered direct "loss" caused by or resulting from a Covered Cause of Loss.

**(2)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

"Keying systems" means programmable keying systems and any other mechanical apparatus needed to make the card keys perform as originally intended, including:

    **(a)** Mechanically or electronically coded key cards;

    **(b)** Card programmers;

    **(c)** Card readers;

    **(d)** Computers;

    **(e)** Related alarms;

    **(f)** Transceivers; or

    **(g)** Power supplies.

The most we will pay for loss in any one occurrence under this Additional Coverage is the Limit of Insurance indicated in the Summary of Coverage Limits. This coverage is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for Business Personal Property.

## Y. Nonowned Building Damage

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

    **(a)** Repair or replacement of encasing frames or alarm tapes; and

    **(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

The most we will pay for "loss" in any one occurrence under this Coverage Extension is:

**(1)** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0083

**(2)** The applicable Limit of Insurance for Business Personal Property found in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** or the Limit of Insurance indicated in the Summary of Coverage Limits, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in **(1)** above.

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

## Z. Outdoor Property

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits, but not more than $1,000 for any one tree, shrub, or plant.

## AA. Paved Surfaces

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

### Paved Surfaces

**1.** We will pay for direct "loss" resulting from any Covered Causes of Loss to bridges, roadways, walks, patios or other paved surfaces.

**2.** For this Additional Coverage, **SECTION A. COVERAGE, 2. Property Not Covered, i. Paved Surfaces** is deleted and replaced by the following:

**i.** Paved Surfaces

Bridges, roadways, walks, patios or other paved surfaces;

except as provided in **SECTION A. COVERAGE, 4. Additional Coverages**.

**3.** The most we will pay for loss in any one occurrence under this Additional Coverage is the Limit of Insurance indicated in the Summary of Coverage Limits.

## BB. Personal Effects

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 5. Coverage Extensions, l. Personal Effects**, the last two paragraphs are deleted in their entirety and replaced by the following:

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $1,000 per occurrence limitation for direct "loss" by theft.

The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits, but not more than $2,500 for the personal effects of any one person.

## CC. Pollutant Clean Up and Removal

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 4. Additional Coverages, h. Pollutant Clean Up and Removal**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for loss under this Additional Coverage for each "premises" is the Limit of Insurance indicated in the Summary of Coverage Limits; this limit includes the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This is in addition to the Limits of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

## DD. Property Off Premises

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-AGE, 5. Coverage Extensions, m. Property Off Premises** is deleted in its entirety and replaced by the following:

**m.** Property Off Premises

**(1)** We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, while it is away from the "premises", if it is:

**(a)** Temporarily at a location you do not own, lease, or operate; or

**(b)** In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

**(2)** This Coverage Extension does not apply to Covered Property at exhibitions or fairs or in transit.

CIC0084

The most we will pay for direct "loss" in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

## EE. Radio and Television Receiving Equipment

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Radio and Television Receiving Equipment

If Buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to your radio and television antennas, satellite dishes, and similar audio/visual receiving equipment, including their lead-in wiring, masts or towers that are located within 1,000 feet of the "premises".

The most we will pay for "loss" in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

## FF. Refrigerated Property in Transit

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Refrigerated Property in Transit

You may extend the insurance that applies under Coverage Extension **p. Transportation** to food spoilage resulting from the mechanical failure of refrigeration equipment while in transit. The most we will pay for "loss" in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

## GG. Signs

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, n. Signs**, the second paragraph is deleted in its entirety and replaced by the following:

The most we will pay for "loss" in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

## HH. Temperature Change

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY**

**COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Temperature Change

**(1) Coverage**

**(a)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

Covered Property means "perishable stock" located in a building at a "premises".

**(b)** **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

Covered Property does not include:

### "Perishable Stock" Not in Buildings

"Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**(2) Covered Causes of Loss**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

**a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless direct "loss" is:

**1)** Excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions**; or

**2)** Limited in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations**;

that follow.

**(3) Excluded Causes of Loss**

**(a)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclu-**

CIC0085

**sions** does not apply to this Coverage Extension, except as follows:

1) Exclusion **(1)(b) Earth Movement**;

2) Exclusion **(1)(c) Governmental Action**;

3) Exclusion **(1)(d) Nuclear Hazard**;

4) Exclusion **(1)(f) War and Military Action**;

5) Exclusion **(1)(g) Water**; or

6) Exclusion **(1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

**(b)** In addition to Paragraph **3.a.** of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

1) The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

2) The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

3) The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

   (a) Lack of fuel; or

   (b) Governmental order;

4) The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

5) Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**(4) Limits of Insurance**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**(a)** The most we will pay for loss in any one occurrence caused by "temperature change" is the Limit of Insurance indicated in the Summary of Coverage Limits.

**(b)** This **Temperature Change** Limit of Insurance is not an additional amount of insurance and will not increase the Limit of Insurance shown for Business Personal Property or "stock" in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

**(5) Duties in the Event of Loss**

For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** Give us immediate notice of direct "loss" caused by "temperature change". Also, include a description of the damaged "perishable stock" and all damaged "perishable stock" must be made available to us for inspection and verification.

**(6) Definitions**

The following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS:**

"Perishable stock" means personal property:

**(a)** Preserved and maintained under controlled conditions; and

**(b)** Susceptible to direct "loss" if the controlled conditions change.

"Temperature change" means:

**(a)** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**(b)** Mechanical breakdown of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers.

**(c)** Contamination by refrigerant.

**(d)** The freezing of "perishable stock" resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0086

## II.   Transportation

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** is deleted in its entirety and replaced by the following:

### p.   Transportation

We will pay for direct loss from a Covered Cause of Loss to apply to direct "loss" to your Covered Property, including personal property of others as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property**, while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

## JJ.   Underground Property

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Underground Property

**(1)**   We will pay for direct "loss" resulting from any of the Covered Causes of Loss to the following types of your Covered Property:

**(a)**   Foundations of covered buildings, structures, machinery or boilers, if their foundations are below the lowest basement floor or the surface of the ground if there is no basement; and

**(b)**   Underground pipes, flues or drains if they are attached to Covered Property.

**(2)**   For this Coverage Extension only, **SECTION A. COVERAGE, 2. Property Not Covered, g. Foundations** is deleted in its entirety and replaced by the following:

### g.   Foundations

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)**   The lowest basement floor; or

**(2)**   The surface of the ground, if there is no basement;

except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

**(3)**   For this Coverage Extension, **SECTION A. COVERAGE, 2. Property Not Covered, n. Underground Pipes, Flues or Drains** is deleted in its entirety and replaced by the following:

### n.   Underground Pipes, Flues or Drains

Underground pipes, flues or drains, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions.**

**(4)**   The most we will pay for direct "loss" in any one occurrence under this Coverage Extension is the Building Limit of Insurance applicable to the Covered Property indicated in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**. This does not act to increase the limit of insurance applicable to the damaged property.

## KK.   Unintentional Error in Description

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended to include the following:

An unintentional error in the description of the occupancy or address of Covered Property will not impair this insurance, provided you report the error to us as soon as practicable after the error becomes known to you.

## LL.   Unscheduled Appurtenant Buildings and Structures

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Appurtenant Buildings and Structures

**1.**   If Buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to your incidental appurtenant buildings or structures, within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

**2.**   If Business Personal Property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss within incidental appurtenant buildings or structures within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

FA 268 05 16          Includes copyrighted material of Insurance
Services Office, Inc., with its permission.          Page 20 of 23

CIC0087

3. Incidental appurtenant buildings or structures include:

   (a) Storage buildings;

   (b) Carports;

   (c) Garages;

   (d) Pump houses; or

   (e) Above ground tanks;

   which have not been specifically described in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**.

4. The most we will pay for loss under this Coverage Extension for any combination of "loss" to Building and Business Personal Property is the Limit of Insurance indicated in the Summary of Coverage Limits in any one occurrence regardless of the number of "premises" involved.

5. Payments made under this Coverage Extension are in addition to the applicable Limits of Insurance.

**MM. Utility Services**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services** is deleted in its entirety and replaced by the following:

**q. Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" and Extra Expense you sustain including the insurance provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense** to loss caused by or resulting from the partial or complete failure of the utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Services, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

(a) Utility generating plants;

(b) Switching stations;

(c) Substations;

(d) Transformers; and

(e) Transmission, distribution, service, or similar lines, including all such overhead lines of any type.

(2) Water Supply Services, meaning the following types of property supplying water to the "premises":

(a) Pumping stations; and

(b) Water mains.

(3) Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

(4) Communication Supply Services, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

(a) Communication transmission, distribution, service or similar lines including fiber optic lines, including all such overhead lines of any type;

(b) Coaxial cables; and

(c) Microwave radio relays, excluding satellites.

(5) This Coverage Extension does not apply to direct "loss" to "electronic data", including destruction or corruption of "electronic data".

(6) When loss from the partial or complete interruption of utility services to a "premises" is caused solely by "loss" to overhead communication transmission, distribution, service, or similar lines, including fiber optic lines, including all such overhead lines of any type:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0088

**(a)** The most we will pay for direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is the sublimit for Overhead Communication Transmission, Distribution, Service or Similar Lines indicated in the Summary of Coverage Limits. This limit is part of, not in addition to, the limits provided by this Coverage Extension; and

**(b)** For loss of "Business Income" and Extra Expense, **SECTION G. DEFINITIONS, 11.** "Period of restoration", Paragraph **a.** is deleted in its entirety and replaced by the following:

   **a.** Begins

   **(1)** 24 hours after the time of direct "loss" for "Business Income" Coverage; or

   **(2)** Immediately after the time of direct "loss" for Extra Expense Coverage.

The most we will pay for loss in any one occurrence under this Coverage Extension is the Limit of Insurance indicated in the Summary of Coverage Limits.

**NN.** Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems

For the purposes of this endorsement only,

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions**, is amended to include the following:

**Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

We will pay for direct "loss" to your Covered Property and loss of "Business Income" and Extra Expense caused by water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic or sump pump system or related equipment located on a "premises".

We will not pay the cost of repairing or replacing a sewer, drain, septic or sump pump system or any related parts or equipment.

**(1)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, 3)** is

deleted in its entirety and replaced by the following:

   **3)** Water that has entered and then backs up through and is discharged from a sewer, drain, septic or sump pump system or related equipment, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems.**

**(2)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(g) Water, 5)** is deleted in its entirety and replaced by the following:

   **5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4)** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2)**, except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems.**

**(3)** For this Coverage Extension only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended to include the following:

**Water Backup Deductible**

We will not pay for direct "loss" in any one occurrence caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain, septic or sump pump system or related equipment, until the amount of direct "loss" exceeds the Deductible shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS,** or $1,000, whichever is greater. We will then pay the amount of direct "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **(4)** of this Coverage Extension.

**(4)** The most we will pay for loss in any one occurrence is the **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems** Limit of Insurance indicated in the **Hotel Summary of Coverage Limits** for all direct "loss", loss of "Business Income", "Rental Value" and Extra Expense.

CIC0089

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**OO. Blanket Coverage Limit**

We will pay up to the Limit of Insurance indicated in the Summary of Coverage Limits in total in any one occurrence for the sum of all direct "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0090

# CRISIS EVENT EXPENSE COVERAGE
# ENDORSEMENT - ILLINOIS

## TABLE OF CONTENTS

Begins on Page:

A. Crisis Event Response Communication Expense ................................................................ 2

B. Post Crisis Event Expense ............................................................................................ 2

C. Crisis Event Business Income and Extra Expense .......................................................... 2

D. Exclusions ................................................................................................................... 4

    1. Exclusions Deleted for Crisis Event Expense Coverage Endorsement ........................ 4
    2. Additional Exclusions Applicable to Crisis Event Expense Coverage Endorsement ...... 4
        a. Any Loss Not Specifically Covered Under the Definition of Covered Crisis Event ........ 4
        b. Illegal or Criminal Acts ................................................................................. 4
        c. Third Party Bodily Injury or Property Damage .................................................. 4
        d. Communicable Disease or Virus ..................................................................... 4
        e. Fines or Penalties ........................................................................................ 4
        f. Perpetrator ................................................................................................. 4
        g. Ransom ...................................................................................................... 4

E. Annual Aggregate Limit of Insurance ............................................................................ 4

F. Loss Conditions ........................................................................................................... 5

    1. Appraisal ............................................................................................................ 5
    2. Duties in the Event of Loss .................................................................................... 5
    3. Loss Determination .............................................................................................. 6
    4. Loss Payment ...................................................................................................... 6

G. Additional Conditions ................................................................................................... 7

    1. Coinsurance ........................................................................................................ 7
    2. Deductibles ......................................................................................................... 7
    3. Loss or Damage Covered by this Endorsement ........................................................ 7

H. Definitions .................................................................................................................. 7

    1. "Covered communicable diseases" ......................................................................... 7
    2. "Covered crisis event" .......................................................................................... 7
    3. "Covered location" ............................................................................................... 8
    4. "Crisis event business income" .............................................................................. 8
    5. "Crisis event extra expense" ................................................................................. 8
    6. "Crisis event period of restoration" ....................................................................... 8
    7. "Crisis event response communication expense" ..................................................... 8
    8. "Fungi" ............................................................................................................... 8
    9. "Operations" ....................................................................................................... 9
    10. "Post crisis event expense" ................................................................................. 9
    11. "Rental value" ................................................................................................... 9
    12. "Suspension" .................................................................................................... 9

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

CIC0091

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRISIS EVENT EXPENSE COVERAGE
# ENDORSEMENT - ILLINOIS

This endorsement modifies insurance provided under the following:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)**

The provisions of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** apply except as otherwise provided in this endorsement. All numbers and letters used to designate paragraphs in this endorsement are specific to this endorsement only.

### SCHEDULE

| Coverage | Limits of Insurance | Deductible or Waiting Period |
|---|---|---|
| **A. Crisis Event Response Communication Expense** | $100,000 | None |
| **B. Post Crisis Event Expense** | $100,000 | None |
| **C. Crisis Event Business Income and Extra Expense** | $100,000 | **24 hours waiting period applies to Business Income. No waiting period applies to Extra Expense** |
| | **Annual Aggregate Limit: $** ☒ **No Annual Aggregate Limit applies when this box is checked.** | |

**A. Crisis Event Response Communication Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Crisis Event Response Communication Expense**

We will pay your "crisis event response communication expense" resulting from a "covered crisis event" at your "covered location" for sixty (60) consecutive days after a "covered crisis event" occurs. Payment of all loss covered under this Additional Coverage shall not exceed the Limit of Insurance shown in the Schedule for Coverage **A. Crisis Event Response Communication Expense**.

**B. Post Crisis Event Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-**

**AGE, 4. Additional Coverages** is amended to include the following:

**Post Crisis Event Expense**

We will pay your "post crisis event expense" resulting from a "covered crisis event" at your "covered location". Payment under this Additional Coverage will begin immediately after the "covered crisis event" and apply for up to sixty (60) consecutive days but will not exceed the Limit of Insurance shown in the Schedule for Coverage **B. Post Crisis Event Expense**.

**C. Crisis Event Business Income and Extra Expense**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense** is amended as follows for this endorsement only:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0092

## Crisis Event Business Income and Extra Expense

For **Crisis Event Business Income and Extra Expense** only, Paragraphs **(1)** and **(2)** are deleted in their entirety and replaced by the following:

**(1) Crisis Event Business Income and Extended Business Income**

**(a) Crisis Event Business Income**

We will pay for the actual loss of "crisis event business income" you sustain due to the necessary "suspension" of your "operations" during the "crisis event period of restoration". The "suspension" must be caused by or result from a "covered crisis event" at your "covered location". This coverage will begin after the Waiting Period shown in Item **C.** of the Schedule and end the earlier of:

**1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no "covered crisis event" occurred; or

**2)** Sixty (60) consecutive days after the "covered crisis event" occurred.

**(b) Extended Business Income**

If the necessary "suspension" of your "operations" caused by or resulting from a "covered crisis event" produces a "crisis event business income" "loss" payable under this endorsement, we will pay for the actual loss of "crisis event business income" you incur during the period that:

**1)** Begins on the date "operations" are resumed or tenability of your "covered location" is restored; and

**2)** Ends on the earlier of:

**a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed had no "covered crisis event" occurred; or

**b)** The date you could restore tenant occupancy, with reasonable speed, to a level that would have generated the "rental value" that would have existed if the "covered crisis event" had not occurred; or

**c)** Thirty (30) consecutive days after the date determined in **(b)1)** above.

Crisis Event Business Income and Extended Business Income do not apply to loss of "Business Income" or loss of "rental value" incurred as a result of unfavorable business conditions caused by the impact of the "covered crisis event" in the area where the described "premises" are located.

**(2) Crisis Event Extra Expense**

**(a)** We will pay "crisis event extra expense" you incur during the "crisis event period of restoration" caused by or resulting from a "covered crisis event" to:

**1)** Avoid or minimize the "suspension" of your business and to continue "operations" at the "premises" or at replacement or temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(b)** We will not pay for the cost to repair or replace property.

**(c)** This coverage will end the earlier of:

**1)** The date your "operations" are restored to a condition similar to that which would have existed had there been no "covered crisis event"; or

**2)** Sixty (60) consecutive days after the "covered crisis event" occurs.

The most we will pay for all loss covered under the Crisis Event Business Income and Extra Expense Coverage shall not exceed the Limit of Insurance shown in the Schedule for Coverage **C. Crisis Event Business Income and Extra Expense**. The Limit of Insurance applies regardless of the number of "covered locations" affected.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0093

## D. Exclusions

### 1. Exclusions Deleted for Crisis Event Expense Coverage Endorsement

The following Exclusions from the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** are deleted but only as respects to the coverage provided by this **CRISIS EVENT EXPENSE COVERAGE ENDORSEMENT**. Otherwise, all Exclusions continue to apply to all other "loss" claimed under this policy unless specifically stated otherwise.

**a.** "Fungi", Wet Rot, Dry Rot, and Bacteria

**b.** Dishonest or Criminal Acts

**c.** Acts or Decisions

### 2. Additional Exclusions Applicable to Crisis Event Expense Coverage Endorsement

In addition to any other Exclusions which apply to this policy, the following Exclusions apply only to this **CRISIS EVENT EXPENSE COVERAGE ENDORSEMENT**. We will not pay for loss caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Any Loss Not Specifically Covered Under the Definition of Covered Crisis Event**

Any loss or consequential loss that is not specifically covered under the definition of a "covered crisis event".

**b. Illegal or Criminal Acts**

Illegal, dishonest or criminal acts by you or any of your partners, directors, officers, trustees, employees (including leased or temporary workers), authorized representatives or if you are a limited liability company, your members or your managers:

**(1)** Whether acting alone or in collusion with others; or

**(2)** Whether or not occurring during the hours of employment.

**c. Third Party Bodily Injury or Property Damage**

Any claim or suit by a third party for bodily injury or property damage including defense costs related to bodily injury or property damage, except for those expenses which are specifi-

cally provided as a "post crisis event expense".

**d. Communicable Disease or Virus**

Except as provided as a "covered communicable disease" in item **H.2.b. Premises Contamination**, this endorsement does not apply to any loss directly or indirectly caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. This Exclusion applies to, but is not limited to, any loss directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

**e. Fines or Penalties**

Fines or penalties levied against you by a Board of Health or any other governmental authority.

**f. Perpetrator**

Any cost, loss or expense incurred directly or indirectly by any person, or the family or associates of such person, who directly or indirectly instigated, funded, threatened, perpetrated, participated in or otherwise supported the "covered crisis event" or who supported any activities leading to the "covered crisis event".

**g. Ransom**

Any cost, loss, expense or payment of ransom or reward, directly or indirectly, to actual or alleged perpetrators causing or threatening to cause a "covered crisis event".

## E. Annual Aggregate Limit of Insurance

The Annual Aggregate Limit shown in the Schedule is the most we will pay under this endorsement for all covered loss sustained in the "coverage term", regardless of the number of "covered crisis events" and the number of "covered locations" involved. If a loss payment does not exhaust this amount, then the bal-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0094

ance is available for subsequent loss sustained during the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to a "covered crisis event" which begins in the "coverage term" and continues or results in additional loss in a subsequent "coverage term", all loss is deemed to be sustained in the "coverage term" in which the "covered crisis event" began.

### F. Loss Conditions

The **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS** apply to the coverages provided by this endorsement. The following Loss Conditions are amended as described below, but only with respect to the coverages provided by this endorsement.

#### 1. Appraisal

If we and you disagree on the amount of the Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. Each party will then select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

#### 2. Duties in the Event of Loss

**a.** In the event of a "covered crisis event" you must:

**(1)** Notify law enforcement if a law may have been broken.

**(2)** Notify us of any "covered crisis event" or any event that is likely to lead to a "covered crisis event" within forty-eight (48) hours of first becoming aware of the event. Notification does not guarantee that a "covered crisis event" has occurred.

**(3)** Provide a written notification, at our request, immediately after the verbal notification. The written notification shall include:

**(a)** A description of how, when and where the "covered crisis event" occurred or is occurring;

**(b)** Name, address and other pertinent information, including the cause, nature, location and extent of injury to any injured persons;

**(c)** Name, address and other pertinent information of any witnesses to the event;

**(d)** Nature and location of any physical damage to the "premises"; and

**(e)** Response activities undertaken by you, emergency responders or others.

**(4)** Take all reasonable steps to protect persons from further harm and to protect property from further damage and keep a record of your expenses necessary to do so for consideration in the settlement of the claim. If feasible, set the damaged property aside and in the best possible order for examination. This will not increase your Limit of Insurance as shown in the Schedule for Crisis Event Expense Coverage. However, we will not pay for any subsequent loss resulting from other than a "covered crisis event".

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and permit us to examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(6)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

CIC0095

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**(9)** Allow us to examine any insured under oath, outside the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of "crisis event business income" loss will be determined based on:

**(1)** The Net Income of the business before the "covered crisis event" occurred;

**(2)** The likely Net Income of the business if no "covered crisis event" had occurred, but not including any Net Income that would have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the "covered crisis event" on customers or other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the "covered crisis event"; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of "crisis event extra expense" will be determined based on:

**(1)** All necessary expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "crisis event period of restoration" if no "covered crisis event" had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "crisis event period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(2)** Necessary expenses that reduce the "crisis event business income" loss that otherwise would have been incurred.

**c.** Resumption of Operations

We will reduce the amount of your:

**(1)** "Crisis event business income" loss, other than "crisis event extra expense", to the extent you can resume your "operations", in whole or in part, at the affected "covered location" or elsewhere;

**(2)** "Crisis event extra expense" loss to the extent you can return "operations" to normal and discontinue such "crisis event extra expense".

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**e.** The amount of "crisis event response communication expense" loss will be determined based on the additional expenses incurred by you to manage your organization's communications to your employees, shareholders, customers, government authorities, news media and other members of the public after the "covered crisis event".

**4. Loss Payment**

We will pay for "covered crisis event" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this endorsement, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0096

## G. Additional Conditions

The **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS** apply to the coverages provided by this endorsement. The following Conditions are amended but only with respect to the coverages provided by this endorsement.

### 1. Coinsurance

The Coinsurance Additional Condition does not apply.

### 2. Deductibles

Policy deductibles do not apply to the coverage provided by this endorsement other than the Waiting Period shown in the Schedule of Coverages applicable to "crisis event business income".

### 3. Loss or Damage Covered by this Endorsement

Loss or damage by a "covered crisis event" only applies to the coverage provided specifically by this endorsement. "Covered crisis event" does not apply to any other insurance provided by this policy, including but not limited to any coverage for Business Income and Extra Expense. A "covered crisis event" is not a Covered Cause of Loss in any Coverage Form unless specifically added by another endorsement as a Covered Cause of Loss to that Coverage Form.

## H. Definitions

The following definitions apply in addition to **SECTION G. DEFINITIONS** but only with respect to the coverages provided by this endorsement.

1. "Covered communicable diseases" means any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, conditions or illnesses, except this endorsement does not apply to any "loss" directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

2. "Covered crisis event" means the following:

   a. **Violent Act**

   A malicious act, attempt or threat committed on your "premises" against any person that results in physical injury or death to such person or an innocent bystander. This includes the direct "loss" or damage to your "premises" or the property of others on your "premises" resulting from such act, attempt or threat. This does not include such acts, attempts or threats committed by you or by any of your partners, directors, officers, trustees, employees (including leased or temporary workers), authorized representatives or if you are a limited liability company, your members or your managers. Any such act, attempt or threat must be determined to have been credible.

   b. **Premises Contamination**

   The necessary closure of all or part of your "covered location" due to any sudden, accidental and unintentional contamination or impairment of the "covered location" which results in clear, identifiable, internal or external visible symptoms of bodily injury, illness or death of any person. This includes "covered locations" contaminated by a "covered communicable disease" or Legionnaires' disease, but it does not include "covered locations" contaminated in whole or in part by other "pollutants", "fungi" or bacteria except as provided by "covered communicable disease".

   c. **Contaminated Food**

   1) The necessary closure of all or part of your "covered location" ordered by a Board of Health or any other governmental authority as a result of the discovery or belief that contaminated food or drink has been served to patrons at your "covered location".

   2) The necessary announcement by you, the Board of Health or any other governmental authority warning the public of a health hazard at your "covered location" because of the discovery or verified belief that contaminated food or drink has been served to your patrons.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0097

**d. Child Abduction or Kidnap**

A felony act, attempt or threat to un-lawfully seize and detain a person under the age of sixteen (16) from your "covered location" by someone other than the person's parent or guardian. Any such act, attempt or threat must be determined to have been credible.

**e. Stalking**

A felony act, attempt or threat by a person directed at one or more of your employees or customers, while on your "covered location", who ex-presses or implies a credible intent to place your employee or customer in reasonable fear of death or serious bodily harm.

**f. Sexual Assault**

A felony act, attempt or threat of sex-ual assault that is directed at one or more persons while on your "covered location". Any such act, attempt or threat must be determined to have been credible.

**g. Criminal Use of a Firearm**

A felony act, attempt or threat that in-volves the unlawful use of a firearm or device designed to cause harm or damage while on your "covered loca-tion". Any such act, attempt or threat must be determined to have been credible.

**h. Other Emergency Events**

When any of the following events oc-cur at your "covered location" and re-sult in injury or damage causing sig-nificant regional or national news media coverage of you or your "oper-ations":

**1)** Fire or explosion;

**2)** Construction accident;

**3)** Equipment failure; or

**4)** Workplace accident.

**3.** "Covered location" means that part of a "premises" you occupy, including the area within 1,000 feet thereof. If you have more than one "covered location", the term "covered location" means only the location at which the "covered crisis event" oc-curred.

**4.** "Crisis event business income" means the:

**a.** Net income (net profit or loss before income taxes), including "Rental Val-ue", that would have been earned or incurred before the "covered crisis event"; and

**b.** Continuing normal operating expens-es incurred, including payroll.

**5.** "Crisis event extra expense" means nec-essary expenses you incur during the "cri-sis event period of restoration" that you would not have incurred if there had been no "covered crisis event" at your "covered location".

**6.** "Crisis event period of restoration" means the period of time that:

**a.** Begins:

**1)** After the Waiting Period shown in Item **C.** of the Schedule for "crisis event business income" following the date of the "cov-ered crisis event" at your "cov-ered location"; or

**2)** Immediately on the date of the "covered crisis event" at your "covered location" for "crisis event extra expense"; and

**b.** Ends on the earlier of the date when, using reasonable speed, "operations" at your "covered location" should be returned to the condition that would have existed had the "covered crisis event" not occurred.

**7.** "Crisis event response communication expense" means:

**a.** Reasonable fees and expenses you necessarily incur after a "covered cri-sis event" occurs for the services of a public relations or similar professional crisis management organization to assist or advise you in order to mini-mize negative publicity and restore or otherwise positively communicate the image of your "operations"; and

**b.** The reasonable additional expense you necessarily incur after a "covered crisis event" occurs above your nor-mal expenses to minimize negative publicity and restore or otherwise positively communicate the image of your "operations";

**c.** Any expense incurred for services beyond sixty (60) consecutive days after a "covered crisis event" occurs is not covered by this endorsement.

**8.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any

**FA 283 IL 05 16**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **Page 8 of 9**

CIC0098

form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. However, "fungi" does not include "fungi" on food for human consumption.

9. "Operations" means:

   **a.** Your business activities occurring at the "covered location"; and

   **b.** The ability to rent your "premises" for "rental value".

10. "Post crisis event expense" means reasonable and necessary expenses incurred by your employees, customers or other persons:

    **a.** Who were physically on your "covered location" at the time and at the specific location where the "covered crisis event" occurred; and

    **b.** Who suffered physical harm or other medically-based harm directly due to the "covered crisis event" that results in:

       1) First aid or emergency care at the time of the "covered crisis event";

       2) Medical treatment;

       3) Professional psychological counseling or other necessary professional mental health treatment;

       4) Ambulance or transportation costs to and from a local provider of such treatments; or

    5) Funeral and burial expenses for those persons who died as a result of the "covered crisis event".

    Coverage applies only to those whose treatment or expense arises directly from the "covered crisis event".

    All covered treatments and expenses must take place within sixty (60) consecutive days after the "covered crisis event" occurred.

11. "Rental value" means "Business Income" that consists of:

    **a.** Net income (net profit of loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "covered location" as furnished and equipped by you, including fair rental value of any portion of the "covered location" which is occupied by you; and

    **b.** Continuing normal operating expenses incurred in connection with that "covered location", including:

       1) Payroll; and

       2) The amount of charges which are the legal obligation of the tenants but would otherwise be your obligations.

12. "Suspension" means:

    **a.** The slowdown or cessation of your business activities; or

    **b.** That part or all of the "covered location" is rendered untenable.

CIC0099



# THE BRIDGE ENDORSEMENT

### TABLE OF CONTENTS

Begins on Page:

Schedule of Coverage Limits ....................................................................................................2

SECTION I - COVERAGES................................................................................................3

A.   Business Travel Benefit ...............................................................................................3

B.   Conference Cancellation .............................................................................................3

C.   Donation Security ........................................................................................................4

D.   Emergency Travel Expense .........................................................................................5

E.   Fundraising Event Cancellation Expense ....................................................................5

F.   Image Restoration and Counseling Expense ...............................................................6

G.   Key Individual Replacement Expense..........................................................................6

H.   Kidnap Expense ..........................................................................................................7

I.   Lease Assessment.......................................................................................................8

J.   Leasehold Improvements.............................................................................................8

K.   Political Unrest Evacuation Expense ...........................................................................8

L.   Premises Boundary Increase .......................................................................................9

M.   Temporary Meeting Space Expense ............................................................................9

N.   Travel Delay Expense ..................................................................................................9

O.   Unauthorized Business Card Use ..............................................................................10

P.   Unintentional Error in Description ..............................................................................10

Q.   Workplace Violence Counseling Expense...................................................................10

R.   Deductible..................................................................................................................11

SECTION II - CONDITIONS...............................................................................................11

FA 286 05 16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Page 1 of 12

CIC0100

# THE BRIDGE ENDORSEMENT
## BRIDGE SCHEDULE OF COVERAGE LIMITS

| <u>Coverages:</u> | <u>Limit of Insurance:</u> |
|---|---|
| Business Travel Benefit | $50,000 |
| Conference Cancellation | $25,000 |
| Donation Security | $50,000 |
| Emergency Travel Expense | $50,000 |
| Fundraising Event Cancellation Expense | $25,000 |
| Image Restoration and Counseling Expense | $50,000 |
| Key Individual Replacement Expense | $50,000 |
| Kidnap Expense | $50,000 |
| Lease Assessment | $2,500 |
| Leasehold Improvements | $25,000 |
| Political Unrest Evacuation Expense | $25,000 ($5,000 per employee) |
| Temporary Meeting Space Expense | $25,000 |
| Travel Delay Expense | $1,500 |
| Unauthorized Business Card Use | $1,500 |
| Workplace Violence Counseling Expense | $50,000 |

| **Deductible:** |
|---|
| $500.00 |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0101

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THE BRIDGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to this Coverage Part, or by any other Coverage Part forming a part of the policy of insurance of which this Coverage Part forms a component.**

## SECTION I - COVERAGES

### A. Business Travel Benefit

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Business Travel Benefit

1. We will pay you the business travel benefit if your current "director or officer" while occupying, as a fare-paying passenger, a public conveyance provided and operated by a commercial transportation carrier for regular passenger service by land, water, or air suffers "injury" while traveling for purposes related to your business pursuits during the "coverage term".

2. We will not pay business travel benefit for "injury" caused directly or indirectly by any of the following:

   a. An intentional injury by the insured, "director or officer" or decedent;

   b. An act of suicide or attempted suicide by the insured, "director or officer" or decedent;

   c. An act of war; or

   d. A disease process the insured, "director or officer" or decedent was diagnosed with prior to the suffered "injury" for which coverage under this Coverage Extension is sought.

3. For **Business Travel Benefit** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS,** is amended to include the following:

   "Injury" means:

   a. Accidental loss of life caused by physical injury to the body;

   b. Accidental loss of limbs or multiple fingers; or

   c. Accidental total loss of sight, speech or hearing.

   The "injury" outlined in Paragraphs **a.**, **b.**, and **c.** above must physically occur to the current "director or officer".

4. For **Business Travel Benefit** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS,** is amended to include the following:

   "Director or officer" means that particular current director or current officer for which coverage under this Coverage Extension is sought.

   The most we will pay for all "injury" under **Business Travel Benefit** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

   Section **I, R. Deductible** applies.

### B. Conference Cancellation

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Conference Cancellation

1. We will reimburse the insured for any "business-related conference expense" incurred and not reimbursed by any other source as the result of a cancellation of a conference or convention. The cancellation must be the direct result of an order made by a civil authority responding to a "natural catastrophe" or to a "communica-

CIC0102

ble disease" outbreak during the "coverage term".

**2.** For **Conference Cancellation** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**a.** "Business-related conference expense" means those expenses incurred by you for your employee(s)scheduled to attend a conference or convention provided that the employee(s) was (were) registered for the conference or convention at least 30 days prior to the conference's or convention's cancellation.

**b.** "Communicable disease " means any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, conditions or illnesses, except this endorsement does not apply to any "loss" directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

**c.** "Natural catastrophe" means hurricane, tornado, earthquake or flood.

The most we will pay for all "business related conference expense" under **Conference Cancellation** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**C. Donation Security**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Donation Security**

**1.** We will reimburse you for a "failed donation" incurred and not reimbursed by any other source.

**2.** For non-cash donations, the value of the "failed donation" will be determined based on the fair market value of the non-cash item at the time of the "failed donation".

**3.** For **Donation Security** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

"Failed donation" means notice to the insured during the "coverage term" of:

**a.** The bankruptcy or reorganization of any donor whereby such bankruptcy or reorganization prevents the donor from honoring a written pledge, made during the "coverage term", of funds or other measurable, tangible property to the insured provided that the donor has never been in bankruptcy or filed for bankruptcy/reorganization prior to the time the donor's pledge was made to you; or

**b.** The unemployment or "incapacitation" of an individual donor during the "coverage term" preventing the donor from honoring a prior written pledge of funds or other measurable, tangible property to the insured provided that, if the donor is an individual who becomes unemployed or "incapacitated":

**(1)** Neither you nor the donor shall have had reason to believe the donor would become unemployed or "incapacitated" prior to the donation date;

**(2)** The individual donor is unemployed or "incapacitated" for at least 60 days before payment is made by the Company; and

**(3)** There is a written pledge of funds or other measurable, tangible property dated during the "coverage term".

**4.** For **Donation Security** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

"Incapacitated or incapacitation" means a person who is impaired by physical injury, physical illness, or physical disability. The cause of the physical injury, physical illness or physical disability must be accidental.

**5.** A donation amount which is to be collected by you over a period of more than 12 months will be deemed a single donation.

CIC0103

The most we will pay for all "failed donations" under **Donation Security** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**D. Emergency Travel Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Emergency Travel Expense**

1.  We will reimburse the reasonable "emergency travel expense", while traveling for purposes related to your business pursuits during the "coverage term", incurred by your current director or officer and necessitated by a "certified act of terrorism" which:

    a.  Occurs during the "coverage term"; or

    b.  Begins to occur during the "coverage term".

2.  For **Emergency Travel Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

    a.  "Emergency travel expense" means:

        (1)  Hotel expense incurred, and not reimbursed by any other source, as the result of the cancellation of scheduled transportation by a commercial transportation carrier for regular passenger service by land, water, or air. The cancellation must occur within forty-eight hours of a "certified act of terrorism"; and

        (2)  The increased amount incurred and not reimbursed by any other source for air or train fare resulting from cancelling and rescheduling a form of transportation to replace a similarly scheduled form of transportation canceled by a commercial transportation carrier.

    b.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act.

The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

(1)  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

(2)  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy of affect the conduct of the United States Government by coercion.

The most we will pay for all emergency travel expenses under **Emergency Travel Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**E. Fundraising Event Cancellation Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Fundraising Event Cancellation Expense**

1.  We will reimburse you for fundraising event related expense incurred, and not reimbursed by any other source, due to the cancellation of a fundraising event. However:

    a.  The canceled fundraising event must not be rescheduled within the "coverage term"; and

    b.  The fundraising event cancellation must be the direct result of an order made by a civil authority responding to a "natural catastrophe" or a "communicable disease" outbreak during the "coverage term".

2.  For **Fundraising Event Cancellation Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

    a.  "Communicable disease" means any disease or any related or resulting diseases, viruses, complexes, symptoms, manifestations, effects, condi-

CIC0104

tions or illnesses, except this endorsement does not apply to any "loss" directly or indirectly attributable to Anthrax, Avian Influenza, Crimean-Congo Hemorrhagic Fever, Dengue Hemorrhagic Fever, Ebola Hemorrhagic Fever, Francisella Tularensis, Influenza, Lassa Fever, Marburg Hemorrhagic Fever, Meningococcal disease, Plague, Rift Valley Fever, Severe Acute Respiratory Syndrome, Smallpox, Tularemia, Yellow Fever or any pandemic or similar influenza which is defined by the United States Center for Disease Control as virulent human influenza that may cause global outbreak, or pandemic, or serious illness.

**b.** "Natural catastrophe" means hurricane, tornado, earthquake or flood.

The most we will pay for all fundraising event cancellation expenses under **Fundraising Event Cancellation Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**F. Image Restoration and Counseling Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Image Restoration and Counseling Expense**

**1.** We will pay your "image restoration and counseling expense" resulting from a "covered event" that occurs during the "coverage term".

**2.** For **Image Restoration and Counseling Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**a.** "Covered event" means an actual or alleged act, attempt or threat of sexual misconduct or sexual molestation directed at one or more of your clients while in your care, custody and control, committed by you, any of your partners, directors, officers, employees, independent contractors or volunteers.

**b.** "Image restoration and counseling expense" means reasonable fees

and expenses you necessarily incur after a "covered event" occurs for:

**(1)** The services of a public relations or similar professional image restoration organization to assist or advise you in order to minimize negative publicity and restore or otherwise positively communicate the image of your "operations".

**(2)** Legal counseling and professional psychological counseling or other necessary professional mental health treatment for you, any of your partners, directors, officers or employees as a result of a "covered event". These "image restoration and counseling expenses" are payable only if and when the accused is acquitted or is discharged from being accused of committing the "covered event".

**(3)** The recruitment of a replacement for an officer who has been relieved of their duties in your "operations" as a result of the "covered event".

The most we will pay for all "image restoration and counseling expense" under **Image Restoration and Counseling Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**G. Key Individual Replacement Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Key Individual Replacement Expense**

**1.** We will pay the reasonable "replacement expense" incurred, and not reimbursed by any other source, to replace your Chief Executive Officer or your Executive Director if your incumbent Chief Executive Officer or Executive Director is unable to continue due to death or permanent disability resulting from an injury that takes place during the "coverage term".

**2.** For **Key Individual Replacement Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS**, is amended to include the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0105

"Replacement expense" means:

**a.** Costs of advertising the employment position opening;

**b.** Travel, lodging, and meals incurred in interviewing job applicants for the position opening; and

**c.** Reasonable extra expenses incurred with our prior consent in finding, interviewing and negotiating with the job applicants including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up employment contracts.

The most we will pay for all "replacement expense" under **Key Individual Replacement Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**H. Kidnap Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Kidnap Expense**

**1.** We will pay the reasonable "kidnap expense" incurred by you or your current director or officer as a result of the "kidnap" of a "covered person" that takes place during the "coverage term".

This coverage does not apply to any "kidnapping" by or at the direction of any past or present family member of the "covered person".

**2.** For **Kidnap Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**a.** "Covered person" means:

**(1)** Any current director or officer of the named insured; or

**(2)** The spouse, parent, or child of a current director or officer of the named insured.

**b.** "Kidnap", "kidnapped", or "kidnapping" means the illegal taking and holding of a "covered person" by an individual who demands a "ransom". The "ransom" must specifically be demanded from your assets as a

condition for the release of the "covered person".

**c.** "Kidnap expense" means:

**(1)** Fees and expenses of an independent negotiator you have hired with our prior approval;

**(2)** Incurred interest of loans taken for the purpose of paying "ransom", provided that the loan is repaid within seven days of the insured receiving reimbursement from us;

**(3)** Travel and accommodation expenses incurred by any current director or officer of the named insured;

**(4)** Reward paid by the insured, with our prior approval, to an "informant" for information which leads to the arrest and conviction of parties responsible for a "kidnapping", provided that the offer of such reward is approved by the local law enforcement officials; and

**(5)** Gross salary including bonuses and allowances paid by you to your "kidnapped" director or officer which is contractually due at the time the "kidnapping" occurs. The salary will be paid for a period beginning on the date of the "kidnap" and will end upon the earlier of:

**(a)** Up to 30 days after the release of the director or officer, if the director or officer has not yet returned to work;

**(b)** The discovery of the death of the director or officer;

**(c)** 120 days after we receive the last credible evidence following the "kidnapping" that the director or officer is still alive;

**(d)** 12 months after the date of the "kidnapping"; or

**(e)** The exhaustion of the kidnap expense limit.

**d.** "Ransom" means money or other consideration demanded or paid for the release of a "covered person".

The most we will pay for all "kidnap expense" under **Kidnap Expense** in any one "coverage

CIC0106

term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**I. Lease Assessment**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Lease Assessment**

Your Business Personal Property insurance coverage is extended to apply to your share of any assessment charged to all tenants by the building owner as a result of direct damage caused by or resulting from a Covered Cause of Loss that occurs during the "coverage term" to building property you occupy at a "premises" as agreed to in your written lease agreement.

The most we will pay for all "loss" under **Lease Assessment** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**J. Leasehold Improvements**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Leasehold Improvements**

If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property during the "coverage term" at a "premises" you occupy as a tenant, and you cannot legally remove Tenant Improvements and Betterments, as described in **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property, (6)** we will extend your Business Personal Property insurance coverage to apply to the unamortized value of Tenant Improvement and Betterment that remain and that you were forced to abandon.

The most we will pay for all "loss" under **Leasehold Improvements** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**K. Political Unrest Evacuation Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVER-**

**AGE, 5. Coverage Extensions** is amended to include the following:

**Political Unrest Evacuation Expense**

1. We will reimburse any current director, officer, employee or volunteer of the named insured for "emergency evacuation expense" that is incurred as the direct result of "political unrest" outside of the United States of America, its territories and possessions, Puerto Rico or Canada. We will only pay "emergency evacuation expense" directly related to traveling for your business pursuits and we will only pay "emergency evacuation expenses" not reimbursed by any other source. The "political unrest" must occur in the country where your current director, officer, employee or volunteer is traveling and the "political unrest" must occur during the "coverage term".

   No coverage is granted for travel to countries in a state of "political unrest" at the time of departure of the travel or countries under a United States Department of State trade or travel restriction at the time of incident of "political unrest".

2. For **Political Unrest Evacuation Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

   a. "Emergency evacuation expense" means:

      (1) Additional lodging expenses;

      (2) Additional transportation costs;

      (3) The cost of obtaining replacement of lost or stolen travel documents necessary for evacuation from the area of "political unrest"; and

      (4) Translation services, message transmittals and other communication expenses provided that these expenses are not otherwise reimbursable.

   b. "Political unrest" means:

      (1) A short-term condition of disturbance, turmoil or agitation within a foreign country that poses imminent risks to the security of citizens of the United States;

      (2) A long-term condition of disturbance, turmoil or agitation that makes a foreign country danger-

CIC0107

ous or unstable for citizens of the United States; or

**(3)** A condition of disturbance, turmoil or agitation in a foreign country that constrains the United States Government's ability to assist citizens of the United States, due to the closure or inaccessibility of an embassy or consulate or because of a reduction of its staff for which either an alert or travel warning has been issued by the United States Department of State.

The most we will pay for all "emergency evacuation expenses" under **Political Unrest Evacuation Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**L. Premises Boundary Increase**

Any reference to 1,000 feet in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM,**

1. **SECTION A. COVERAGE, 1. Covered Property, a. Building, (5)(b);** or

2. **SECTION A. COVERAGE, 1. Covered Property, b. Outdoor Signs;** or

3. **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property;** or

4. **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, (2) Limitations - Various Property for Specified Causes, (b), 1);** or

5. **SECTION A. COVERAGE, 5. Coverage Extensions;** or

6. **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (1) Business Income;** or

7. **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense, (4) Alterations and New Buildings, (c);** or

8. **SECTION A. COVERAGE, 5. Coverage Extensions, f. Fences;**

is increased to 1,800 feet.

**M. Temporary Meeting Space Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Temporary Meeting Space Expense**

We will reimburse you the meeting space rental expense incurred, and not reimbursed by any other source, due to the temporary unavailability of your primary meeting office space on the "premises". The unavailability of your primary meeting space must be the result of direct "loss" to a climate control system or hot water heater during the "coverage term". However, **Temporary Meeting Space Expense** does not apply to the renting of a temporary meeting space solely for use by you, your "officers" or directors unless the temporary meeting space is also required for meeting with vendors, clients or customers outside your organization.

The most we will pay for all temporary meeting space rental expenses under **Temporary Meeting Space Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**N. Travel Delay Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**Travel Delay Expense**

1. We will reimburse your current director or officers any "travel delay expense" incurred, and not reimbursed by any other source, as a result of delay or cancellation of any regularly scheduled travel on a commercial transportation carrier. The regularly scheduled travel must be directly related to your business pursuits and the cause of the cancellation must occur during the "coverage term". However, we will only pay for "travel delay expense" first incurred seventy-two (72) hours after the cancellation occurred.

   We will not pay for "travel delay expense" due to a "certified act of terrorism".

2. For Travel Delay Expense only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

   **a.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terror-

CIC0108

ism Risk Insurance Act for a "certified act of terrorism" include the following:

**(1)** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**(2)** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy of affect the conduct of the United States Government by coercion.

**b.** "Travel delay expense" means the following travel-related expense for which your director or officer produces a receipt:

**(1)** Meals and lodging;

**(2)** Alternative transportation;

**(3)** Clothing and necessary toiletries; or

**(4)** Emergency prescription and non-prescription drug expenses.

The most we will pay for all "travel delay expense" under **Travel Delay Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**O. Unauthorized Business Card Use**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Unauthorized Business Card Use**

**1.** We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge cards issued in your business name, including:

**(a)** Fund transfer cards;

**(b)** Charge plates; or

**(c)** Telephone cards.

**2.** For this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE,**

**2. Property Not Covered, a. Accounts, Deeds, Money or Securities** is deleted in its entirety and replaced with the following:

**Accounts, Deeds, Money or Securities**

Except as provided in SECTION A. COVERAGE, 4. Additional Coverages, Unauthorized Business Card Use; and **5. Coverage Extensions, a. Accounts Receivable**, Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities".

**3.** The most we will pay for all loss of money or charges and costs under **Unauthorized Business Card Use** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**P. Unintentional Error in Description**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended to include the following:

An unintentional error in the description of the occupancy or address of Covered Property will not impair this insurance, provided you report the error to us as soon as practicable after the error becomes known to you.

**Q. Workplace Violence Counseling Expense**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**Workplace Violence Counseling Expense**

**1.** We will reimburse you for emotional counseling expense incurred and not reimbursed by any other source resulting from a "workplace violence" incident at your "premises" during the "coverage term". The emotional counseling expenses incurred must have been for:

**a.** Your employees who were victims of, or witnesses to the "workplace violence";

**b.** The spouse, parents or children of your employees who were victims of, or witnesses to the "workplace violence"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0109

c. Any other person or persons who directly witnessed the "workplace violence" incident.

2. For **Workplace Violence Counseling Expense** only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include:

"Workplace violence" means any intentional use of deadly force by any person with intent to cause harm and that results in physical injury or death of any person while on the insured's "premises".

The most we will pay for all emotional counseling expense under **Workplace Violence Counseling Expense** in any one "coverage term" is the Limit of Insurance indicated in the Bridge Schedule of Coverage Limits.

Section **I, R. Deductible** applies.

**R. Deductible**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FROM, SECTION C. DEDUCTIBLE** is deleted in its entirety and replaced by the following:

We will not pay for an insured event in any one occurrence until the amount of the insured event exceeds the Deductible indicated in the Bridge Schedule of Coverage Limits. We will then pay the amount of the insured event in excess of the Deductible, up to the applicable Limit of Insurance in the Bridge Schedule of Coverage Limits in this endorsement.

**SECTION II - CONDITIONS**

**A.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties In The Event of Loss or Damage** is deleted in its entirety and replaced by the following:

3. **Duties In The Event of an Insured Event**

a. In the event of an insured event for which this coverage is sought, you must see that the following are done in order for coverage to apply:

(1) Notify the police if a law may have been broken; however, this does not apply to **SECTION I - COVERAGES, H. KIDNAP EXPENSE.**

(2) Give us prompt notice of the insured event. Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the insured event occurred.

(4) Take all reasonable steps to protect any property involved from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a record of your expenses necessary to protect any property involved for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent insured event resulting from a cause of loss that is not a Covered Cause of Loss.

(5) At our request, give us complete inventories of any damaged and undamaged property. Include quantities, costs, values and the amount claimed as the result of the insured event.

(6) As often as may be reasonably required, permit us to inspect any property proving the insured event and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7) Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

CIC0110

**B.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment,** Paragraphs **a.** through **h.** are deleted in their entirety and replaced by the following:

    **a.** In the event of an event insured by this Coverage Part, at our option, we will either:

        **(1)** Pay the value of lost or damaged property;

        **(2)** Pay the cost of repairing or replacing the lost or damaged property;

        **(3)** Take all or any part of the property at an agreed or appraised value; or

        **(4)** Repair, rebuild or replace the property with other property of like kind and quality.

    We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

    **b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

    **c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

    **d.** We will not pay you more than your financial interest in any property for which coverage is sought.

    **e.** We may adjust amounts payable as the result of an insured event with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the property for which coverage is sought.

    **f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

    **g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

    **h.** We will pay for an insured event within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

        **(1)** We have reached agreement with you on the amount of the insured event; or

        **(2)** An appraisal award has been made.

**C.** For purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 7. Valuation,** the first sentence is deleted in its entirety and replaced by the following:

    **7. Valuation**

    We will determine the value of any property involved in the event of an insured event as follows:

        **a.** At "Actual Cash Value" as of the time of the insured event, except as provided in **b., c., d.,** and **e.** below.

CIC0111

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A. Nuclear Hazard**

Exclusion **(1)(d) Nuclear Hazard** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(d) Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused. However, if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the "loss" caused by that fire.

**B. Electrical Current**

Exclusion **(2)(a) Electrical Current** in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM** is deleted in its entirety and replaced by the following:

**(a) Electrical Current**

Artificially generated electrical or magnetic or energy that damages, disturbs, disrupts or otherwise interferes with any:

1) Electrical or electronic wire, device, appliance, system or network; or

2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical or magnetic energy includes but is not limited to:

1) Electrical current, including arcing;

2) Electrical charge produced or conducted by a magnetic field; or

3) Pulse.

However, if fire results, we will pay for "loss" caused by that fire.

**C. Inventory or Appraisal**

The last paragraph in **SECTION A. COVERAGE, 4. Additional coverages, e. Inventory or Appraisal** is deleted in its entirety and replaced by the following:

The most we will pay for loss in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

FA 4028 IL 07 17

CIC0112

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

**C. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**D. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct "loss" occurred.

**E. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**F. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same "loss", other than that described in **1.** above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

**H. Policy Period, Coverage Territory**

Under this Coverage Part:

**1.** We cover "loss" commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

CIC0113

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

CIC0114

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME CHANGES - WAITING PERIOD

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

**"Period of Restoration" Waiting Period**

☐ 24 hours  ☒ 48 hours  ☐ 72 hours

**A. Applicable Coverage Forms**

This endorsement applies to the following Coverage Forms:

1. **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**, and

2. **BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B. SECTION F. DEFINITIONS, 7. "Period of Restoration"**, is deleted in its entirety and replaced with the following:

7. **"Period of Restoration"** means the period of time that:

   a. Begins:

      (1) After the number of hours selected and shown in the Schedule have passed from the time of direct physical "loss" for Business Income coverage; or

      (2) Immediately after the time of direct physical "loss" for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the "premises"; and

   b. Ends on the earlier of:

      (1) The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**FA 458 04 04**

Includes copyrighted material of ISO Commercial
Risk Services, Inc., with its permission.

CIC0115

# ILLINOIS MINE SUBSIDENCE WAIVER FORM
# WAIVER OF INSURANCE

I (we) do not desire Mine Subsidence insurance coverage and hereby waive any right to such coverage, under this policy or any future policy covering my (our) interest in the property described in the policy (in the application), unless I (we) request mine subsidence coverage, in writing, at some future date.

THE BEND HOTEL DEVELOPMENT COMPANY LLC
_____

Named Insured

ETD 051 52 30
_____

Policy Number


_____          _____

Signature of Insured                                                Date

_____

Officer Title*

*IF INSURED IS A CORPORATION, HAVE AN OFFICER OF THE CORPORATION SIGN WITH HIS TITLE.

IP-425 (8/04)

CIC0116

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

### SCHEDULE

(Enter an "x" in one of the OPTION boxes to activate coverage.)

**OPTION I**

☐ Coverage applies at all "premises" indicated on the Declarations page.

**OPTION II**

☒ Coverage applies only at "premises" scheduled below:

| Loc | Bldg | Address |
|-----|------|---------|
| 1 | 1 | 111 BEND BOULEVARD EAST MOLINE, IL 61244 |

| | |
|---|---|
| **Limit of Insurance Per "Premises":** | $ 100,000 |
| **Deductible Per Occurrence:** | $ 5,000 |

This endorsement applies only to the "premises" indicated in the Schedule of this endorsement.

**A. Modified Water Exclusion**

For the purposes of this endorsement only:

1. **BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion (1)(g) Water,** Paragraph **3)** is deleted in its entirety and re-placed by the following:

   3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Exten-sions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

2. **BUILDING AND PERSONAL PROP-ERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion (1)(g) Water,** Para-graph **5)** is deleted in its entirety and re-placed by the following:

   5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Exten-sions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems,** waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1)**, **(g)3)** or **(g)4)**, or material carried or otherwise moved by mudslide or mudflow as de-scribed in Paragraph **(g)2)**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0117

**B. Coverage - Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

With respect to the "premises" identified in the Schedule of this endorsement, and for the purposes of this endorsement only:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

**a. Covered Cause of Loss**

Covered Causes of Loss means water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment located on a "premises" identified in the Schedule of this endorsement;

**C. Exclusions**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions,** Paragraph **(2)** is amended to include the following:

**1.** The coverage provided by this endorsement does not apply if discharge as described in Paragraph **B.** is caused by or results from:

**a.** Failure to perform routine maintenance or repairs necessary to keep a sewer, drain, septic or sump pump system or similar equipment free from obstruction and in proper working condition;

**b.** Sump pump system failure due to the failure of power or other utility services supplied to a "premises" identified in the Schedule of this endorsement; or

**c.** Equipment breakdown of any sump pump system or similar equipment.

**2.** We will not pay the cost of repairing or replacing a sewer, drain, septic or sump pump system or any related parts or equipment.

**3.** This endorsement does not apply if discharge as described in Paragraph **B.** is caused by or results from flood, meaning the partial or complete inundation of normally dry land areas due to:

**a.** The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

**b.** Waves, tidal waters, tidal waves (including tsunami); or

**c.** Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary; and

All whether driven by wind or not, including storm surge.

**D. Coinsurance**

For the purposes of this endorsement only, **BUILDING AND PESONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** is deleted in its entirety.

**E. Limit of Insurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is amended to include the following:

**1.** The most we will pay for all "loss" to Covered Property, including loss of "Business Income", "Rental Value" and Extra Expense, in any one occurrence caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment is the applicable Limit of Insurance shown in the Schedule of this endorsement.

**2.** The Limit of Insurance described in Paragraph **E.1.** is not an additional amount of insurance, and is included in the total Limit of Insurance referenced in the Declarations for the Coverages and "premises" indicated in the Schedule of this endorsement.

**F. Deductible**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended to include the following:

**Water Backup Discharged From Sewers, Drains, Septic or Sump Pump Systems**

**1.** The deductible indicated in the Schedule of this endorsement is the only deductible that applies to each direct "loss" caused by water or waterborne material that backs up through and is discharged

CIC0118

from a sewer, drain, septic system, sump pump or related equipment.

**2.** We will not pay for "loss" in any one occurrence until the amount of "loss" exceeds the deductible shown in the Declarations or the Schedule of this endorsement, whichever is greater. We will then pay the amount of "loss" in excess of the deductible, up to the applicable Limit of Insurance in the Schedule of this endorsement.

**G. Other Insurance**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment** is amended to include the following:

The Coverage provided by this endorsement is excess over any other valid insurance, whether you can collect from it or not.

CIC0119

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE
### (Excluding Production Machinery)

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE FORM**

## A. COVERAGE

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

   We will pay for direct damage to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

   a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscellaneous Causes of Loss, (2)(j) Exposure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Decisions**, and **(3)(c) Defects, Errors, and Omissions:**

      However, this exclusion does not apply if these causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

   b. Deleting in its entirety **(2)(e) Explosion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended:

   a. By deleting in its entirety:

      (1) **(1)(a)** Steam Apparatus; and

      (2) **(1)(b)** Hot Water Boilers,

   b. And by adding the following:

      The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1), (2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Declarations as applicable to the Covered Property. These limits, or the applicable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less, apply. These limits apply to direct damage only.

   (1) **Ammonia Contamination Limitation**

      If Covered Property is contaminated by ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for this kind of damage, including salvage expense, is $50,000 per location.

   (2) **Data, Media and Software Restoration**

      If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the expenses incurred by you for the restoration of that "electronic data" is $50,000 for all loss sustained in the "coverage term", regardless of the number of "accidents" or the number of "premises" involved.

   (3) **"Hazardous Substance" Limitation**

      The following applies despite the operation of the Ordinance or Law Exclusion.

      If Covered Property is damaged, contaminated or polluted by a "hazardous substance" as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional expenses incurred by you for clean up, repair, replacement or disposal of that property is $50,000. As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no "hazardous substance" had been involved.

## B. Additional Coverages

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION**

FA 244 05 11

CIC0120

**A. COVERAGE, 4. Additional Coverages** is amended as follows:

**1.** The first paragraph is deleted in its entirety and replaced with the following:

All other terms and conditions of this Coverage Part, including Limits of Insurance and deductibles, apply to these Additional Coverages.

**2.** The following is added:

    **a. Drying Out**

If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered. This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

    **b. Expediting Expenses**

With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

    **(1)** Make temporary repairs;

    **(2)** Expedite permanent repairs; and

    **(3)** Expedite permanent replacement.

    **c. Non-Owned Utility Service Equipment**

We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(6)** but we will not pay for any expense to repair or replace direct damage to non-owned utility equipment that:

    **(1)** You do not own, lease or rent, or

    **(2)** That is not in your care custody and control.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**C. Deductible**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

**D. Conditions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

**1. Suspension**

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

    **a.** Your last known address; or

    **b.** The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

**2. Inspection**

If any Covered Property requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**E. Definitions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

**1. a. "Accident"** means a sudden and accidental breakdown of the following covered equipment:

    **(1)** Any boiler;

    **(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

    **(3)** Any piping and its accessory equipment;

    **(4)** Any refrigeration or air conditioning system; or

CIC0121

**(5)** Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**(6)** Equipment of a type described in definition **a.(1)** through **(5)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the covered equipment or part thereof.

**b.** None of the following is an "accident":

**(1)** Depletion, deterioration, corrosion or erosion, wear and tear;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** The functioning of any safety or protective device; or

**(4)** The breakdown of any structure or foundation.

**c.** None of the following are covered equipment:

**(1)** Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

**(2)** Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

**(3)** Insulating or refractory material;

**(4)** Vehicle, elevator, escalator, conveyor, hoist or crane;

**(5)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, nonmetallic part, or any part or tool subject to periodic replacement; or

**(6)** "Production Machinery".

**d.** If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

**2.** **"Drying out"** means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

**a.** Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

**b.** "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

**c.** "Drying out" does not include or apply to:

**(1)** Replacement or repair of any electrical equipment or parts thereof; or

**(2)** Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

**3.** **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** The overflow of inland or tidal waters;

**b.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**c.** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **3.b.** For the purpose of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

**4.** **"Hazardous Substance"** means a substance declared to be hazardous to health by a governmental agency.

**5.** **"Production Machinery"** means:

**a.** Production or process machine or apparatus that processes, forms, cuts, shapes grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

**b.** Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

CIC0122

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM - ILLINOIS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1. Business Income**

**a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are lo-

cated if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2. Extra Expense**

**a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

**b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**c.** If these expenses reduce the otherwise payable "Business Income" loss, we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**(a)** At the "premises"; or

**(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**d.** We will also pay expenses to:

**(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0123

**(2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" loss. If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

**e.** Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**3.** <u>Covered Causes of Loss</u>

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

**4.** <u>Limitation for Electronic Data</u>

**a.** Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**c.** This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5.** <u>Additional Coverages</u>

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

**a.** <u>Alterations and New Buildings</u>

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or re-

sulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**b.** <u>Civil Authority</u>

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0124

**c.** **Extended Business Income**

**(1)** "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" loss payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when loss to "electronic data" only involves loss to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all loss sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0125

amount, then the balance is available for loss or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional loss or expense in that subsequent "coverage term", all loss and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to loss sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e. Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6. Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.** You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.** The most we will pay in total for "Business Income" and Extra Expense loss under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.** Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**SECTION C. LOSS CONDITIONS**

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of "Business Income" or Extra

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0126

Expense loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding, however you retain the right to file suit against us. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.** **Duties in the Event of Loss**

**a.** You must see that the following are done in the event you have a "Business Income" or Extra Expense loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct "loss". Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.** **Loss Determination**

**a.** The amount of "Business Income" loss will be determined based on:

**(1)** The Net Income of the business before the direct "loss" occurred;

**(2)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(4)** Other relevant sources of information, including:

**(a)** Your financial records and accounting procedures;

**(b)** Bills, invoices and other vouchers; and

**(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

**(1)** All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

**(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

CIC0127

(2) Necessary expenses that reduce the "Business Income" loss that otherwise would have been incurred.

**c. <u>Resumption of Operations</u>**

We will reduce the amount of your:

(1) "Business Income" loss, other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. <u>Loss Payment</u>**

We will pay for insured loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1. <u>Coinsurance</u>**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

We will not pay the full amount of any "Business Income" loss if the Limit of Insurance for "Business Income" is less than:

**a.** The Coinsurance percentage shown for "Business Income" in the Declarations; times

**b.** The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

**3.** Multiply the total amount of loss by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight - outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**11.** All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When:   The Net Income and operating expenses for the 12 months follow-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0128

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $150,000 |
| "Business Income" loss is | $80,000 |

Step 1: $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

### Example No. 2 (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

| The Coinsurance percentage is | 50% |
| The Limit of Insurance Is | $200,000 |
| "Business Income" loss is | $80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay in total for "Business Income" and Extra Expense loss is the lesser of:

      (1) The amount of "Business Income" and Extra Expense loss sustained during the 120 days immediately following the beginning of the "period of restoration"; or

      (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

   a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

   b. The most we will pay for "Business Income" loss in each period of 30 consecutive days after the beginning of the "period of restoration" is:

      (1) The Limit of Insurance; multiplied by

      (2) The fraction shown in the Declarations for this Optional Coverage.

   **Example:**

   When: The "Business Income" Limit of Insurance is $120,000

   The fraction shown in the Declarations for this Optional Coverage is 1/4

   The most we will pay for loss in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

   If, in this example, the actual amount of "Business Income" loss is:

   | Days | 1-30 | $40,000 |
   | Days | 31-60 | 20,000 |
   | Days | 61-90 | 30,000 |
   | | | $90,000 |

   We will pay:

   | Days | 1-30 | $30,000 |
   | Days | 31-60 | 20,000 |
   | Days | 61-90 | 30,000 |
   | | | $80,000 |

   The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

   a. To activate this Optional Coverage:

      (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

         (a) During the 12 months prior to the date of the Work Sheet; and

         (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

      (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

CIC0129

be at least equal to the Agreed Value, which is determined by:

   **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

   **(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

**c.** We will reinstate the **ADDITIONAL CONDITION Coinsurance** automatically if you do not submit a new Work Sheet and Agreed Value:

   **(1)** When you request a change in your "Business Income" Limit of Insurance; or

   **(2)** When you request the coinsurance percentage be changed on the Work Sheet.

**d.** If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

   **(1)** The "Business Income" Limit of Insurance; divided by

   **(2)** The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

     The Agreed Value is $200,000

     "Business Income" loss is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income**, the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

**1.** "Business Income" means the:

   **a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

   **b.** Continuing normal operating expenses sustained, including payroll.

**2.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

     **(1)** The day the policy period shown in the Declarations ends; or

     **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

   **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**5.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0130

**6** "Loss" means accidental physical loss or accidental physical damage.

**7.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**8.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

**(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the Coverage Part will not cut short the "period of restoration".

**9.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**10.** "Premises" means the Locations and Buildings described in the Declarations.

**11.** "Rental Value" means "Business Income" that consists of:

**a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**12.** "Suspension" means:

**a.** The slowdown or cessation of your business activities; and

**b.** That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**13.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0131

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A. Application of Earthquake Coverage**

1. This endorsement applies to the Covered Property and Coverages for which a Limit of Insurance is shown in the Declarations and Earthquake is indicated as a Covered Cause of Loss.

2. To the extent that the Earth Movement Exclusion of any other form attached to this Coverage Part might conflict with coverage provided under this endorsement, that Earth Movement Exclusion does not apply.

**B. Additional Covered Causes of Loss - Earthquake and Volcanic Eruption**

For the purposes of this endorsement only, the following are added as Covered Causes of Loss to any other Coverage Form endorsed to this Coverage Part:

1. Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event.

2. Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this Coverage Part will not reduce the 168-hour period.

**C. Additional Covered Causes of Loss - Earthquake and Volcanic Eruption - Sprinkler Leakage Only**

If the Declarations indicate that this endorsement covers Earthquake - Sprinkler Leakage Only, then Section **B.** of this endorsement is deleted and replaced by the following:

The following are added as Covered Causes of Loss to any other Coverage Form endorsed to this Coverage Part:

1. Sprinkler Leakage resulting from Earthquake.

2. Sprinkler Leakage resulting from Volcanic Eruption. Volcanic Eruption means the eruption, explosion or effusion of a volcano.

All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single Earthquake or Volcanic Eruption. The expiration of this Coverage Part will not reduce the 168-hour period.

**D. Amended Exclusions and Provisions**

For the purposes of this endorsement only:

1. The following provisions:

    a. **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** and **c. Limitations** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM;** and

    b. **SECTION E. EXCLUSIONS** of the **MORTGAGE INTEREST COVERAGE FORM;**

    apply to coverage provided under this endorsement, except as provided in Section **D.2.** and **D.3.** below.

2. The following exclusions:

    a. **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (2)(k) Collapse** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM;** and

    b. **SECTION E. EXCLUSIONS, 4.a.** Collapse of the **MORTGAGE INTEREST COVERAGE FORM;**

    do not apply to collapse caused by Earthquake or Volcanic Eruption.

3. The following provisions:

    a. **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM;** and

    b. **SECTION H. ADDITIONAL COVERAGE - COLLAPSE** of the **MORTGAGE INTEREST COVERAGE FORM;**

    do not apply to the coverage provided under this endorsement. This endorsement includes coverage for collapse caused by Earthquake or Volcanic Eruption.

CIC0132

**4.** Any Ordinance or Law Exclusion in this Coverage Part continues to apply with respect to any direct "loss" under this Coverage Part including any direct "loss" under this endorsement, unless Ordinance or Law Coverage is added by endorsement.

## E. Additional Exclusions

### 1. Pre-Existing Earthquake

We will not pay for direct "loss" caused by or resulting from any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

### 2. Tidal Wave or Tsunami

We will not pay for direct "loss" caused directly or indirectly by tidal wave or tsunami, even if attributable to an Earthquake or Volcanic Eruption.

### 3. Exterior Masonry Veneer

We will not pay for direct "loss" to exterior masonry veneer (except stucco) on wood frame walls caused by or resulting from the Earthquake or Volcanic Eruption. The value of such veneer will not be included in the value of Covered Property or the amount of "loss" when applying the **Property Damage Deductible** applicable to this endorsement.

This Exclusion **E.3.** does not apply if:

**a.** The Declarations indicate that the "Including Masonry Veneer" option applies or the "premises" description in the Declarations specifically states "Including Masonry Veneer"; or

**b.** Less than 10% of the total outside wall area is faced with masonry veneer (excluding stucco).

### 4. Cost of Restoring Land

Coverage under this endorsement does not include the cost of restoring or remediating land or the cost of excavations, grading, backfilling or filling.

## F. Earthquake Property Damage Deductible

**1.** The provisions of Section **F.3.** of this endorsement are applicable to all Coverage Forms except:

**a. BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM;**

**b. BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM;**

**c. EXTRA EXPENSE COVERAGE FORM;**

**d. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Cov-** erage Extensions, b. Business Income and Extra Expense.

**2.** If the Declarations indicate that this endorsement covers Earthquake - Sprinkler Leakage Only, then the Deductible set forth in Section **F.3.** of this endorsement does not apply to such coverage. The applicable Deductible for such coverage is the same Deductible that applies to Fire.

**3.** The Deductible, if any, in this Coverage Part is replaced by the following with respect to Earthquake and Volcanic Eruption:

### a. All Policies

**(1)** The Deductible provisions apply to each Earthquake or Volcanic Eruption.

**(2)** Separate Deductibles are calculated for, and apply to, each building and business personal property at each building and business personal property in the open. Deductibles are separately calculated and applied even if:

**(a)** Two or more buildings sustain direct "loss";

**(b)** Business personal property at two or more buildings sustains direct "loss"; or

**(c)** A building and the business personal property in that building sustain direct "loss".

**(3)** We will not pay for direct "loss" until the amount of "loss" exceeds the applicable Deductible. We will then pay the amount of "loss" in excess of that Deductible, up to the applicable Limit of Insurance, after any reduction required by any of the following: Coinsurance Condition, Agreed Value Optional Coverage, Additional Condition - Need for Adequate Insurance, or Additional Condition - Need for Full Reports.

**(4)** When property is covered under the Coverage Extension for Newly Purchased, Leased or Constructed Property, in determining the amount, if any, that we will pay for direct "loss", we will deduct an amount equal to a percentage of the value of the property at time of "loss". The applicable percentage for Newly Purchased, Leased or Constructed Property is the highest percentage shown in the Declarations for any "premises".

CIC0133

(5) If there is direct "loss" caused by Earthquake or Volcanic Eruption, and direct "loss" caused by a Cause of Loss (e.g., fire) that is covered by means of an exception to the Earth Movement Exclusion, then the only applicable Deductible provisions are those stated in this endorsement.

**b. Calculation of the Deductible - Specific Insurance Other Than Builders Risk**

**(1) Property Not Subject to Value Reporting Forms**

In determining the amount, if any, that we will pay for direct "loss", we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake - Volcanic Eruption Deductible) of the Limit of Insurance applicable to the property that has sustained direct "loss".

**(2) Property Subject to Value Reporting Forms**

In determining the amount, if any, that we will pay for direct "loss", we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake - Volcanic Eruption Deductible) of the value of the property that has sustained direct "loss". The value to be used is the latest value shown in the most recent Report of Values on file with us.

However:

**(a)** If the most recent Report of Values shows less than the full value of the property on the report dates, we will determine the deductible amount as a percentage of the full value as of the report dates.

**(b)** If the first Report of Values is not filed with us prior to direct "loss", we will determine the deductible amount as a percentage of the applicable Limit of Insurance.

**c. Calculation of the Deductible - Blanket Insurance Other Than Builders Risk**

**(1) Property Not Subject to Value Reporting Forms**

In determining the amount, if any, that we will pay for direct "loss", we will deduct an amount

equal to a percentage (as shown in the Declarations, concerning the Earthquake - Volcanic Eruption Deductible) of the value of the property that has sustained direct "loss". The value to be used is that shown in the most recent Statement of Values on file with us.

**(2) Property Subject to Value Reporting Forms**

In determining the amount, if any, that we will pay for property that has sustained direct "loss", we will deduct an amount equal to a percentage (as shown in the Declarations, concerning the Earthquake - Volcanic Eruption Deductible) of the value of that property as of the time of direct "loss".

**G. Examples - Application of Deductible in F.3.:**

**Example #1 - Specific Insurance (F.3.b.(1))**

The amount of direct "loss" to the damaged building is $60,000.

The value of the damaged building at time of "loss" is $100,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limit of Insurance needed to meet the coinsurance requirement is $80,000 (80% of $100,000).

The **actual** Limit of Insurance on the damaged building is $70,000.

The Deductible is 5%.

Step **(1)**: $70,000 ÷ $80,000 = .875

Step **(2)**: $60,000 x .875 = $52,500

Step **(3)**: $70,000 x 5% = $3,500

Step **(4)**: $52,500 - $3,500 = $49,000

The most we will pay is $49,000. The remainder of the "loss", $11,000, is not covered due to the Coinsurance penalty for inadequate insurance (Steps **(1)** and **(2)**) and the application of the Deductible (Steps **(3)** and **(4)**)**.**

**Example #2 - Specific Insurance (F.3.b.(1))**

The amounts of direct "loss" to the damaged property are $60,000 (building) and $40,000 (business personal property in building).

The value of the damaged building at time of "loss" is $100,000. The value of the business personal property in that building is $80,000. The Coinsurance percentage shown in the Declarations is 80%; the minimum Limits of Insurance needed to meet the coinsurance requirement are $80,000 (80% of $100,000) for the building and $64,000 (80% of $80,000) for the business personal property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0134

The **actual** Limits of Insurance on the damaged property are $80,000 on the building and $64,000 on the business personal property (therefore no Coinsurance penalty).

The Deductible is 10%.

### Building

Step **(1)**: $80,000 x 10% = $8,000

Step **(2)**: $60,000 - $8,000 = $52,000

### Business Personal Property

Step **(1)**: $64,000 x 10% = $6,400

Step **(2)**: $40,000 - $6,400 = $33,600

The most we will pay is $85,600. That portion of the total "loss" not covered due to application of the Deductible is $14,400.

### Example #3 - Blanket Insurance (F.3.c.(1))

The sum of the values of Building #1 ($500,000), Building #2 ($500,000) and Building #3 ($1,000,000), as shown in the most recent Statement of Values on file with us, is $2,000,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,800,000 (90% of $2,000,000).

The **actual** Blanket Limit of Insurance covering Buildings #1, #2, and #3, shown in the Declarations, is $1,800,000 (therefore no Coinsurance penalty).

Buildings #1 and #2 have sustained damage; the amounts of direct "loss" to these buildings are $40,000 (Building #1) and $60,000 (Building #2).

The Deductible is 5%.

### Building #1

Step **(1)**: $500,000 x 5% = $25,000

Step **(2)**: $40,000 - $25,000 = $15,000

### Building #2

Step **(1)**: $500,000 x 5% = $25,000

Step **(2)**: $60,000 - $25,000 = $35,000

The most we will pay is $50,000. That portion of the total "loss" not covered due to application of the Deductible is $50,000.

### Example #4 - Blanket Insurance (F.3.c.(1))

The sum of the values of Building #1 ($500,000), Building #2 ($500,000), Business Personal Property at Building #1 ($250,000) and Business Personal Property at Building #2

($250,000), as shown in the most recent Statement of Values on file with us, is $1,500,000.

The Coinsurance percentage shown in the Declarations is 90%; the minimum Blanket Limit of Insurance needed to meet the coinsurance requirement is $1,350,000 (90% of $1,500,000).

The **actual** Blanket Limit of Insurance covering Buildings #1 and #2 and Business Personal Property at Buildings #1 and #2, shown in the Declarations, is $1,350,000. Therefore there is no Coinsurance penalty.

Building #1 and Business Personal Property at Building #1 have sustained damage; the amounts of direct "loss" are $95,000 (Building) and $5,000 (Business Personal Property).

The Deductible is 10%.

### Building

Step **(1)**: $500,000 x 10% = $50,000

Step **(2)**: $95,000 - $50,000 = $45,000

### Business Personal Property

Step **(1)**: $250,000 x 10% = $25,000

The "loss", $5,000, does not exceed the deductible.

The most we will pay is $45,000. The remainder of the building "loss", $50,000, is not covered due to application of the Deductible. There is no "loss" payment for the business personal property.

**H. Business Income and Extra Expense Period of Restoration**

This Section **H.** is applicable only to the Coverage Forms specified below:

1. **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM;**

2. **BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM;**

3. **EXTRA EXPENSE COVERAGE FORM**; and

4. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

The "period of restoration" definition stated in the Coverage Form, or in any endorsement amending the beginning of the "period of restoration", applies to each Earthquake or Volcanic Eruption. A single Earthquake or Volcanic Eruption is defined in Sections **B.** and **C.** of this endorsement.

CIC0135

# THE CINCINNATI INSURANCE COMPANY
## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**

Attached to and forming part of POLICY NUMBER: **ETA 051 52 30**

Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**     **SCHEDULE OF COVERAGES AND COVERED AUTOS**

This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $           Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $           Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 2 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2, 8, 9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2, 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $           Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $           for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |

**AA 505 03 06**     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     **ETA 051 52 30**     **Page 1 of 3**

CIC0136

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4044IL | 01/15 | ILLINOIS UNINSURED MOTORISTS COVERAGE |
| AA4045IL | 11/08 | ILLINOIS UNDERINSURED MOTORISTS COVERAGE |
| AA4047IL | 03/98 | IMPORTANT NOTICE TO ILLINOIS INSUREDS DEFENSIVE DRIVING COURSE DISCOUNT FOR SENIOR CITIZENS |
| AA4136IL | 01/15 | ILLINOIS CHANGES |
| AA4168IL | 01/15 | UNINSURED/UNDERINSURED MOTORISTS PROTECTION OPTION SELECTION FORM - ILLINOIS |
| AA4263IL | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| CA0270 | 08/94 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| CA2402 | 12/93 | PUBLIC TRANSPORTATION AUTOS |
| AA261 | 07/14 | AUTO MEDICAL PAYMENTS COVERAGE |
| AA265 | 01/16 | CINCIPLUS® BUSINESS AUTO XC® (EXPANDED COVERAGE) ENDORSEMENT |

* This policy may be subject to final audit

CIC0137

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                            Beginning on Page

Description of Covered Auto Designation Symbols................................................................1
Owned Autos You Acquire After the Policy Begins ..............................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos.................................................................................................. 2

## SECTION II - LIABILITY COVERAGE

Coverage ................................................................................................................................ 2
Who is an Insured ................................................................................................................. 2
Coverage Extensions
    Supplementary Payments ................................................................................................. 2
    Out of State........................................................................................................................ 3
Exclusions ............................................................................................................................. 3
Limit of Insurance ................................................................................................................. 5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage ................................................................................................................................ 7
Exclusions ............................................................................................................................. 7
Limit of Insurance ................................................................................................................. 8
Deductible............................................................................................................................... 8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss ............................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss....................................................... 9
    Legal Action Against Us .................................................................................................... 9
    Loss Payment - Physical Damage Coverages................................................................. 9
    Transfer of Rights of Recovery Against Others to Us..................................................... 10
General Conditions
    Bankruptcy ....................................................................................................................... 10
    Concealment, Misrepresentation or Fraud..................................................................... 10
    Liberalization .................................................................................................................... 10
    No Benefit to Bailee - Physical Damage Coverages...................................................... 10
    Other Insurance ............................................................................................................... 10
    Premium Audit.................................................................................................................. 10
    Policy Period, Coverage Territory ................................................................................... 10
    Two or More Coverage Forms or Policies Issued by Us................................................. 11

## SECTION V - DEFINITIONS ................................................................................... 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

CIC0138

# AUTOMOBILE SCHEDULE

## ITEM THREE

Attached to and forming a part of Policy Number  **ETA 051 52 30**  , effective  **12-12-2018**

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: **IL**

| | | |
|---|---|---|
| Bodily Injury: | **1,000,000 CSL** | Property Damage: **INCLUDED** |
| **UM/UIM:** | **1,000,000** | |
| **Med Pay** | **5,000** | |

---

**Veh. No.**   Vehicle Information

1   **2018 FORD TRANSIT S/N 1FBZX2CM0JKB22543**                    Class: 5852    Territory 119
   **OTC-COMP DED: 1,000**
                                        Coll Ded: **1,000**
                                        **COST NEW: 41,550**    **ZIP CODE: 61244**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,283 | INCL | 46 | 126 | 379 | 63 | 1,897 |

**BUSINESS AUTO EXPANDED ENDORSEMENT**                    Class:        Territory
**OTC-COMP DED: N/A**                    Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | | | 100 |

**HIRED AND NON-OWNED**                    Class:        Territory
**OTC-COMP DED: N/A**                    Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 541 | INCL | N/A | | | 256 | 797 |

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

CIC0139

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL          DESCRIPTION**

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0140

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

CIC0141

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0142

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

### 5. Fellow Employee

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

### 6. Care, Custody or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

### 7. Handling of Property

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

### 8. Movement of Property by Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

### 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

### 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

### 11. Pollutant

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0143

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

CIC0144

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

### C. Limit of Insurance

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

### D. Mobile Equipment Subject to Motor Vehicle Insurance Laws

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

## SECTION III - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   b. **Specified Causes of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

CIC0145

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0146

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

# SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

CIC0147

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **Loss Payment - Physical Damage Coverages**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

5. **Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. **General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. **Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

3. **Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

a. The date we implemented the change in your state; or

b. The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

4. **No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

CIC0148

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own.

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the Policy Period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**a.** The United States of America;

**b.** The territories and possessions of the United States of America;

**c.** Puerto Rico;

**d.** Canada; and

**e.** Anywhere in the world if:

**(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

CIC0149

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

    **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

    **1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

    **a.** That are, or that are contained in any property that is:

        **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

        **(2)** Otherwise in the course of transit by or on behalf of the "insured";

        **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

    **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

CIC0150

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

    **1.** Means:

        **a.** A lease of premises;

        **b.** A sidetrack agreement;

        **c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

        **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

        **e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

        **f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

    **2.** Does not include that part of any contract or agreement:

        **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

        **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

    **5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers.

    **6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **a.** Equipment designed primarily for:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0151

    **(1)** Snow removal;

    **(2)** Road maintenance, but not construction or resurfacing; or

    **(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

    **1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

    **2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

    **1.** Damages because of "bodily injury" or "property damage"; or

    **2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

    "Suit" includes:

    **a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

CIC0152

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

CIC0153

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

    2. **Towing**

        We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

CIC0154

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

### BUSINESS AUTO COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

   Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

> **BUSINESS AUTO COVERAGE FORM**
> **GARAGE COVERAGE FORM**
> **MOTOR CARRIER COVERAGE FORM**
> **TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-12-2018 | ETA 051 52 30 |

| Named Insured: |
|---|
| THE BEND HOTEL DEVELOPMENT COMPANY LLC |

### SCHEDULE

| Limit of Insurance |
|---|
| $ REFER TO AA4183          Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   **a.** An "uninsured motor vehicle" as defined in Paragraph **F.4.a.** and **b.** because of "bodily injury":

   **(1)** Sustained by the "insured"; and

   **(2)** Cause by an "accident".

   **b.** An "uninsured motor vehicle" as defined in Paragraph **F.4.c.** because of "bodily injury" sustained by the "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. We will pay under this endorsement only if the limits of insurance under all applicable liability bonds or policies have been partially or fully exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

---

AA 4044 IL 01 15        Includes copyrighted material of ISO Properties, Inc., with its permission.        **Page 1 of 4**

CIC0156

**a.** Natural persons specifically listed as a Named Insured on this endorsement;

**b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

**c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

**d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

**a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

**b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws.

**3.** "Bodily injury" sustained by an "insured" while the "insured" is operating, or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse, or a resident relative of such Named Insured, if the "mo-

tor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**4.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

**5.** Punitive or exemplary damages.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Motorists Coverage** shown in the Schedule or the Declarations.

We will apply the limit shown in the schedule or the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

**a.** $25,000 for "bodily injury" to any one person due to and arising out of any one "accident", and

**b.** $50,000 for "bodily injury" to two or more persons due to and arising out of any one "accident".

This provision will not change our total limit of insurance.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws, including medical payments made under any statute.

**3.** The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0157

## E. Changes in Conditions

The **Conditions** for **Illinois Uninsured Motorists Coverage** are changed as follows:

1. With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   **b.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

   **c.** If the coverage under this endorsement is provided:

      **(1)** On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

      **(2)** On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   **a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

   **b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   **c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. **Transfer of Rights of Recovery Against Others to Us** does not apply.

4. The following **Condition** is added:

   **Reimbursement And Trust**

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

5. **Legal Action Against Us** is replaced by the following:

   No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Uninsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

6. The following **Condition** is added:

   **Arbitration**

   **a.** If we and an "insured" do not agree:

      **(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

      **(2)** As to the amount of damages that may be recovered;

   the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

   The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

   If arbitration is used, each party will select an arbitrator. The two arbitrators

Includes copyrighted material of ISO
Properties, Inc., with its permission.

CIC0158

will select a third. If they cannot agree within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

**(1)** Is equal to or less than the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

**(2)** Exceeds the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to the amount of damages not exceeding the lesser of either:

**(1)** $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

**(2)** The Limit of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor

vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident".

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

**c.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by any governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0159

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-12-2018 | ETA 051 52 30 |
| Named Insured: | |
| THE BEND HOTEL DEVELOPMENT COMPANY LLC | |

**SCHEDULE**

| Limit of Liability | |
|---|---|
| $ REFER TO AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim that are necessary to recover from the owner or operator of the "underinsured" motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   **a.** The limits of insurance under all applicable liability bonds or policies have

been partially or fully exhausted by payment of judgments or settlements; or

**b.** A "tentative settlement" has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer and legal representative of such person(s) or organization(s) and we:

   **(1)** Have been given a prompt written notice of such settlement and advance payment to the "insured" equal to the "tentative settlement" within 30 days after receipt of notification; or

   **(2)** We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0160

## B. Who is an Insured

The following are "insureds":

**1.** If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

    **a.** Natural persons specifically listed as a Named Insured on this endorsement;

    **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

    **c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

    **d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**2.** If an entity other than a natural person is listed as the Named Insured on this endorsement, and no natural persons are listed as Named Insureds in the Declarations, the following persons are "insureds":

    **a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

    **b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law.

**3.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**4.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

**5.** Punitive or exemplary damages.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorists Coverage** shown in the Schedule or the Declarations.

**2.** Except in the event of a "settlement agreement", the limit of insurance provided in this endorsement shall be reduced by all sums available for payment:

    **a.** To the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

    **b.** Under any automobile medical payments coverage. However, the limit of insurance provided in this endorsement shall not be reduced by any sums paid or payable under Social Security disability benefits.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make duplicate payment under this endorsement for element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law, including medical payments made under any statute

CIC0161

3. In the event of a "settlement agreement", the maximum limit of insurance provided in this endorsement shall be the amount by which the limit of insurance provided in this endorsement exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

## E. Changes in Conditions

The **Conditions** for **Illinois Underinsured Motorists Coverage** are changed as follows:

1. With respect to an "underinsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   **b.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

   **c.** If the coverage under this endorsement is provided:

   **(1)** On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

   **(2)** On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   **a.** A person seeking Underinsured Motorists Coverage must promptly notify us in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allow us 30 days to advance payment to that "insured" in an amount equal to the "tentative settlement" to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s).

   **b.** File "suit" against the person(s) or organization(s) who may be legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s), prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us notice in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allowing us 30 days to advance payment to that "insured" in an amount equal to that settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s);

   **c.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

   **d.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3. The following is added to **Transfer of Rights of Recovery Against Others to Us:**

   **Transfer of Rights of Recovery Against Others to Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

CIC0162

**a.** Have been given prompt written notice of a "tentative settlement" between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

**b.** Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**4.** The following **Condition** is added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**5.** **Legal Action Against Us** is replaced by the following:

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Underinsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

**6.** The following **Condition** is added:

**Arbitration**

**a.** If we and an "insured" do not agree:

**(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

**(2)** As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot aggress within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

**F.** **Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck,

CIC0163

semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s),.

5. "Tentative settlement" means an offer from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), to compensate an "insured"

for damages incurred because of "bodily injury" sustained in an "accident" involving an "underinsured motor vehicle".

6. "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" of any type for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance for this coverage or reduced by payments to others injured in the accident to an amount which is less than the Limit of Insurance for this coverage. However, "underinsured motor vehicle" does not include any "motor vehicle":

a. Owned or operated by any self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amount required by that motor vehicle law.

b. Owned by any governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Which is an "uninsured motor vehicle".

e. Owned by, furnished or available for the regular use of any "insured", other than the named insured, or a "family member" of a named insured.

f. For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0164

# IMPORTANT NOTICE TO ILLINOIS INSUREDS

## DEFENSIVE DRIVING COURSE DISCOUNT
## FOR SENIOR CITIZENS

In accordance with Illinois law, the Secretary of State will provide documentation to those people over age 55 who have successfully completed a defensive driving course. A discount of 5% will apply to the premiums for Bodily Injury Liability, Property Damage Liability, Medical Payments, and Collision coverages of the vehicle principally operated by any senior citizen who presents such documentation.

**AA 4047 IL 03 98**

CIC0165

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes in Liability Coverage

1. Paragraph **A.1.b.(3)** of the **Who is an Insured** provision does not apply.

2. Our **Limit of Insurance** applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident",

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total **Limit of Insurance.**

## B. Changes in Physical Damage Coverage

The following is added to the **Limit of Insurance** provision with respect to repair or replacement resulting in better than like kind or quality and supercedes any provision to the contrary:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damages that is reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

## C. Changes in Conditions

The **Other Insurance** condition is changed by the addition of the following:

Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Liability Coverage under this policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident",

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident", and

   c. $50,000 for "property damage" caused by any one "accident".

Includes copyrighted material of ISO
Properties, Inc., with its permission.

CIC0166

# UNINSURED/UNDERINSURED MOTORISTS
# PROTECTION OPTION SELECTION FORM - ILLINOIS

The laws of Illinois require that automobile liability insurance policies offer Uninsured/Underinsured Motorists Coverage limits equal to the Bodily Injury Limits of the policy to which the coverage attaches. You may, however, select coverage at a lower limit.

**YOU ARE ELECTING TO PURCHASE UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM.**

Uninsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom.

Underinsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of underinsured motor vehicles because of bodily injury or death resulting therefrom.

An Underinsured motor vehicle is a vehicle to which a bodily injury policy or bond applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to limitations and conditions in the policy.

Uninsured/Underinsured Motorist options are available for a modest premium: **PLEASE CONTACT YOUR AGENT** for the exact cost.

## PLEASE SELECT ONE OF THE FOLLOWING:

_____ I select Uninsured/Underinsured Motorists Coverage at the following limits which are lower than the Bodily Injury Liability Limits of my policy.

Thousand Dollars

| | Split Limit | | Single Limit | |
|---|---|---|---|---|
| LIMITS OF LIABILITY | ☐ | *25/50 | ☐ | 50* |
| | ☐ | 50/100 | ☐ | 100 |
| | ☐ | 100/300 | ☐ | 300 |
| | ☐ | Other | ☐ | Other |

Attached to and forming a part of Policy Number **ETA 051 52 30** and any subsequent renewals, reinstatements, reissuance, replacements, substitutions or amendments of my policy unless I request otherwise in writing

I intend that my selection will apply to me and all other persons or organizations that may be eligible for coverage under this policy.

_____
DATE

_____
INSURED'S SIGNATURE

NOTE:  **A.** *Underinsured Motorist Coverage does not apply unless Uninsured Motorist Coverage limits exceed the minimum Financial Responsibility Limits of $25,000 each person/$50,000 each occurrence or $50,000 Single Limit Liability.

**B.** Please refer to form **AA 4046 IL** for information regarding "Uninsured Motorist Property Damage".

AA 4168 IL 01 15

CIC0167

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided under this policy.

**AA 4263 IL 04 10**

CIC0168

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

**b.** When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation stating the reasons for cancellation.

   **(1)** Nonpayment of premium.

   **(2)** The policy was obtained through a material misrepresentation.

   **(3)** Any "insured" has violated any of the terms and conditions of the policy.

   **(4)** The risk originally accepted has measurably increased.

   **(5)** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   **(6)** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

**c.** If we cancel for nonpayment of premium, we will mail you at least 10 days written notice.

**d.** If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

   **(1)** 60 days or less, we will mail you at least 30 days written notice.

   **(2)** 61 days or more, we will mail you at least 60 days written notice.

**e.** If this policy in cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**f.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**g.** Our notice of cancellation will state the reason for cancellation.

**h.** A copy of the notice will also be sent to your agent or broker and the loss payee.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C.** **Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us. Proof of mailing will be sufficient proof of notice.

**CA 02 70 08 94**          Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC TRANSPORTATION AUTOS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE for a covered "auto" licensed or used to transport the public is changed as follows:

The CARE CUSTODY OR CONTROL exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving property of the "insured's" passengers while such property is carried by the covered "auto."

**CA 24 02 12 93**          Copyright, Insurance Services Office, Inc., 1993

CIC0170

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred and reported to us, for services rendered within three years from the date of the "accident".

## B. Who is an Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0171

**D. Limit of Insurance**  `SEE AA4183`

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes in Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

**1.** The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

**2.** The reference in Other Insurance in the Business Auto and Garage Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

CIC0172

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# BUSINESS AUTO XC®
# (EXPANDED COVERAGE)
# ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured - Amended**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

   However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

   The insurance provided by this provision:

   a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

   b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

   c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

   d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such

   policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in **(2)**; and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in **(4)**.

**C. Amended Fellow Employee Exclusion**

**SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is modified as follows:

Exclusion **5. Fellow Employee** is deleted.

**D. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III - PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto"

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0173

for that coverage, or $1,000, whichever is less.

**3.** Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

**4.** Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above.

**E. Rental Reimbursement**

**SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

**1.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

**2.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

    **a.** The number of days reasonably required to repair the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you; or

    **b.** 30 days.

**3.** Our payment is limited to the lesser of the following amounts:

    **a.** Necessary and actual expenses incurred; or

    **b.** $40 per day.

**4.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**5.** We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for

under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

**F. Transportation Expense - Higher Limits**

**SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in Extension a. Transportation Expenses.

**G. Airbag Coverage**

**SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

**H. Loan or Lease Gap Coverage**

**1.** **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

    **a.** The most we will pay for "loss" in any one "accident" is the greater of:

        **(1)** The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

            **(a)** Overdue lease or loan payments;

            **(b)** Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

            **(c)** Security deposits not refunded by the lessor;

            **(d)** Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

            **(e)** Carry-over balances from previous loans or leases, or

        **(2)** Actual cash value of the stolen or damaged property.

    **b.** An adjustment for depreciation and physical condition will be made in de-

CIC0174

termining actual cash value at the time of "loss".

**2.** **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage**:

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.** **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.** **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

**1.** You, if you are an individual;

**2.** A partner, if you are a partnership;

**3.** An executive officer or insurance manager, if you are a corporation; or

**4.** A member or manager, if you are a limited liability company.

**K.** **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.** **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0175

# THE **CINCINNATI INSURANCE COMPANY**

## EXCESS LIABILITY COVERAGE PART DECLARATIONS

Previous Policy Number

Attached to and forming part of POLICY NUMBER: **ETD 051 52 30**          Effective Date: **12-12-2018**

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

**LIMITS OF INSURANCE**

Each Occurrence Limit          **$5,000,000**
Aggregate Limit          **$5,000,000**

**ADVANCE PREMIUM** $ **2,500**
Applicable to Premium, if box is checked:
☒  Subject to Annual Adjustment
☐  Subject to Audit as follows:

| Premium Basis | Estimated Exposure | Each Unit of Exposure Rate Per: | Minimum Premium |
|---|---|---|---|
| | | | |

**SCHEDULE OF UNDERLYING INSURANCE**

**Underlying Insurance, Carrier, Policy Number & Term:**          **Underlying Limits:**

**a)** Underlying Insurance:
 Carrier:
 Policy Number:
 Policy Term:                    (other)

Each Occurrence          $
General Aggregate          $
Products Aggregate          $
                    $
EXCESS of:          $

**b)**          Employer's Liability

Bodily Injury by Accident:
$                    Each Accident
Bodily Injury by Disease:
$                    Each Employee
Bodily Injury by Disease:
$                    Policy Limit

**c)**          ☐ Commercial General Liability
                    Including:
          ☐ Products-Completed
                    Operations Coverage
          ☐ Cemetery Professional
          ☐ Druggist Professional
          ☐ Funeral Service Provider
          ☐ Pedorthists Professional

                    or
          ☐ Business Liability Including:
          ☐ Funeral Service Provider
          ☐ Druggist Professional

Bodily Injury and Property Damage Liability:
$                    Each Occurrence Limit
$                    General Aggregate Limit
$                    Products-Completed
                    Operations Aggregate Limit

                    Personal and Advertising
                    Injury Limit
$                    Any One Person or
                    Organization

XSC504 05 10                    ETD 051 52 30                    Page 1 of 2

CIC0176

**d) CINCINNATI INS. CO.**
**ETA 051 52 30**
**12-12-2018 TO 12-12-2021**

Automobile Liability
Including:
☐ Owned Autos
☐ Non-Owned Autos
☐ Hired Autos
☒ Any Auto

Bodily Injury Liability Limit:
$              Each Person
$              Each Accident
Property Damage Liability Limit:
$              Each Accident
           or
Bodily Injury Liability and / or Property Damage
Liability or Both Combined Limit:
$  **1,000,000**  Each Accident

**e)**
Professional Liability
$
$              Aggregate

**f)**
Employee Benefit Liability
$              Each Employee Limit
$              Aggregate Limit

**g)**
Liquor Liability
$              Each Common Cause Limit
$              Aggregate Limit

**Other**
**h)**

---

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| XS101UM | 12/04 | EXCESS LIABILITY - TABLE OF CONTENTS |
| XS306 | 09/02 | EMPLOYMENT - RELATED PRACTICES EXCLUSION |
| XS345 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION |
| XS431IL | 09/02 | ILLINOIS CHANGES - KNOWN INJURY OR DAMAGE |

---

CIC0177

# EXCESS LIABILITY - TABLE OF CONTENTS

| **Coverage Part Provision:** | **Begins on Page:** |
|---|---|

**Preamble** ................................................................................................................ 2

**SECTION I - COVERAGE** ....................................................................................... 2

    **A.** **Insuring Agreement** ................................................................................ 2

    **B.** **Exclusions:** ............................................................................................... 2

        **1.** Asbestos ............................................................................................. 2
        **2.** Distribution of Material in Violation of Statutes ................................. 3
        **3.** Electronic Data ................................................................................... 3
        **4.** Pollutant - Auto .................................................................................. 3
        **5.** Pollutant - Other Than Auto .............................................................. 4
        **6.** Underlying Insurance ......................................................................... 5
        **7.** Uninsured or Underinsured Motorists ............................................... 5
        **8.** War ..................................................................................................... 5

    **C.** **Defense and Supplementary Payments** ................................................. 5

**SECTION II - LIMITS OF INSURANCE** .................................................................. 6

**SECTION III - CONDITIONS:** .................................................................................. 7

        **1.** Appeals .............................................................................................. 7
        **2.** Audit ................................................................................................... 7
        **3.** Bankruptcy ......................................................................................... 7
        **4.** Duties in the Event of Occurrence, Claim or Suit ............................. 7
        **5.** First Named Insured .......................................................................... 7
        **6.** Liberalization ..................................................................................... 7
        **7.** Loss Payments ................................................................................... 8
        **8.** Maintenance of Underlying Insurance .............................................. 8
        **9.** Other Insurance ................................................................................. 8
        **10.** Premium ............................................................................................. 8
        **11.** Representations .................................................................................. 8
        **12.** Transfer of Rights of Recovery Against Others to Us ....................... 8
        **13.** When We Do Not Renew .................................................................... 9

**SECTION IV - DEFINITIONS:** ................................................................................. 9

        **1.** "Authorized representative" ............................................................... 9
        **2.** "Coverage term" ................................................................................ 9
        **3.** "Electronic data" ................................................................................ 9
        **4.** "Hostile fire" ...................................................................................... 9
        **5.** "Insured" ............................................................................................ 9
        **6.** "Loss" ................................................................................................. 10
        **7.** "Pollutants" ........................................................................................ 10
        **8.** "Underlying insurance" ...................................................................... 10

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ................................ 11

CIC0178

# EXCESS LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties, and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION IV - DEFINITIONS**.

## SECTION I - COVERAGE

### A. Insuring Agreement

1. We will pay those sums the "insured" is legally obligated to pay as damages for that part of "loss" to which this insurance applies in excess of "underlying insurance".

2. This insurance applies to injury or offense only if:

   a. The injury or offense takes place during the policy period shown in the Declarations; and

   b. Prior to the "coverage term" in which the injury or offense takes place, you did not know, per Paragraph **4.** below, that the injury or offense had taken place or begun to take place, in whole or in part.

3. Injury or offense which:

   a. Takes place during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **4.** below, to have taken place;

   includes any continuation, change or resumption of that injury or offense after the end of the "coverage term" in which it first became known by you.

4. You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

   a. Reports all, or any part of the injury or offense to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of the injury or offense;

   c. First observes, or reasonably should have first observed, the injury or offense;

   d. Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that injury or offense has taken place or begun to take place; or

   e. Becomes aware, or reasonably should have become aware, of a condition from which injury or offense is substantially certain to take place.

5. The terms, definitions, conditions, limitations and exclusions of the "underlying insurance" are made a part of this Coverage Part, except for:

   a. Any term or condition relating to:

      (1) Any duty to investigate or defend;

      (2) The limits of insurance;

      (3) The payment of expenses;

      (4) The premium;

      (5) Cancellation or non-renewal;

      (6) Any renewal agreement;

      (7) The policy period; or

   b. Any other provision that is not consistent with this Coverage Part;

   in which case the terms, definitions, conditions, limitations and exclusions of this Coverage Part will apply.

6. The amount we will pay is limited as described in **SECTION II - LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments**.

### B. Exclusions

This insurance does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

---

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0179

**2. Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**3. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**4. Pollutant - Auto**

Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to bodily injury or property damage arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an auto part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The bodily injury or property damage does not arise out of the operation of:

**(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

**(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

However, this exception to Paragraph **(a)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **b.** and **c.** above do not apply to an occurrence that occurs away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

CIC0180

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an auto that an "insured" owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**5. Pollutant - Other Than Auto**

**a.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any "insured".

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

**(a)** Bodily injury, if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** Bodily injury or property damage for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional "insured" with respect to your ongoing operations performed for that additional "insured" at that premises, site or location and such

premises, site or location is not and never was owned or occupied by, or rented or loaned to, any "insured", other than that additional "insured"; or

**(c)** Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any "insured" or others for the handling, storage, disposal, processing or treatment of waste;

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any "insured" or any person or organization for whom you may be legally responsible;

**(4)** At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, and subject to all its terms, limitations and conditions:

**(a)** Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the bodily injury or property damage arises out

CIC0181

of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor;

**(b)** Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** Bodily injury or property damage arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any "insured" or any contractors or subcontractors working directly or indirectly on any "insured's" behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **b.** does not apply to liability for damages because of property damage that the "insured" would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

**6. Underlying Insurance**

Any liability not covered by "underlying insurance" for any reason other than the exhaustion of an aggregate limit of insurance by payment of claims.

**7. Uninsured or Underinsured Motorists**

Any liability or obligation to any "insured" or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**8. War**

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**C. Defense and Supplementary Payments**

**1.** We will have the right and duty to defend the "insured" against any suit seeking damages because of injury or damage to which this insurance applies when the applicable limits of "underlying insurance" and any other insurance have been exhausted by payment of claims. We will have no duty to defend the "insured" against any suit seeking damages for injury or damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result.

Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**2.** We have no duty to investigate, settle or defend any claim or suit other than those

CIC0182

circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or suit to which this insurance applies. If we exercise this right, we will do so at our expense.

3. If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

   a. All expenses we incur.

   b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

   c. The cost of bonds to appeal a judgment or award in any claim or suit we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

   d. Reasonable expenses incurred by the "insured" at our request to assist us in the investigation or defense of the claim or suit, including the actual loss of earnings.

   e. All costs taxed against the "insured" in the suit.

4. If there is no underlying insurer obligated to do so, we will pay the following expenses for a "loss" to which this insurance applies:

   a. Prejudgment interest awarded against the "insured" on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   b. All interest awarded against the "insured" on the full amount of any judgment that accrues:

      (1) After entry of the judgment; and

      (2) Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

5. If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments,** we will pay any expense incurred with our written consent.

These payments will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

## SECTION II - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. "Insureds";

   b. Claims made or suits brought;

   c. Persons or organizations making claims or bringing suits; or

   d. Coverages provided under this Coverage Part.

2. The Limits of Insurance of this Coverage Part apply in excess of the "underlying insurance" limits specified in the Schedule of Underlying Insurance.

3. The Aggregate Limit specified in the Declarations is the most we will pay for "loss" to which this insurance applies. The Aggregate Limit of this Coverage Part applies to "loss" in the same manner as the aggregate limit in the "underlying insurance" applies to "loss". When the "underlying insurance" does not apply an aggregate limit of "loss", the Aggregate Limit of this Coverage Part will not apply to "loss". When the "underlying insurance" does apply an aggregate limit to "loss", the Aggregate Limit of this Coverage Part will apply to "loss".

4. Subject to **3.** above, the Each Occurrence Limit specified in the Declarations is the most we will pay for "loss" arising out of any one occurrence.

   We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for Each Occurrence because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

5. The following provision applies only if this Coverage Part contains an Aggregate Limit of Insurance which applies to the "loss".

   If the Each Occurrence Limit of Insurance of the "underlying insurance" is less than as stated in the Schedule of Underlying Insurance because the aggregate limits of the "underlying insurance" have been reduced, this Coverage Part becomes excess of such re-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

XS 101 UM 12 04      Page 6 of 12

CIC0183

duced limit of insurance if such reduction is solely the result of injury or damage occurring after the inception date of this Coverage Part and not before. This provision does not increase the Limits of Insurance of this Coverage Part.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION III - CONDITIONS

### 1. Appeals

We may elect to appeal a judgment against any "insured" if the judgment exceeds the underlying limits of insurance. If we appeal, we will do so at our own expense, but in no event shall this provision increase our liability beyond:

a. Our applicable Limits of Insurance as shown in the Declarations;

b. Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments**; and

c. The expense of such appeal.

### 2. Audit

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

a. The premium shown in the Declarations as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

(1) The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

(2) The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

However, in no event will the earned premium be less than the Minimum Premium stated in the Declarations.

b. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

### 3. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate shall not relieve us of any obligations under this Coverage Part.

### 4. Duties in the Event of Occurrence, Claim or Suit

a. You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:

(1) How, when and where the occurrence took place;

(2) The names and addresses of injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the occurrence.

b. If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.

c. You must see to it that we and your underlying insurers:

(1) Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and

(2) Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.

d. No "insured", except at their own expense, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

### 5. First Named Insured

The person or organization first named in the Declarations will act on behalf of all other "insureds" where indicated in this Coverage Part.

### 6. Liberalization

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0184

Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**7. Loss Payments**

Coverage under this Coverage Part will only apply after you and your underlying insurers are obligated to pay the full amount of the "underlying insurance" limits of insurance. When the amount of the "loss" has finally been determined, we will promptly pay on your behalf the amount of "loss" covered under the terms and conditions of this Coverage Part after the full amount of "underlying insurance" has been paid.

**8. Maintenance of Underlying Insurance**

While this Coverage Part is in effect, you shall maintain in full force "underlying insurance". This means:

**a.** The terms, conditions and endorsements of "underlying insurance" will not materially change;

**b.** Renewals or replacements of "underlying insurance" will not be more restrictive in coverage;

**c.** "Underlying insurance" may not be canceled or nonrenewed without notifying us; and

**d.** Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits due to payment of "loss" for injury or offense that takes place during the corresponding "coverage term" of this Coverage Part.

The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the "insured's" failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

Failure to comply with this condition will not invalidate this Coverage Part, but in the event of such failure, we will only be liable to the same extent as if there had been compliance with this condition.

You must see to it that we are notified promptly if any "underlying insurance" is canceled or not renewed.

**9. Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

**10. Premium**

The premium for this Coverage Part shall be as stated in the Declarations. The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

Any change in the premium for "underlying insurance" shall be promptly reported to us. We may adjust the premium in accordance with our rules and rates.

**11. Representations**

**a.** By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

**b.** However, to the extent that the following applies in the "underlying insurance", it will also apply to this Coverage Part:

Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

**12. Transfer of Rights of Recovery Against Others to Us**

**a.** If the "insured" has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after loss to impair them. At our request, the "insured" will bring suit or

CIC0185

transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the "insured", the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled. If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to injury or damage taking place to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" waive any right of recovery against a person or organization for injury or damage, we will also waive any rights we may have against such person or organization.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION IV - DEFINITIONS**

**1.** "Authorized representative" means:

**a.** If you are:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liabil-

ity company, your executive officers and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your employees assigned to manage your insurance program, or assigned to give or receive notice of an occurrence, offense, claim or suit are also "authorized representatives".

**2.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**3.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**4.** "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

**5.** "Insured" means the Named Insured shown in the Declarations and any person or organization qualifying as such in the "underlying insurance".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0186

6. "Loss" means those sums paid as damages in the settlement or satisfaction of a claim to which this insurance applies for which the "insured" is legally liable, after making deductions for all recoveries, salvages and other insurance, whether collectible or not, other than the "underlying insurance" and excess insurance written specifically to be excess over this insurance. "Loss" does not include investigation, adjustment, defense or appeal costs and expenses, even though "underlying insurance" may provide insurance for such costs and expenses.

7. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

    **a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

    **b.** The insured uses, generates or produces the "pollutant".

8. "Underlying insurance" means the policy(ies) and limits of insurance shown in the Schedule of Underlying Insurance, including any renewal or replacement of such policy(ies), which provide the layer of coverage, whether primary or excess, immediately preceding the layer of coverage provided by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0187

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

1. Any liability:

   **a.** With respect to which an "insured" under the Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the "insured" is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Any liability resulting from the "hazardous properties" of "nuclear material", if

   **a.** The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(2)** has been discharged or dispersed therefrom,

   **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   **c.** The injury or damage arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the

United States of America, its territories or possessions or Canada, this Exclusion **c.** applies only to property damage to such "nuclear facility" and any property thereat.

**B.** **SECTION IV - DEFINITIONS** is hereby modified to add the following definitions:

1. "Hazardous properties" include radioactive, toxic or explosive properties;

2. "Nuclear material" means "source material", "special nuclear material" or "by-product material";

3. "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

5. "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

6. **"Nuclear facility" means:**

   **a.** Any "nuclear reactor";

   **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0188

or any combination thereof, or more than 250 grams of uranium 235;

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**7.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**8.** "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0189

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT - RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following

**EXCESS LIABILITY COVERAGE PART**
**CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to any liability to:

**a.** A person arising out of any:

   **(1)** Refusal to employ that person;

   **(2)** Termination of that person's employment; or

   **(3)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above directed at that person.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**XS 306 09 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION

This endorsement modifies insurance provided under the following:

    **CLAIMS-MADE EXCESS LIABILITY COVERAGE PART**
    **EXCESS LIABILITY COVERAGE PART**

**SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

Any liability arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0191

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

**EXCESS LIABILITY COVERAGE FORM**

Paragraph **4.** of **SECTION I - COVERAGE, A. Insuring Agreement** is deleted in its entirety and replaced by the following:

**4.** You will be deemed to know that injury or offense has taken place at the earliest time when any "authorized representative":

   **a.** Reports all, or any part of the injury or offense to us or any other insurer;

   **b.** Receives a written or verbal demand or claim for damages because of the injury or offense;

   **c.** First observes the injury or offense;

   **d.** Becomes aware by any means, other than as described in **c.** above, that injury or offense has taken place or begun to take place; or

   **e.** Becomes aware of a condition from which injury or offense is substantially certain to take place.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0192

# THE CINCINNATI INSURANCE COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

| Attached to and forming part of POLICY NUMBER: ETD 051 52 30 | Effective Date 12-12-2018 |
|---|---|

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:** 12-12-2018

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HC102    01/18 CINCINNATI DATA DEFENDER™ COVERAGE FORM

HC460IL  01/18 ILLINOIS CHANGES - CINCINNATI DATA DEFENDER™ COVERAGE PART



CIC0194

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

## TABLE OF CONTENTS

**Coverage Part Provision:** **Begins on Page:**

Preamble ....................................................................................................................................................3

SECTION I - COVERAGES ...........................................................................................................................3

A.  Insuring Agreements ...............................................................................................................................3

    1.  Insuring Agreement **A** - Response Expenses ................................................................3
    2.  Insuring Agreement **B** - Defense and Liability ...............................................................5
    3.  Insuring Agreement **C** - Identity Recovery .....................................................................5

B.  Exclusions ..............................................................................................................................................5

    1.  Applicable to Insuring Agreements **A** and **B** ................................................................5

        a.  Contractual Liability ..........................................................................................5
        b.  Criminal Investigations or Proceedings ............................................................5
        c.  Deficiency Correction ........................................................................................5
        d.  Extortion ............................................................................................................6
        e.  Fraudulent, Dishonest or Criminal Acts ...........................................................6
        f.  Non-monetary Relief ..........................................................................................6
        g.  Previously Reported Data Compromises ...........................................................6
        h.  Prior Data Compromises ...................................................................................6
        i.  Prior or Pending Litigation .................................................................................6
        j.  Reckless Disregard ...........................................................................................6
        k.  Uninsurable .......................................................................................................6
        l.  Willful Complicity ...............................................................................................6

    2.  Applicable to Insuring Agreement **C** ..............................................................................6

        a.  Fraudulent, Dishonest or Criminal Acts ...........................................................6
        b.  Professional or Business Identity ......................................................................6
        c.  Unreported Identity Theft ...................................................................................6

    3.  Applicable to Insuring Agreements **A**, **B** and **C** ..........................................................6

        a.  Nuclear .............................................................................................................6
        b.  War ....................................................................................................................6

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE ........................................................................7

SECTION III - DEFENSE AND SETTLEMENT ............................................................................................8

SECTION IV - CONDITIONS ........................................................................................................................8

    1.  Bankruptcy ....................................................................................................................8
    2.  Due Diligence ................................................................................................................8
    3.  Duties in the Event of a Claim, Regulatory Proceeding or Loss ...................................9
    4.  Help Line ......................................................................................................................10
    5.  Legal Action Against Us ..............................................................................................10
    6.  Legal Advice ................................................................................................................10
    7.  Liberalization ...............................................................................................................10
    8.  Office of Foreign Assets Control (OFAC) Compliance .................................................11
    9.  Other Insurance ..........................................................................................................11
    10. Pre-Notification Consultation .......................................................................................11
    11. Representations ...........................................................................................................11
    12. Separation of Insureds ................................................................................................11
    13. Service Providers ........................................................................................................11
    14. Services ......................................................................................................................11
    15. Subrogation .................................................................................................................12
    16. Valuation - Settlement .................................................................................................12
    17. When We Do Not Renew ..............................................................................................12

CIC0195

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                  **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS** ...................................................................................12

**SECTION VI - DEFINITIONS** ......................................................................................................................13

    1.   "Affected individual" ....................................................................................................................13
    2.   "Authorized representative" .........................................................................................................13
    3.   "Claim" .........................................................................................................................................13
    4.   "Coverage term" ..........................................................................................................................13
    5.   "Coverage territory" .....................................................................................................................14
    6.   "Data compromise liability" .........................................................................................................14
    7.   "Defense costs" ...........................................................................................................................14
    8.   "Employee" ...................................................................................................................................14
    9.   "Executive" ...................................................................................................................................15
  10.   "Identity recovery case manager" ................................................................................................15
  11.   "Identity recovery expenses" .......................................................................................................15
  12.   "Identity recovery insured" ..........................................................................................................16
  13.   "Identity theft" ..............................................................................................................................16
  14.   "Insured" ......................................................................................................................................16
  15.   "Loss" ...........................................................................................................................................16
  16.   "Named insured" ..........................................................................................................................16
  17.   "Personal data compromise" .......................................................................................................16
  18.   "Personally identifying information" .............................................................................................17
  19.   "Personally sensitive information" ...............................................................................................17
  20.   "Policy period" .............................................................................................................................17
  21.   "Regulatory proceeding" ..............................................................................................................17

CIC0196

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data

compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

CIC0197

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

CIC0198

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

CIC0199

tems, procedures or physical security that may have contributed to a "personal data compromise".

**d. Extortion**

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

**e. Fraudulent, Dishonest or Criminal Acts**

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

**f. Non-monetary Relief**

That part of any "claim" seeking any non-monetary relief.

**g. Previously Reported Data Compromises**

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

**h. Prior Data Compromises**

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

**i. Prior or Pending Litigation**

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

**j. Reckless Disregard**

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

**k. Uninsurable**

Any amount not insurable under applicable law.

**l. Willful Complicity**

The "insured's" intentional or willful complicity in a "personal data compromise".

**2.** Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

**a. Fraudulent, Dishonest or Criminal Acts**

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

**b. Professional or Business Identity**

The theft of a professional or business identity.

**c. Unreported Identity Theft**

An "identity theft" that is not reported in writing to the police.

**3.** Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Nuclear**

Nuclear reaction or radiation or radioactive contamination, however caused.

**b. War**

**(1)** War, including undeclared or civil war or civil unrest;

**(2)** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0200

## SECTION II - LIMITS OF INSURANCE AND DE-DUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

CIC0201

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit stated in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   **a.** After entry of judgment; and

   **b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

CIC0202

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3. Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

   **(1)** The specific details, including the date, of the circumstance;

   **(2)** The alleged injuries or damage sustained or which may be sustained;

   **(3)** The names of potential claimants; and

   **(4)** The manner in which the "insured" first became aware of the circumstance.

   Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

   **(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

   **(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

   **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

   **(4)** Authorize us to obtain records and other information;

   **(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

   **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

   **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

   **(1)** Notify the police if a law may have been broken.

   **(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

   **(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

   **(4)** As often as may be reasonably required, permit us to:

   **(a)** Inspect the property proving the "personal data compromise";

   **(b)** Examine your books, records, electronic media and records and hardware;

   **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

   **(d)** Make copies from your books, records, electronic media and records and hardware.

   **(5)** Send us signed, sworn proof of loss containing the information we request

CIC0203

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

HC 102 01 18    Includes copyrighted material of Insurance Services Office, Inc. with its permission.    Page 10 of 17

CIC0204

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

### 8. Office of Foreign Assets Control (OFAC) Compliance

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

### 9. Other Insurance

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

### 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

### 11. Representations

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

### 12. Separation of Insureds

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

### 13. Service Providers

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 14. Services

The following conditions apply as respects any services provided to you or any "affected indi-

CIC0205

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, shall be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0206

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

  **a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

  **b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

  **a.** Means:

    **(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

      **(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

      **(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

    **(2)** "Claim" includes:

      **(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

      **(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

      **(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

  **b.** Does not include any demand or action brought by or on behalf of someone who is:

    **(1)** Your "executive";

    **(2)** Your owner or part-owner; or

    **(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

  **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0207

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

CIC0208

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

(1) Director;

(2) Officer;

(3) Managing Partner;

(4) General Partner;

(5) Member (if a limited liability company);

(6) Manager (if a limited liability company); or

(7) Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

(a) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(b) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(a) Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0209

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0210

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CIC0211

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CINCINNATI DATA DEFENDER™ COVERAGE PART

This endorsement modifies insurance provided under the following:

**CINCINNATI DATA DEFENDER™ COVERAGE PART**

**A. SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** is amended to delete in their entirety subparagraphs **1.** and **2.** of Paragraph **B.** and replace them with the following:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than pre and post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than pre and post-judgment interest) arising out of all "claims".

**B. SECTION III - DEFENSE AND SETTLEMENT** is amended to delete in its entirety Paragraph **4.** and replace it with the following:

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

**a.** Before entry of judgment; or

**b.** After entry of judgment, but before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Defense and Liability Limit.

**C.** The following is added to **SECTION IV - CONDITIONS, 5. Legal Action Against Us**:

The 2 year period for legal action against us is extended by the number of days between the date the proof of "loss" is filed with us and the date we deny the "claim" in whole or in part.

**D. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **8.** and replace it with the following:

**8. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided.

**E. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **9.** and replace it with the following:

**9. Other Insurance**

If any "loss" resulting from any "claim" is insured by any other valid policy, we shall not be liable under this policy for a greater proportion of such "loss" than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such "loss", unless such other insurance is purchased specifically to apply in excess of the Limit of Liability stated in the Declarations of this policy.

**F. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **11.** and replace it with the following:

**11. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of the policy if such misrepresentation is made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0212

**G.** The following is added to **SECTION V - EXTENDED REPORTING PERIODS 2.b.**:

You shall have the option to purchase a 12 month Extended Reporting Period to replace the 90 day Automatic Extended Reporting Period for an additional premium equal to 75% of the expiring annual premium for the applicable Coverage Part.

**H.** **SECTION VI - DEFINITIONS** is amended to delete definition **6.** "Data compromise liability" in its entirety and replace it with the following:

**6.** "Data compromise liability":

    **a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

        **(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements; and

        **(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order.

    **b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

    **c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

    **d.** Does not include:

        **(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

        **(2)** Taxes; or

        **(3)** Matters which may be deemed uninsurable under the applicable law.

    **e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

        **(1)** Is where those fines, penalties or damages were awarded or imposed;

        **(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

        **(3)** Is where you are incorporated or you have your principal place of business; or

        **(4)** Is where we are incorporated or have our principal place of business.

However, in no event will the punitive, exemplary damages or the multiplied portion of any multiplied damages be insurable under this contract of insurance with respect to a "claim" brought against an Illinois domiciled insured in an Illinois state court, except to the extent such damages are insurable under Illinois law. Illinois law dictates that an insurer may not reimburse an insured for punitive damages assessed as a result of the insured's own misconduct.

**I.** The following is added to definition **7.** "Defense costs" in **SECTION VI - DEFINITIONS:**

"Defense costs":

    **c.** Does not include the salaries of our employees or the salaries of your staff attorneys.

**J.** The term spouse is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0213

# THE CINCINNATI INSURANCE COMPANY
A Stock Insurance Company

# CINCINNATI NETWORK DEFENDER™ COVERAGE PART
# DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: **ETD 051 52 30**          Effective Date **12-12-2018**

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:   12-12-2018**

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible | |
|---|---|---|---|---|---|---|
| A | Computer Attack | $50,000 | | | $1,000 | 1 |
| | | | Cyber Extortion | $10,000 | $1,000 | 2 |
| | | | Loss of Business | $25,000 | | |
| | | | Public Relations | $25,000 | | |
| B | Network Security and Electronic Media Liability | $50,000 | | | $1,000 | |

| TOTAL ANNUAL PREMIUM | $187 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 60 |
| 2 YEAR | 120 |
| 3 YEAR | 160 |
| 4 YEAR | 200 |
| 5 YEAR | 220 |
| 6 YEAR | 240 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| HC103 | 01/18 | CINCINNATI NETWORK DEFENDER™ COVERAGE FORM |
|---|---|---|
| HC461IL | 01/18 | ILLINOIS CHANGES - CINCINNATI NETWORK DEFENDER™ COVERAGE PART |

---

[1] Computer Attack Deductible other than Cyber Extortion
[2] Cyber Extortion Deductible

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

Coverage Part Provision: Begins on Page:

Preamble ............................................................................................................................. 3

SECTION I - COVERAGES ................................................................................................ 3

A. Insuring Agreements .................................................................................................... 3

    1. Insuring Agreement A - Computer Attack ............................................................ 3
    2. Insuring Agreement B - Network Security and Electronic Media Liability ............ 3

B. Exclusions .................................................................................................................... 4

    1. Contractual Liability ............................................................................................. 4
    2. Criminal Investigations or Proceedings ............................................................... 4
    3. Deficiency Correction .......................................................................................... 4
    4. Extortion ............................................................................................................. 4
    5. Fines or Penalties ............................................................................................... 4
    6. Fraudulent, Dishonest or Criminal Acts .............................................................. 4
    7. Information Technology Products ......................................................................... 4
    8. Infrastructure Failure ........................................................................................... 4
    9. Knowledge of Falsity ........................................................................................... 4
    10. Non-monetary Relief ........................................................................................... 4
    11. Nuclear ............................................................................................................... 4
    12. Patent or Trade Secret Infringement ................................................................... 4
    13. Previously Reported Claims ................................................................................. 4
    14. Prior Wrongful Acts ............................................................................................. 5
    15. Prior or Pending Litigation ................................................................................... 5
    16. Property Damage or Bodily Injury ........................................................................ 5
    17. War ..................................................................................................................... 5
    18. Willful Complicity ................................................................................................. 5

SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE ............................................. 5

SECTION III - DEFENSE AND SETTLEMENT .................................................................. 6

SECTION IV - CONDITIONS ............................................................................................. 6

    1. Bankruptcy .......................................................................................................... 6
    2. Due Diligence ...................................................................................................... 6
    3. Duties in the Event of a Claim or Loss ................................................................ 6
    4. Legal Action Against Us ....................................................................................... 7
    5. Liberalization ....................................................................................................... 8
    6. Office of Foreign Assets Control (OFAC) Compliance .......................................... 8
    7. Other Insurance .................................................................................................. 8
    8. Representations ................................................................................................... 8
    9. Separation of Insureds ........................................................................................ 8
    10. Services .............................................................................................................. 8
    11. Subrogation ......................................................................................................... 8
    12. Valuation - Settlement ......................................................................................... 9
    13. When We Do Not Renew ..................................................................................... 9

SECTION V - EXTENDED REPORTING PERIODS ........................................................... 9

SECTION VI - DEFINITIONS ............................................................................................. 9

    1. "Actual cash value" ............................................................................................. 9
    2. "Bodily injury" ..................................................................................................... 9
    3. "Business income loss" ....................................................................................... 9
    4. "Claim" ................................................................................................................ 10
    5. "Computer attack" ............................................................................................... 10
    6. "Computer system" ............................................................................................. 10
    7. "Coverage term" ................................................................................................. 10

CIC0215

**TABLE OF CONTENTS (CONT'D)**

| Coverage Part Provision: | Begins on Page: |
|---|---|

**SECTION VI – DEFINITIONS (Cont'd)** ....................................................................................................**10**

| | | |
|---|---|---|
| 8. | "Coverage territory" | **10** |
| 9. | "Cyber extortion expenses" | **10** |
| 10. | "Cyber extortion threat" | **11** |
| 11. | "Data re-creation costs" | **11** |
| 12. | "Data restoration costs" | **11** |
| 13. | "Defense costs" | **11** |
| 14. | "Denial of service attack" | **11** |
| 15. | "Electronic media incident" | **11** |
| 16. | "Employee" | **12** |
| 17. | "Executive" | **12** |
| 18. | "Extra expense" | **12** |
| 19. | "Insured" | **12** |
| 20. | "Interrelated" | **12** |
| 21. | "Loss" | **12** |
| 22. | "Malware attack" | **12** |
| 23. | "Named insured" | **12** |
| 24. | "Network security incident" | **12** |
| 25. | "Period of restoration" | **13** |
| 26. | "Personally identifying information" | **13** |
| 27. | "Personally sensitive information" | **13** |
| 28. | "Policy period" | **13** |
| 29. | "Property damage" | **13** |
| 30. | "Ransomware" | **13** |
| 31. | "Settlement costs" | **13** |
| 32. | "System restoration costs" | **13** |
| 33. | "Third party corporate data" | **14** |
| 34. | "Unauthorized access incident" | **14** |
| 35. | "Wrongful act" | **14** |

CIC0216

# CINCINNATI NETWORK DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DE-DUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI - Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Computer Attack**

   **a.** Coverage under Insuring Agreement **A** - Computer Attack applies only if all of the following conditions are met:

     **(1)** There has been a "computer attack"; and

     **(2)** Such "computer attack" is first discovered by you during the "policy period"; and

     **(3)** Such "computer attack" occurred in the "coverage territory"; and

     **(4)** Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

   **b.** If all of the conditions in **a.** above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

     **(1) Cyber Extortion**

      We will pay your necessary and reasonable "cyber extortion expenses".

**(2) Data Restoration**

   We will pay your necessary and reasonable "data restoration costs".

**(3) Data Re-creation**

   We will pay your necessary and reasonable "data re-creation costs".

**(4) System Restoration**

   We will pay your necessary and reasonable "system restoration costs".

**(5) Loss of Business**

   We will pay your actual "business income loss" and your necessary and reasonable "extra expenses".

**(6) Public Relations**

   If you suffer covered "business income loss", we will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "computer attack" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "computer attack".

**2. Insuring Agreement B - Network Security and Electronic Media Liability**

   **a.** Coverage under Insuring Agreement **B** - Network Security and Electronic Media Liability applies only if all of the following conditions are met:

     **(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive no-

CIC0217

tice of a "claim" which arises from a "wrongful act" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period"; and

**(b)** Took place in the "coverage territory"; and

**(2)** Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" the "insured's" necessary and reasonable "defense costs" and "settlement costs" directly arising from the "claim".

**c.** All "claims" caused by a single "wrongful act" or series of "interrelated" "wrongful acts" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

## B. Exclusions

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

### 1. Contractual Liability

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to any liability that an "insured" would have incurred in the absence of such contract or agreement.

### 2. Criminal Investigations or Proceedings

Any criminal investigations or proceedings.

### 3. Deficiency Correction

Costs to research or correct any deficiency.

### 4. Extortion

Any threat, extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

This exclusion does not apply to the extent that insurance coverage is provided under **SECTION I - COVERAGES**, Paragraph **A.1.b.(1) Cyber Extortion**.

### 5. Fines or Penalties

Any fines or penalties.

### 6. Fraudulent, Dishonest or Criminal Acts

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

### 7. Information Technology Products

The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

### 8. Infrastructure Failure

Failure or interruption of or damage to any electrical power supply network or telecommunication network not owned and operated by the "insured" including, but not limited to, the internet, internet service providers, DNS service providers, cable and wireless providers, internet exchange providers, search engine providers, tier 1 internet protocol networks and other providers of telecommunications or internet infrastructure.

### 9. Knowledge of Falsity

Any oral or written publication of material, if done by the "insured" or at the "insured's" direction with knowledge of its falsity.

### 10. Non-monetary Relief

That part of any "claim" seeking any non-monetary relief.

### 11. Nuclear

Nuclear reaction or radiation or radioactive contamination, however caused.

### 12. Patent or Trade Secret Infringement

Any actual or alleged patent or trade secret violation including any actual or alleged violation of the Patent Act, the Economic Espionage Act of 1996, or the Uniform Trade Secrets Act and their amendments.

### 13. Previously Reported Claims

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0218

### 14. Prior Wrongful Acts

Any "wrongful act" first occurring before the Retroactive Date shown in the Declarations or any "claim" arising from a "wrongful act" that first occurred prior to the Retroactive Date shown in the Declarations.

### 15. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### 16. Property Damage or Bodily Injury

"Property damage" or "bodily injury" other than "bodily injury" arising from an "electronic media incident".

### 17. War

**a.** War, including undeclared or civil war or civil unrest;

**b.** Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

### 18. Willful Complicity

The "insured's" intentional or willful complicity in a covered "loss" event or your reckless disregard for the security of your "computer system" or data.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

### A. Insuring Agreement A - Computer Attack

**1.** The most we will pay under Insuring Agreement **A** - Computer Attack for Cyber Extortion coverage for "loss" arising from any one "computer attack" is the Cyber Extortion Sublimit stated in the Declarations. This Limit of Insurance is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**2.** The most we will pay under Insuring Agreement **A** - Computer Attack for Loss of Business coverage for "loss" arising from any one "computer attack" is the Loss of Business Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**3.** The most we will pay under Insuring Agreement **A** - Computer Attack for Public Relations coverage for "loss" arising from any one "computer attack" is the Public Relations Sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the Computer Attack Aggregate Limit of Insurance stated in Paragraph **4.** below.

**4.** The Computer Attack Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Computer Attack arising out of all "computer attack" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "computer attack" events first discovered during the "coverage term".

**5.** A "computer attack" may be first discovered by you in one "coverage term" but it may cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "computer attack" will be subject to the Computer Attack Aggregate Limit of Insurance applicable to the "coverage term" when the "computer attack" was first discovered by you.

**6.** The Computer Attack coverage is subject to the:

**a.** Computer Attack other than Cyber Extortion; and

**b.** Cyber Extortion;

deductibles stated in the Declarations. In the event that elements of "loss" from the same "computer attack" include "cyber extortion expenses" as well as other insured expenses or costs, then only the single highest deductible will apply. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "computer attack" covered under this Coverage Part.

### B. Insuring Agreement B - Network Security and Electronic Media Liability

**1.** Except for post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0219

**2.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than post-judgment interest) arising out of all "claims".

**3.** The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

**4.** The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** We will have the right and duty to select counsel and defend the "insured" against any "claim" covered by Insuring Agreement **B** - Network Security and Electronic Media Liability, regardless of whether the allegations of such "claim" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" seeking damages or other relief not insured by Insuring Agreement **B** - Network Security and Electronic Media Liability.

**2.** We may, with your written consent, make any settlement of a "claim" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

**3.** We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim", after the Insuring Agreement **B** - Network Secu-

rity and Electronic Media Liability Limit of Insurance has been exhausted.

**4.** We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

**a.** After entry of judgment; and

**b.** Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

## SECTION IV - CONDITIONS

**1. Bankruptcy**

Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

**2. Due Diligence**

You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, "computer systems" and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security; and

**c.** Maintaining and updating at appropriate intervals backups of computer data.

**3. Duties in the Event of a Claim or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

**(1)** The specific details, including the date, of the circumstance;

**(2)** The alleged injuries or damage sustained or which may be sustained;

CIC0220

(3) The names of potential claimants; and

(4) The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" is brought against any "insured", you must:

(1) Immediately record the specifics of the "claim" and the date received; and

(2) Provide us with written notice, as soon as practicable, but in no event more than 60 days after the date the "claim" is first received by you.

(3) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

(4) Authorize us to obtain records and other information;

(5) Cooperate with us in the investigation, settlement or defense of the "claim";

(6) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" to which this insurance may also apply; and

(7) Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim".

**c.** In the event of a "computer attack" covered under Insuring Agreement **A** - Computer Attack, you must see that the following are done:

(1) Notify the police if a law may have been broken.

(2) Notify us as soon as practicable, but in no event more than 60 days after the "computer attack". Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the "computer attack" occurred.

(4) As often as may be reasonably required, permit us to:

(a) Inspect the property proving the "computer attack";

(b) Examine your books, records, electronic media and records and hardware;

(c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

(d) Make copies from your books, records, electronic media and records and hardware.

(5) Send us signed, sworn proof of loss containing the information we request to investigate the "computer attack". You must do this within 60 days after our request. We will supply you with the necessary forms.

(6) Cooperate with us in the investigation or settlement of the "computer attack".

(7) If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

(8) Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

(9) Promptly send us any legal papers or notices received concerning the "computer attack" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Legal Action Against Us**

**a.** No person or organization has a right:

(1) To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

(2) To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0221

final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**5. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**6. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**7. Other Insurance**

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part

by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**8. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**9. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom "claim" is made.

**10. Services**

The following conditions apply as respects any services provided to you by any service firm provided or paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on your cooperation and assistance.

**b.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**11. Subrogation**

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, will be distributed as follows:

CIC0222

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

**12. Valuation - Settlement**

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

**13. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - EXTENDED REPORTING PERIODS**

The provisions contained within this Section apply only to Insuring Agreement **B** - Network Security and Electronic Media Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written no-

tice of a "claim" of which you first receive notice during said Automatic Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" of which you first receive notice during said Supplemental Extended Reporting Period for any "wrongful act" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Network Security and Electronic Media Liability Limit for the Extended Reporting Periods shall be part of, and not in addition to, the Network Security and Electronic Media Liability Limit for the immediately preceding "coverage term".

**SECTION VI - DEFINITIONS**

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**3.** "Business income loss" means the sum of the:

**a.** Net income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal and necessary operating expenses incurred, including "employee" and "executive" payroll,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0223

actually lost by you during the "period of restoration".

**4.** "Claim":

   **a.** Means a civil proceeding against an "insured" in which damages are alleged arising from a "wrongful act" or a series of "interrelated" "wrongful acts" allegedly committed by an "insured", including any appeal therefrom.

   **b.** "Claim" includes:

     **(1)** An arbitration or alternative dispute resolution proceeding that the "insured" is required to submit to or does submit to with our consent; or

     **(2)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

   **c.** Does not include any demand or action brought by or on behalf of someone who is:

     **(1)** Your "executive";

     **(2)** Your owner or part-owner; or

     **(3)** A holder of your securities;

     in their capacity as such, whether directly, derivatively, or by class action.

**5.** "Computer attack" means one of the following involving the "computer system":

   **a.** An "unauthorized access incident";

   **b.** A "malware attack";

   **c.** A "denial of service attack" against a "computer system"; or

   **d.** A "cyber extortion threat".

**6.** "Computer system" means a computer or other electronic hardware that:

   **a.** Is owned or leased by you and operated under your control; or

   **b.** Is operated by a third party service provider and used for the purpose of providing hosted computer application services to you or for processing, maintaining, hosting or storing your electronic data, pursuant to a written contract with you for such services, but such computer or other electronic hardware operated by such third party shall only be considered to be a "computer system" with respect to the specific services provided by such third party to you under such contract.

**7.** "Coverage term" means the following individual increment, or if a multi-year "policy period",

increments, of time, which comprise the "policy period" of this Coverage Part:

   **a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

     **(1)** The day the "policy period" shown in the Declarations ends; or

     **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

   **b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**8.** "Coverage territory" means:

   **a.** With respect to Insuring Agreement **A** - Computer Attack:

     Anywhere in the world, but "loss" must involve a "computer system" within the United States (including its territories and possessions), Puerto Rico or Canada.

   **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

     Anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**9.** "Cyber extortion expenses" means:

   **a.** The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

   **b.** Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat";

   when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in ad-

CIC0224

vance by us. We will not unreasonably withhold our approval.

10. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

   a. Launch a "denial of service attack" against the "computer system";

   b. Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

   c. Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   d. Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

   e. Cause the "insured" to transfer, pay or deliver any funds or property using a "computer system" without your authorization; or

   f. Inflict "ransomware" on a "computer system".

   "Cyber extortion threat" does not include any threat made in connection with a legitimate commercial dispute.

11. "Data re-creation costs":

   a. "Data re-creation costs" means the costs of an outside professional firm hired by you to research, re-create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

   b. "Data re-creation costs" also means your actual "business income loss" and your necessary and reasonable "extra expenses" arising from the lack of the lost or corrupted data during the time required to research, re-create and replace such data.

   c. "Data re-creation costs" does not mean costs to research, re-create or replace:

      (1) Software programs or operating systems that are not commercially available; or

      (2) Data that is obsolete, unnecessary or useless to you.

12. "Data restoration costs":

   a. Means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

   b. Does not include costs to research, restore or replace:

      (1) Software programs or operating systems that are not commercially available; or

      (2) Data that is obsolete, unnecessary or useless to you.

13. "Defense costs":

   a. Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

   b. Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

14. "Denial of service attack" means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the internet.

15. "Electronic media incident" means the display of information in electronic form by you on a website or in an "insured's" email that resulted in an allegation of:

   a. Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

   b. Defamation against a person or organization that is unintended;

   c. A violation of a person's right of privacy, including false light and public disclosure of private facts; or

   d. Interference with a person's right of publicity.

CIC0225

**16.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

    **a.** Employed on a full- or part-time basis by you;

    **b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

    **c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **b.**; or

    **d.** Your volunteer worker, which includes unpaid interns.

**17.** "Executive" means any natural person who was, now is or will be:

    **a.** The owner of a sole proprietorship that is a "named insured"; or

    **b.** A duly elected or appointed:

        **(1)** Director;

        **(2)** Officer;

        **(3)** Managing Partner;

        **(4)** General Partner;

        **(5)** Member (if a limited liability company);

        **(6)** Manager (if a limited liability company); or

        **(7)** Trustee,

    of a "named insured".

**18.** "Extra expense" means the additional cost you incur to operate your business during the "period of restoration" over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

**19.** "Insured" means:

    **a.** With respect to Insuring Agreement **A** - Computer Attack any "named insured".

    **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

        **(1)** Any "named insured"; and

        **(2)** Any "employee" or "executive" of a "named insured", but:

            **(a)** Only for the conduct of the "named insured's" business with-

in the scope of his or her employment or duties as an "executive"; and

            **(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**20.** "Interrelated" means all events or incidents that have as a common nexus any:

    **a.** Fact, circumstance, situation, event, transaction, cause; or

    **b.** Series of causally connected facts, circumstances, situations, events, transactions or causes.

**21.** "Loss" means:

    **a.** With respect to Insuring Agreement **A** - Computer Attack:

    Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

    **b.** With respect to Insuring Agreement **B** - Network Security and Electronic Media Liability:

        **(1)** "Defense costs"; and

        **(2)** "Settlement costs".

**22.** "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers. This does not mean damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

**23.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**24.** "Network security incident" means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

    **a.** The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code.

    **b.** The unintended abetting of a "denial of service attack" against one or more other systems.

    **c.** The unintended loss, release or disclosure of "third party corporate data".

CIC0226

25. "Period of restoration" means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

    **a.** The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

    **b.** The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

26. "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an individual. This includes, but is not limited to, Social Security numbers or account numbers.

    "Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

27. "Personally sensitive information" means private information specific to an individual the release of which requires notification of affected individuals under any applicable law.

    "Personally sensitive information" does not mean or include "personally identifying information".

28. "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

29. "Property damage" means:

    **a.** Physical injury to or destruction of tangible property including all resulting loss of use; or

    **b.** Loss of use of tangible property that is not physically injured.

30. "Ransomware" means any software that is used to demand a ransom payment by:

    **a.** Restricting access to a "computer system"; or

    **b.** Encrypting data held within a "computer system".

31. "Settlement costs":

    **a.** Means the following, when they arise from a "claim":

      **(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

      **(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

      **(3)** Pre-judgment interest on that part of any judgment paid by us.

    **b.** Does not include:

      **(1)** Civil or criminal fines or penalties imposed by law;

      **(2)** Taxes; or

      **(3)** Matters which may be deemed uninsurable under the applicable law.

    **c.** With respect to punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

      **(1)** Is where those fines, penalties or damages were awarded or imposed;

      **(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

      **(3)** Is where you are incorporated or you have your principal place of business; or

      **(4)** Is where we are incorporated or have our principal place of business.

32. "System restoration costs":

    **a.** Means the costs of an outside professional firm hired by you to do any of the following in order to restore your "computer system" to its pre- "computer attack" level of functionality:

      **(1)** Replace or reinstall computer software programs;

      **(2)** Remove any malicious code; and

      **(3)** Configure or correct the configuration of your "computer system".

    **b.** Does not include:

      **(1)** Costs to increase the speed, capacity or utility of your "computer system";

CIC0227

**(2)** Labor of your "employees" or "executives";

**(3)** Any costs in excess of the "actual cash value" of your "computer system"; or

**(4)** Costs to repair or replace hardware.

**33.** "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an "insured" under this Coverage Part which is not available to the general public and is provided to the "named insured" subject to a mutually executed written confidential-

ity agreement or which the "named insured" is legally required to maintain in confidence; however, "third party corporate data" shall not include "personally identifiable information" or "personally sensitive information".

**34.** "Unauthorized access incident" means the gaining of access to a "computer system" by:

**a.** An unauthorized person or persons; or

**b.** An authorized person or persons for unauthorized purposes.

**35.** "Wrongful act" means:

**a.** An "electronic media incident"; or

**b.** A "network security incident".

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0228

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CINCINNATI NETWORK DEFENDER™ COVERAGE PART

This endorsement modifies insurance provided under the following:

**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

**A. SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** is amended to delete in its entirety Paragraph **B.** and replace it with the following:

**B. Insuring Agreement B - Network Security and Electronic Media Liability**

1. Except for pre and post-judgment interest, the most we will pay under Insuring Agreement **B** - Network Security and Electronic Media Liability is the Network Security and Electronic Media Liability Aggregate Limit of Insurance stated in the Declarations.

2. The Network Security and Electronic Media Liability Aggregate Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **B** - Network Security and Electronic Media Liability (other than pre and post-judgment interest) arising out of all "claims".

3. The Network Security and Electronic Media Liability Aggregate Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Network Security and Electronic Media Liability Aggregate Limit of Insurance for the immediately preceding "coverage term".

4. The Insuring Agreement **B** - Network Security and Electronic Media Liability coverage is subject to the Network Security and Electronic Media Liability Deductible stated in the Declarations. You shall be responsible for the applicable deductible amount as respects "loss" arising from each "claim" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim" or "loss" and, upon notification of the action taken, you shall promptly reimburse us for such part

of the deductible amount as has been paid by us.

**B. SECTION III - DEFENSE AND SETTLEMENT** is amended by deleting Paragraph **4.** in its entirety and replacing it with the following:

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance which accrues:

   **a.** Before entry of judgment; or

   **b.** After entry of judgment but before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Network Security and Electronic Media Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Network Security and Electronic Media Liability Limit of Insurance.

**C.** The following is added to **SECTION IV - CONDITIONS, 4. Legal Action Against Us:**

The 2 year period for legal action against us is extended by the number of days between the date the proof of "loss" is filed with us and the date we deny the "claim" in whole or in part.

**D. SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **6.** and replace it with the following:

6. **Office of Foreign Assets Control (OFAC) Compliance**

   Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided.

CIC0229

**E.** **SECTION IV - CONDITIONS** is amended to delete in its entirety Paragraph **7.** and replace it with the following:

**7.** **Other Insurance**

If any "loss" resulting from any "claim" is insured by any other valid policy, we shall not be liable under this policy for a greater proportion of such "loss" than the applicable Limit of Insurance stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such "loss", unless such other insurance is purchased specifically to apply in excess of the Limit of Liability stated in the Declarations of this policy.

**F.** **SECTION IV - CONDITIONS** is amended to delete in its entirety Condition **8.** and replace it with the following:

**8.** **Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of the policy if such misrepresentation is made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company.

**G.** The following is added to **SECTION V - EXTENDED REPORTING PERIODS 2.b.:**

You shall have the option to purchase a 12 month Extended Reporting Period to replace the 90 day Automatic Extended Reporting Period for an additional premium equal to 75% of the expiring annual premium for the applicable Coverage Part.

**H.** The following is added to definition **10.** "Defense costs" in **SECTION VI - DEFINITIONS:**

"Defense costs":

**c.** Do not include the salaries of our employees or the salaries of your staff attorneys.

**I.** **SECTION VI - DEFINITIONS** is amended by deleting definition **31.** "Settlement costs" in its entirety and replacing it with the following:

**31.** "Settlement costs":

**a.** Means the following, when they arise from a "claim":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements; and

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such defense fees and costs are awarded by law or court order.

**b.** Do not include:

**(1)** Civil or criminal fines or penalties imposed by law;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**c.** With respect to punitive, exemplary and multiplied damages, the law of the juris- diction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

However, in no event will the punitive, exemplary damages or the multiplied portion of any multiplied damages be insurable under this contract of insurance with respect to a "claim" brought against an Illinois domiciled insured in an Illinois state court, except to the extent such damages are insurable under Illinois law. Illinois law dictates that an insurer may not reimburse an insured for punitive damages assessed as a result of the insured's own misconduct.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0230

| x | **THE CINCINNATI INSURANCE COMPANY 0244-10677** |
| | **THE CINCINNATI CASUALTY COMPANY 0244-28665** |
| | **THE CINCINNATI INDEMNITY COMPANY 0244-23280** |

### AUTOMOBILE LIABILITY I.D. CARD

State | Date Processed
IL | 01-02-2019

Policy No. | Effective Date | Expiration Date
ETA 051 52 30 | 12-12-2018 | 12-12-2019

Insured: THE BEND HOTEL DEVELOPMENT COMPANY LLC

111 BEND BLVD
EAST MOLINE, IL 61244-5501

### MOTOR VEHICLE INSURED

Year | Make
2018 | FORD TRANSIT

Vehicle Identification No.
1FBZX2CM0JKB22543

**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT...

### CALL YOUR AGENT...

ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,

220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

P.O. Box 145496, Cincinnati, OH, 45250-5496

**(513) 870-2000**     **AA 4122 IL (10/06)**

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES. **EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

### EXCLUDED DRIVERS:

_____
_____
_____

### SERVICE TO YOU IS OUR MAIN CONCERN

**(cut along line)**

CIC0231



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ETD 051 52 30

**Effective Date:** 12-12-2018

**Named Insured:** THE BEND HOTEL DEVELOPMENT COMPANY LLC

For professional advice and policy questions or changes, please contact your local independent agency:

ARTHUR J. GALLAGHER RISK MANAGEMENT
SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

**IA 4443 04 14**

CIC0232



The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   **01-02-2019**

To:   **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Policy Number:   **ETD 051 52 30**
Expiration Date:   **12-12-2021**
Agency:   **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**

**Data breach and identity recovery support and resources included with your insurance policy**

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium, helping to safeguard your business against the rising costs of a data breach and offering services to assist you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

## Policyholder tools and resources

*Data breach portal* - You gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:

- Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
- Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
- Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

**Access code = 12116–868**

*Identity theft services* – You also receive case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4463 (01/16)**

**Mailing Address:** P.O. Box 145496 ▪ Cincinnati, Ohio 45250-5496 ▪ **Headquarters:** 6200 S. Gilmore Road ▪ Fairfield, Ohio 45014-5141
*www.cinfin.com* ▪ 513-870-2000

**Claims services**

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

Please contact your agent representing Cincinnati with questions about this valuable coverage.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,

COMMERCIAL LINES DEPARTMENT

Commercial Lines

IA4463 (01/16)

CIC0234

☒ **The Cincinnati Insurance Company**
☐ **The Cincinnati Casualty Company**
☐ **The Cincinnati Indemnity Company**

# COMMERCIAL LINES DEPARTMENT SPECIAL REQUEST

Date: <u>01-02-2019</u>

Insured: <u>THE BEND HOTEL DEVELOPMENT COMPANY LLC</u>

Policy Number: <u>ETD 051 52 30 / ETA 051 52 30</u>

To Agent: <u>ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001</u>

☐ **1.** Coverage has been issued subject to satisfactory driver information. Please complete the enclosed form(s) and return promptly.

☒ **2.** Please return one signed copy of the enclosed endorsement. **IP425 CP1515**

☐ **3.** Please countersign the enclosed policy and return to the producer of record in the enclosed envelope.

☐ **4.** The MVR(s) for _____ has been returned from the state showing the license number is incorrect. Please forward the correct driver's license number(s) or Social Security number (GA, IN, IA, KY, OH, VA).

☐ **5.** The state requires us to report the complete VIN. Please supply us with the entire VIN for every vehicle.

☐ **6.** Please forward a **signed** Statement of Values. This is required whenever Blanket Insurance or Agreed Valued coverage is written.

☐ **7.** A completed _____ application is required. Please submit as soon as possible.

☐ **8.** We suggest that you send a letter to the insured making them aware of the endorsement and the consequences of its application.

☐ **9.** This policy / endorsement has been issued subject to rate. We have ordered the loss costs, and we will endorse the policy when we receive them.

☐ **10.** Please complete and forward the **FA-492**, Actual Loss Sustained Business Income Worksheet. These are required annually.

☐ **11.** Please forward a photograph of the building located at _____ .

☐ **12.** The property (Loc. Number _____ Item Number _____) doesn't appear to be insured to value. Please advise how you determined the current limits.

☐ **13.** Please let us know when the following were updated for each building over 25 years old:

Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____
Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____

☐ **14.** Please find enclosed an Excess UM/UIM Selection Form(s) to be completed and signed by the insured.
Forms attached for Commercial Umbrella and any related Personal Umbrella(s): _____
_____

Thank you.

Cordially,

**COMMERCIAL LINES DEPARTMENT**

**MI1302 06 11**

# BUSINESS INCOME REPORT/WORK SHEET

Date  01-02-2019

Your Name  THE BEND HOTEL DEVELOPMENT COMPANY LLC

Location

This work sheet must be completed on an accrual basis.

The beginning and ending inventories in all calculations should be based on the same valuation method.

---

**APPLICABLE WHEN THE AGREED VALUE COVERAGE OPTION APPLIES:**

I certify that this is a true and correct report of values as required under this policy for the periods indicated and that the Agreed Value for the period of coverage is $ _____ ,based on a Co-insurance percentage of _____ %

Signature

Official Title

---

**APPLICABLE WHEN THE PREMIUM ADJUSTMENT FORM APPLIES:**

I certify that this is a true and correct report of values as required under this policy for the 12 months ended _____

Signature

Official Title

Agent or Broker

Mailing Address

CIC0236

**BUSINESS INCOME REPORT/WORK SHEET**
**FINANCIAL ANALYSIS**

|  | | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|---|
| **Income and Expenses** | | **Manufacturing** | **Non-Manufacturing** | **Manufacturing** | **Non-Manufacturing** |
| **A.** | Gross Sales | $ _____ | $ _____ | $ _____ | $ _____ |
| **B.** | DEDUCT: Finished Stock Inventory (at sales value) at Beginning | - _____ | XXXXXX | - _____ | XXXXXX |
|  |  | _____ | XXXXXX | _____ | XXXXXX |
| **C.** | ADD: Finished Stock Inventory (at sales value) at End | + _____ | XXXXXX | + _____ | XXXXXX |
| **D.** | Gross Sales Value of Production | $ _____ | XXXXXX | $ _____ | XXXXXX |
| **E.** | DEDUCT: Prepaid Freight - Outgoing | - _____ | - _____ | - _____ | - _____ |
|  | Returns & Allowances | - _____ | - _____ | - _____ | - _____ |
|  | Discounts | - _____ | - _____ | - _____ | - _____ |
|  | Bad Debts | - _____ | - _____ | - _____ | - _____ |
|  | Collection Expenses | - _____ | - _____ | - _____ | - _____ |
| **F.** | Net Sales |  | $ _____ |  | $ _____ |
|  | Net Sales Value of Production | $ _____ |  | $ _____ |  |
| **G.** | ADD: Other Earnings from your business operations (not investment income or rents from other properties): Commissions or Rents | + _____ | + _____ | + _____ | + _____ |
|  | Cash Discounts Received | + _____ | + _____ | + _____ | + _____ |
|  | Other | + _____ | + _____ | + _____ | + _____ |
| **H.** | Total Revenues | $ _____ | $ _____ | $ _____ | $ _____ |

CIC0237

|  | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
| Income and Expenses | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
| --- | --- | --- | --- | --- |
| Total Revenues (Line **H.** from previous page | $ _____ | $ _____ | $ _____ | $ _____ |
| | _____ | _____ | _____ | _____ |
| **I.** DEDUCT: Cost of goods sold (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| Cost of services purchased from outsiders (not your employees) to resell, that do not continue under contract | - _____ | - _____ | - _____ | - _____ |
| Power, heat and refrigeration expenses that do not continue under contract (if **CP 15 11** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| All ordinary payroll expenses or the amount of payroll expense excluded (if **CP 15 10** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| Special deductions for mining properties (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
| **J.1.** Business Income exposure for 12 months | $ _____ | _____ | _____ | _____ |
| **J.2.** Combined (firms engaged in manufacturing & non-manufacturing operations) | $ _____ | | $ _____ | |

**J.2.** The figures in **J.1. or J.2** represent 100% of your actual and estimated Business Income exposure for 12 months

**K.** Additional Expenses:

**1.** Extra Expenses - form **CP 00 30** only (expenses incurred to avoid or minimize suspension of business & to continue operations)

|  |  |  | $ _____ | $ _____ |
| --- | --- | --- | --- | --- |

**2.** Extended Business Income

**CP 15 15 06 95**  Copyright, Insurance Services Office, Inc., 1994                    **Page 3 of 5**

CIC0238

and Extended Period of Indemnity - form **CP 00 30** or **CP 00 32** (loss of Business Income following resumption of operations, up to 30 days or the no. of days selected under Extended Period of Indemnity option)

+ _____    + _____

**3.** Combined (all amounts in **K.1.** and **K.2.**)

$ _____

"Estimated" column

**L.**   Total of **J.** and **K.**

$ _____

The figure in **L.** represents 100% of your estimated Business Income exposure for 12 months, and additional expenses.  Using this figure as information, determine the approximate amount of insurance needed based on your evaluation of the number of months needed (may exceed 12 months) to replace your property, resume operations and restore the business to the condition that would have existed if no property damage had occurred.

Refer to the agent or Company for information on available Coinsurance levels and indemnity options.  The Limit of Insurance you select will be shown in the Declarations of the policy.

**Supplementary Information**

| | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|
| | **Manufacturing** | **Non-Manufacturing** | **Manufacturing** | **Non-Manufacturing** |
| CALCULATION OF COST OF GOODS SOLD | | | | |
| Inventory at beginning of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | $ _____ | $ _____ | $ _____ | $ _____ |
| Add: The following purchase costs: Cost of raw stock (including transportation charges) | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of factory supplies consumed | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of merchandise sold including transportation charges (for manufacturing risks, means cost of merchandise sold but not manufactured by you) | + _____ | + _____ | + _____ | + _____ |
| Cost of other supplies consumed (including transportation charges) | + _____ | + _____ | + _____ | + _____ |
| Cost of goods available for sale | $ _____ | $ _____ | $ _____ | $ _____ |
| Deduct: Inventory at end of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | - _____ | - _____ | - _____ | - _____ |
| Costs of Goods Sold (Enter this figure in Item **I.** on previous page | $ _____ | $ _____ | $ _____ | $ _____ |

CIC0239

CALCULATION OF SPECIAL
DEDUCTIONS - MINING PROPERTIES

Royalties, unless specifically
included in coverage                    $ _____        $ _____

Actual depletion, commonly known
as unit or cost depletion (not
percentage depletion)                   + _____        + _____

Welfare and retirement fund
charges based on tonnage                + _____        + _____

Hired trucks                            + _____        + _____

Enter this figure in Item **I.** on
previous page                           $ _____        $ _____

CIC0240

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

CIC0241

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below. Following the description of each fee, we list the states where the fee applies and the amount of the fee. Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**

# THE CINCINNATI INSURANCE COMPANIES

TO          ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
            DAVENPORT, IA

INSURED **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

AGENCY CODE: **14-001** POLICY NO. **ETD 051 52 30 / ETA 051 52 30** ___(MOD) ___ DATE: **05-04-2020**

TRANSACTION # **9**

| Company Use Only |
|---|
| IR    IN    UN |
| NP    OT |

## CANCELLATION CREDIT MEMO

☐  CORRECTED

☐  FLAT                                              EFFECTIVE DATE
☒  PRO RATA                                          OF CANCELLATION **05-01-2020**

### RETURN PREMIUMS:

CAP _____          BOILER _____

CPP _____          UMBRELLA _____

AUTO _____          OTHER _____

AUDIT-AP/RP _____          **DIRECT BILL POLICY - REFER TO CINCIBILL**

(circle one)

## TOTAL RETURN / ADDITIONAL PREMIUM DUE NOW $ _____

## (SUBSEQUENT INSTALLMENTS, IF ANY, ARE VOID)

**CANCELLATION CALCULATION:**

☐    REPORTER AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐    GENERAL LIABILITY AUDIT HAS BEEN WAIVED.

☐    GL AUDITABLE FIGURES ARE SUBTRACTED FROM THE CAP / CPP LINE.

☐    PREMIUMS AS STATED ABOVE ARE IN AGREEMENT WITH YOUR CALCULATIONS.

☐    AS YOU HAVE NOT CALCULATED A RETURN PREMIUM, OUR FIGURES WILL APPEAR IN OUR ACCOUNT
     CURRENT.

☐    WE NOTE THAT OUR FIGURES DO NOT AGREE WITH YOURS. PLEASE CHECK OUR CALCULATIONS
     AGAINST YOURS AND ADVISE IF YOU STILL DO NOT AGREE.

COMMERCIAL LINES DEPARTMENT

**05-04-2020 13:50**

**MI-1356DB (6/09)**

CIC0243

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
| --- | --- |
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

State | Date Processed
IL | 09-17-2019

Policy No. | Effective Date | Expiration Date
ETA 051 52 30 | 12-12-2019 | 12-12-2020

Insured: THE BEND HOTEL DEVELOPMENT COMPANY LLC

111 BEND BLVD
EAST MOLINE, IL 61244-5501

### MOTOR VEHICLE INSURED

Year | Make
2018 | FORD TRANSIT

Vehicle Identification No.
1FBZX2CM0JKB22543

**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,

220 EMERSON PL STE 200
DAVENPORT, IA 52801-1625

563-322-3521

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

P.O. Box 145496, Cincinnati, OH, 45250-5496

**(513) 870-2000**   **AA 4122 IL (10/06)**

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES. **EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

### EXCLUDED DRIVERS:

_____
_____
_____

### SERVICE TO YOU IS OUR MAIN CONCERN

**(cut along line)**

CIC0244

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY   ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**    THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:**    ETD 051 52 30 / ETA 051 52 30

**Policy Period:**    12-12-2018 to 12-12-2021

**Effective Date of Change:**    12-12-2019

**Endorsement Number:**    8

**Agency Name:**    ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

## Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**    296
This premium is for the time period of 12-12-2019 to 12-12-2020. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1625

563-322-3521

## This is not a bill. No payment is necessary at this time.

IA 4319 08 07

CIC0245

# THE **CINCINNATI INSURANCE COMPANY**

**P.O. BOX 145496, CINCINNATI, OHIO 45250-5496**
**513-870-2000**
A STOCK INSURANCE COMPANY

## AUTOMOBILE / GARAGE
## RENEWAL CERTIFICATE

### ATTACH THIS CERTIFICATE TO YOUR POLICY

| POLICY NUMBER | RENEWAL DATE | EXPIRATION DATE |
|---|---|---|
| ETA 051 52 30 | 12-12-2019 | 12-12-2020 |

NAMED INSURED
**THE BEND HOTEL DEVELOPMENT COMPANY LLC**
**ATTN: RAY STODDARD**
**111 BEND BLVD**
**EAST MOLINE, IL 61244-5501**

AGENCY
**ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
**DAVENPORT, IA**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY UNLESS OTHERWISE SPECIFIED, THE ABOVE NUMBERED POLICY IS RENEWED FOR THE TERM SHOWN ABOVE.

| COVERAGE PROVIDED | |
|---|---|
| AUTOMOBILE - SEE SCHEDULE | PREMIUM $ REFER TO IA102A |

FORMS APPLICABLE AT RENEWAL
**IA528      12/11  HOSPITALITY PROGRAM COMMON POLICY DECLARATIONS**
**IA102A     09/08  SUMMARY OF PREMIUMS CHARGED**
**AA505      03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS**

**09-17-2019 10:37**

Countersigned _____ By _____
(Date)                                          (Authorized Representative)

This is a true and certified copy of the following portions of the policy:

Automobile Liability

_Jennifer Baker_, Assistant Vice President

AA 602 05 09

Includes copyrighted material of Insurance Services Office, Inc., with its permission. ETA 051 52 30    **Page 1 of 2**

CIC0246

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

CIC0247

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ETD 051 52 30 / ETA 051 52 30**      Effective Date: **12-12-2019**

Named Insured:  **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part   **W/EBC** | $ 23,326 |
| Commercial General Liability Coverage Part | $ |
| Commercial Auto Coverage Part | $ 3,140 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 2,500 |
| **DATA DEFENDER COVERAGE PART** | $ 143 |
| **NETWORK DEFENDER COVERAGE PART** | $ 187 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 196 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 29,492 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**IA 102 A 09 08**

CIC0248

# THE CINCINNATI INSURANCE COMPANY

### CINCINNATI, OHIO

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER:  **ETA 051 52 30**
Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**        **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $ Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P. I. endorsement minus $ Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 2 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2, 8, 9 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2, 8, 9 | $ SEE AA4183 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $ Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $ for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4183 | 02/06 | AUTOMOBILE SCHEDULE |
| AA101 | 03/06 | BUSINESS AUTO COVERAGE FORM |
| AA2009 | 01/17 | CHANGES - TOWING AND LABOR |
| AA296 | 07/12 | CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE |

AA 505 03 06        Includes copyrighted material of Insurance Services Office, Inc., with its permission.   ETA 051 52 30        Page 1 of 3

CIC0249

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4004 | 03/06 | ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION |
| AA4044IL | 01/15 | ILLINOIS UNINSURED MOTORISTS COVERAGE |
| AA4045IL | 11/08 | ILLINOIS UNDERINSURED MOTORISTS COVERAGE |
| AA4047IL | 03/98 | IMPORTANT NOTICE TO ILLINOIS INSUREDS DEFENSIVE DRIVING COURSE DISCOUNT FOR SENIOR CITIZENS |
| AA4136IL | 01/15 | ILLINOIS CHANGES |
| AA4168IL | 01/15 | UNINSURED/UNDERINSURED MOTORISTS PROTECTION OPTION SELECTION FORM - ILLINOIS |
| AA4263IL | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| CA0270 | 08/94 | ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL |
| CA2402 | 12/93 | PUBLIC TRANSPORTATION AUTOS |
| AA261 | 07/14 | AUTO MEDICAL PAYMENTS COVERAGE |
| AA265 | 01/16 | CINCIPLUS® BUSINESS AUTO XC® (EXPANDED COVERAGE) ENDORSEMENT |

---

* This policy may be subject to final audit

AA 505 03 06      Includes copyrighted material of Insurance Services Office, Inc., with its permission.   ETA 051 52 30      Page 2 of 3

CIC0250

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                    Beginning on Page

Description of Covered Auto Designation Symbols...........................................................................1
Owned Autos You Acquire After the Policy Begins ........................................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos............................................................................................................ 2

## SECTION II - LIABILITY COVERAGE

Coverage ......................................................................................................................................... 2
Who is an Insured ........................................................................................................................... 2
Coverage Extensions
    Supplementary Payments............................................................................................................ 2
    Out of State................................................................................................................................. 3
Exclusions ....................................................................................................................................... 3
Limit of Insurance............................................................................................................................ 5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage ......................................................................................................................................... 7
Exclusions ....................................................................................................................................... 7
Limit of Insurance............................................................................................................................ 8
Deductible........................................................................................................................................ 8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss .......................................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss.................................................................... 9
    Legal Action Against Us............................................................................................................... 9
    Loss Payment - Physical Damage Coverages.............................................................................. 9
    Transfer of Rights of Recovery Against Others to Us................................................................. 10
General Conditions
    Bankruptcy ................................................................................................................................. 10
    Concealment, Misrepresentation or Fraud................................................................................. 10
    Liberalization .............................................................................................................................. 10
    No Benefit to Bailee - Physical Damage Coverages.................................................................. 10
    Other Insurance ......................................................................................................................... 10
    Premium Audit............................................................................................................................ 10
    Policy Period, Coverage Territory .............................................................................................. 10
    Two or More Coverage Forms or Policies Issued by Us............................................................ 11

## SECTION V - DEFINITIONS ...................................................................................... 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

CIC0251

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number   **ETA  051  52  30**   , effective   **12-12-2019**
The insurance afforded for any automobile is only with respects to such and so many of the coverages as are
indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: **IL**

| | | |
|---|---|---|
| Bodily Injury: | **1,000,000 CSL** | Property Damage:   **INCLUDED** |
| **UM/UIM:** | **1,000,000** | |
| **Med Pay** | **5,000** | |

---

Veh.
No.    Vehicle Information

1    **2018 FORD TRANSIT S/N 1FBZX2CM0JKB22543**                              Class: 5852    Territory 119
    **OTC-COMP DED: 1,000**                                        Coll Ded: **1,000**
                                                                 **COST NEW: 41,550**    ZIP CODE: **61244**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,496 | INCL | 53 | 145 | 436 | 63 | 2,193 |

**ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION**      Class:      Territory
**OTC-COMP DED: N/A**                                  Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 50 | INCL | | | | | 50 |

**BUSINESS AUTO EXPANDED ENDORSEMENT**                         Class:      Territory
**OTC-COMP DED: N/A**                                  Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | | | 100 |

**HIRED AND NON-OWNED**                                      Class:      Territory
**OTC-COMP DED: N/A**                                  Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 541 | INCL | N/A | | | 256 | 797 |

---

SYMBOLS:
| | |
|---|---|
| BI    -- Bodily Injury | SPEC   -- Specified Perils |
| PD    -- Property Damage | COLL   -- Collision |
| MP    -- Medical Payments | UM     -- Uninsured Motorists |
| OTC   -- Other Than Collision (ACV Coverage applies | UIM    -- Underinsured Motorists |
|        unless Stated Amount Value is indicated) | PIP    -- Personal Injury Protection |
| CAC   -- Combined Additional Coverage | T&L    -- Towing and Labor Costs |
| FT&S  -- Fire, Theft, and Supplemental | RR     -- Rental Reimbursement |

CIC0252

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL          DESCRIPTION**

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

    **a.** We already cover all "autos" that you own for that coverage or it replaces

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0253

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

CIC0254

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b.** **Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B.** **Exclusions**

This insurance does not apply to any of the following:

**1.** **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2.** **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3.** **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4.** **Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CIC0255

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

CIC0256

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

CIC0257

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**D. Mobile Equipment Subject to Motor Vehicle Insurance Laws**

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

CIC0258

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0259

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

# SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0260

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

CIC0261

**5.    Other Insurance**

**a.**   For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)**   Excess while it is connected to a motor vehicle you do not own.

**(2)**   Primary while it is connected to a covered "auto" you own.

**b.**   For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.**   Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

**d.**   When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6.    Premium Audit**

**a.**   The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.**   If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7.    Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.**   During the Policy Period shown in the Declarations; and

**b.**   Within the coverage territory.

The coverage territory is:

**a.**   The United States of America;

**b.**   The territories and possessions of the United States of America;

**c.**   Puerto Rico;

**d.**   Canada; and

**e.**   Anywhere in the world if:

**(1)**   A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

**(2)**   The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8.    Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

CIC0262

# SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

    **1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

    **2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

    **1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    **2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

    **a.** That are, or that are contained in any property that is:

        **(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

        **(2)** Otherwise in the course of transit by or on behalf of the "insured";

        **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

    **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

    **(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    **(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

CIC0263

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

**1.** Means:

    **a.** A lease of premises;

    **b.** A sidetrack agreement;

    **c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

    **f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

**2.** Does not include that part of any contract or agreement:

    **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

    **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

**4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **a.** Power cranes, shovels, loaders, diggers or drills; or

    **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

**5.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **b.** Cherry pickers and similar devices used to raise or lower workers.

**6.** Vehicles not described in Paragraphs **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **a.** Equipment designed primarily for:

CIC0264

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 13 of 14

CIC0265

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

CIC0266

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

CIC0267

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

   Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

CIC0268

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| **12-12-2019** | **ETA 051 52 30** |
| Named Insured: | |
| **THE BEND HOTEL DEVELOPMENT COMPANY LLC** | |
| Countersigned by: | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

**THE OLYMPIA COMPANIES INC**

Address:

**PO BOX 508**
**PORTLAND, ME 04112-0508**

**AA 4004 03 06**

CIC0269

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| **12-12-2019** | **ETA 051 52 30** |
| Named Insured: | |
| **THE BEND HOTEL DEVELOPMENT COMPANY LLC** | |
| Countersigned by: | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

**METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY IL DBA QUAD CITY INTERNATIONAL AIRPORT**

Address:

**2200 69TH AVE**
**MOLINE, IL 61265-8315**

**AA 4004 03 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

      **BUSINESS AUTO COVERAGE FORM**
      **GARAGE COVERAGE FORM**
      **MOTOR CARRIER COVERAGE FORM**
      **TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-12-2019 | ETA 051 52 30 |
| Named Insured: | |
| THE BEND HOTEL DEVELOPMENT COMPANY LLC | |

**SCHEDULE**

| Limit of Insurance | |
|---|---|
| $ REFER TO AA4183 | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   **a.** An "uninsured motor vehicle" as defined in Paragraph **F.4.a.** and **b.** because of "bodily injury":

       **(1)** Sustained by the "insured"; and

       **(2)** Cause by an "accident".

   **b.** An "uninsured motor vehicle" as defined in Paragraph **F.4.c.** because of "bodily injury" sustained by the "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim

that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. We will pay under this endorsement only if the limits of insurance under all applicable liability bonds or policies have been partially or fully exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

1. If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

CIC0271

a. Natural persons specifically listed as a Named Insured on this endorsement;

b. "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

c. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

d. Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

2. If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

a. Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

b. Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws.

3. "Bodily injury" sustained by an "insured" while the "insured" is operating, or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse, or a resident relative of such Named Insured, if the "mo-

tor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

4. "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

5. Punitive or exemplary damages.

## D. Limit of Insurance

1. Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Motorists Coverage** shown in the Schedule or the Declarations.

   We will apply the limit shown in the schedule or the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person due to and arising out of any one "accident", and

   b. $50,000 for "bodily injury" to two or more persons due to and arising out of any one "accident".

   This provision will not change our total limit of insurance.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

   We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection benefits, workers' compensation, disability benefits, pension statutes or similar laws, including medical payments made under any statute.

3. The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0272

**E. Changes in Conditions**

The **Conditions** for **Illinois Uninsured Motorists Coverage** are changed as follows:

**1.** With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

**b.** Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

**c.** If the coverage under this endorsement is provided:

**(1)** On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

**2. Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

**a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

**b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

**c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

**3. Transfer of Rights of Recovery Against Others to Us** does not apply.

**4.** The following **Condition** is added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**5. Legal Action Against Us** is replaced by the following:

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Uninsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

**6.** The following **Condition** is added:

**Arbitration**

**a.** If we and an "insured" do not agree:

**(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

**(2)** As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators

Includes copyrighted material of ISO
Properties, Inc., with its permission.

CIC0273

will select a third. If they cannot agree within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

**(1)** Is equal to or less than the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

**(2)** Exceeds the minimum limit for "bodily injury" liability specified by the Illinois Safety Responsibility Law, then the rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.

In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to the amount of damages not exceeding the lesser of either:

**(1)** $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

**(2)** The Limit of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle and bus. "Motor

vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident".

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

**c.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or similar coverage.

However, "uninsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by any governmental unit or agency.

**c.** Designed for use mainly off public roads while not on public roads.

**d.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**e.** For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0274

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Illinois, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-12-2019 | ETA 051 52 30 |
| Named Insured: | |
| THE BEND HOTEL DEVELOPMENT COMPANY LLC | |

**SCHEDULE**

| Limit of Liability | |
|---|---|
| $ REFER TO AA4183 | Each Accident |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle". The "insured" shall be required to prove all elements of the "insured's" claim that are necessary to recover from the owner or operator of the "underinsured" motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

    **a.** The limits of insurance under all applicable liability bonds or policies have

been partially or fully exhausted by payment of judgments or settlements; or

    **b.** A "tentative settlement" has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer and legal representative of such person(s) or organization(s) and we:

        **(1)** Have been given a prompt written notice of such settlement and advance payment to the "insured" equal to the "tentative settlement" within 30 days after receipt of notification; or

        **(2)** We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0275

**B. Who is an Insured**

The following are "insureds":

**1.** If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

   **a.** Natural persons specifically listed as a Named Insured on this endorsement;

   **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

   **c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

   **d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a., b.** or **c.**

**2.** If an entity other than a natural person is listed as the Named Insured on this endorsement, and no natural persons are listed as Named Insureds in the Declarations, the following persons are "insureds":

   **a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

   **b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

**C. Exclusions**

This insurance does not apply to any of the following:

**1.** Any claim settled with the person(s) or organization(s) legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s) without our consent.

**2.** The direct or indirect benefit of any insurer under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law.

**3.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the Coverage Form or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

**4.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without reasonable belief that he or she is entitled to do so.

**5.** Punitive or exemplary damages.

**D. Limit of Insurance**

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims-made or vehicles involved in the "accident", the most we will pay for all damages, including, but not as a separate claim, damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Underinsured Motorists Coverage** shown in the Schedule or the Declarations.

**2.** Except in the event of a "settlement agreement", the limit of insurance provided in this endorsement shall be reduced by all sums available for payment:

   **a.** To the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally liable for the "accident".

   **b.** Under any automobile medical payments coverage. However, the limit of insurance provided in this endorsement shall not be reduced by any sums paid or payable under Social Security disability benefits.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.

We will not make duplicate payment under this endorsement for element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any personal injury protection, workers' compensation, disability benefits, pension statutes or similar law, including medical payments made under any statute

CIC0276

3.  In the event of a "settlement agreement", the maximum limit of insurance provided in this endorsement shall be the amount by which the limit of insurance provided in this endorsement exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

## E. Changes in Conditions

The **Conditions** for **Illinois Underinsured Motorists Coverage** are changed as follows:

1.  With respect to an "underinsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms and **Other Insurance Primary and Excess Insurance** Provisions in the Truckers and Motor Carrier Coverage Forms are replaced by the following:

    If there is other applicable insurance available under one or more policies or provisions of coverage:

    a.  The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

    b.  Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorists insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

    c.  If the coverage under this endorsement is provided:

        (1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

        (2) On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2.  **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

    a.  A person seeking Underinsured Motorists Coverage must promptly notify us in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allow us 30 days to advance payment to that "insured" in an amount equal to the "tentative settlement" to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s).

    b.  File "suit" against the person(s) or organization(s) who may be legally responsible for the "accident" or the insurer or legal representative of such person(s) or organization(s), prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us notice in writing of a "tentative settlement" between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s) and allowing us 30 days to advance payment to that "insured" in an amount equal to that settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s);

    c.  You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought; and

    d.  You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage.

3.  The following is added to **Transfer of Rights of Recovery Against Others to Us:**

    **Transfer of Rights of Recovery Against Others to Us** does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0277

a. Have been given prompt written notice of a "tentative settlement" between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer or legal representative of such person(s) or organization(s); and

b. Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notification:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

b. We also have a right to recover the advanced payment.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. The following **Condition** is added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

5. **Legal Action Against Us** is replaced by the following:

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Underinsured Motorists Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Underinsured Motorists Coverage must be brought within two (2) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

6. The following **Condition** is added:

**Arbitration**

a. If we and an "insured" do not agree:

   (1) Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

   (2) As to the amount of damages that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot aggress within 45 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

   (1) Pay the expenses it incurs; and

   (2) Bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

   (1) Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

   (2) The amount of damages.

F. **Additional Definitions**

As used in this endorsement:

1. "Family member" means a natural person who is related to and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption, and may include a ward or foster child.

2. "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck,

AA 4045 IL 11 08

Includes copyrighted material of ISO
Properties, Inc., with its permission.

Page 4 of 5

CIC0278

semi-tractor, motorcycle and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails or any similar vehicle.

3. "Occupying" means in, upon, getting in, on, out or off.

4. "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s),.

5. "Tentative settlement" means an offer from the person(s) or organization(s) who may be legally responsible for the "accident", or the legal representative of such person(s) or organization(s), to compensate an "insured"

for damages incurred because of "bodily injury" sustained in an "accident" involving an "underinsured motor vehicle".

6. "Underinsured motor vehicle" means a land "motor vehicle" or "trailer" of any type for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable to the "insured" at the time of an "accident" are less than the Limit of Insurance for this coverage or reduced by payments to others injured in the accident to an amount which is less than the Limit of Insurance for this coverage. However, "underinsured motor vehicle" does not include any "motor vehicle":

a. Owned or operated by any self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amount required by that motor vehicle law.

b. Owned by any governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Which is an "uninsured motor vehicle".

e. Owned by, furnished or available for the regular use of any "insured", other than the named insured, or a "family member" of a named insured.

f. For which liability coverage is afforded under this Coverage Form.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0279

# IMPORTANT NOTICE TO ILLINOIS INSUREDS

## DEFENSIVE DRIVING COURSE DISCOUNT
## FOR SENIOR CITIZENS

In accordance with Illinois law, the Secretary of State will provide documentation to those people over age 55 who have successfully completed a defensive driving course.  A discount of 5% will apply to the premiums for Bodily Injury Liability, Property Damage Liability, Medical Payments, and Collision coverages of the vehicle principally operated by any senior citizen who presents such documentation.

**AA 4047 IL 03 98**

CIC0280

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes in Liability Coverage**

1. Paragraph **A.1.b.(3)** of the **Who is an Insured** provision does not apply.

2. Our **Limit of Insurance** applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

    a. $25,000 for "bodily injury" to any one person caused by any one "accident",

    b. $50,000 for "bodily injury" to two or more persons caused by any one "accident", and

    c. $20,000 for "property damage" caused by any one "accident".

    This provision will not change our total **Limit of Insurance**.

**B. Changes in Physical Damage Coverage**

The following is added to the **Limit of Insurance** provision with respect to repair or replacement resulting in better than like kind or quality and supercedes any provision to the contrary:

3. We may deduct for betterment if:

    a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

    b. The deductions are for prior wear and tear, missing parts and rust damages that is reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes in Conditions**

The **Other Insurance** condition is changed by the addition of the following:

Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Liability Coverage under this policy is at least:

    a. $100,000 for "bodily injury" to any one person caused by any one "accident",

    b. $300,000 for "bodily injury" to two or more persons caused by any one "accident", and

    c. $50,000 for "property damage" caused by any one "accident".

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0281

# UNINSURED/UNDERINSURED MOTORISTS
# PROTECTION OPTION SELECTION FORM - ILLINOIS

The laws of Illinois require that automobile liability insurance policies offer Uninsured/Underinsured Motorists Coverage limits equal to the Bodily Injury Limits of the policy to which the coverage attaches. You may, however, select coverage at a lower limit.

**YOU ARE ELECTING TO PURCHASE UNINSURED MOTORISTS LIMITS LESS THAN YOUR BODILY INJURY LIABILITY LIMITS WHEN YOU SIGN THIS FORM.**

Uninsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of uninsured motor vehicles because of bodily injury or death resulting therefrom.

Underinsured Motorists Coverage provides for payment of certain benefits for damages caused by owners or operators of underinsured motor vehicles because of bodily injury or death resulting therefrom.

An Underinsured motor vehicle is a vehicle to which a bodily injury policy or bond applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

Such benefits may include payments for certain medical expenses, lost wages and pain and suffering, subject to limitations and conditions in the policy.

Uninsured/Underinsured Motorist options are available for a modest premium: **PLEASE CONTACT YOUR AGENT** for the exact cost.

## PLEASE SELECT ONE OF THE FOLLOWING:

_____ I select Uninsured/Underinsured Motorists Coverage at the following limits which are lower than the Bodily Injury Liability Limits of my policy.

Thousand Dollars

| LIMITS OF LIABILITY | Split Limit | Single Limit |
|---|---|---|
| | ☐ *25/50 | ☐ 50* |
| | ☐ 50/100 | ☐ 100 |
| | ☐ 100/300 | ☐ 300 |
| | ☐ Other | ☐ Other |

Attached to and forming a part of Policy Number **ETA 051 52 30** and any subsequent renewals, reinstatements, reissuance, replacements, substitutions or amendments of my policy unless I request otherwise in writing

I intend that my selection will apply to me and all other persons or organizations that may be eligible for coverage under this policy.

_____
DATE

_____
INSURED'S SIGNATURE

NOTE: **A.** *Underinsured Motorist Coverage does not apply unless Uninsured Motorist Coverage limits exceed the minimum Financial Responsibility Limits of $25,000 each person/$50,000 each occurrence or $50,000 Single Limit Liability.

      **B.** Please refer to form **AA 4046 IL** for information regarding "Uninsured Motorist Property Damage".

**AA 4168 IL 01 15**

CIC0282

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage will not be provided under this policy.

**AA 4263 IL 04 10**

CIC0283

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**a.** The first Named Insured shown in the Declarations may cancel this policy by mailing us advance written notice of cancellation.

**b.** When this policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation stating the reasons for cancellation.

**(1)** Nonpayment of premium.

**(2)** The policy was obtained through a material misrepresentation.

**(3)** Any "insured" has violated any of the terms and conditions of the policy.

**(4)** The risk originally accepted has measurably increased.

**(5)** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

**(6)** A determination by the Director of Insurance that the continuation of the policy could place us in violation of the Illinois insurance laws.

**c.** If we cancel for nonpayment of premium, we will mail you at least 10 days written notice.

**d.** If this policy is cancelled for other than nonpayment of premium and the policy is in effect:

**(1)** 60 days or less, we will mail you at least 30 days written notice.

**(2)** 61 days or more, we will mail you at least 60 days written notice.

**e.** If this policy in cancelled, we will send you any premium refund due.  If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

**f.** The effective date of cancellation stated in the notice shall become the end of the policy period.

**g.** Our notice of cancellation will state the reason for cancellation.

**h.** A copy of the notice will also be sent to your agent or broker and the loss payee.

**B.** The following is added and supersedes any provision to the contrary:

**NONRENEWAL**

If we decide not to renew or continue this policy, we will mail you, your agent or broker and the loss payee written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period.  If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**C.** **Mailing of Notices**

We will mail cancellation and nonrenewal notices to the last addresses known to us.  Proof of mailing will be sufficient proof of notice.

**CA 02 70 08 94**          Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PUBLIC TRANSPORTATION AUTOS

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

LIABILITY COVERAGE for a covered "auto" licensed or used to transport the public is changed as follows:

The CARE CUSTODY OR CONTROL exclusion does not apply to "property damage" to or "covered pollution cost or expense" involving property of the "insured's" passengers while such property is carried by the covered "auto."

Copyright, Insurance Services Office, Inc., 1993

CIC0285

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

> **BUSINESS AUTO COVERAGE FORM**
> **GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

### A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred and reported to us, for services rendered within three years from the date of the "accident".

### B. Who is an Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

### C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0286

**D. Limit of Insurance**   SEE AA4183

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E. Changes in Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

**1.** The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

**2.** The reference in Other Insurance in the Business Auto and Garage Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CIC0287

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# BUSINESS AUTO XC®
# (EXPANDED COVERAGE)
# ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Who is an Insured - Amended**

SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured is amended by adding the following:

The following are "insureds":

1. Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

   However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

2. Any organization that is newly acquired or formed by you and over which you maintain majority ownership.

   The insurance provided by this provision:

   a. Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

   b. Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

   c. Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

   d. Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such

policy or the exhaustion of such policy's limits of insurance.

3. Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**B. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments is amended by:

1. Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in (2); and

2. Replacing the $250 Limit of Insurance for reasonable expenses with $500 in (4).

**C. Amended Fellow Employee Exclusion**

SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee is modified as follows:

Exclusion 5. Fellow Employee is deleted.

**D. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under SECTION III - PHYSICAL DAMAGE COVERAGE of this Coverage Part are extended to "autos" you hire, subject to the following:

1. The most we will pay for "loss" to any hired "auto" is $35,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

2. The deductible will be equal to the largest deductible applicable to any owned "auto"

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0288

for that coverage, or $1,000, whichever is less.

**3.** Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

**4.** Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $1,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $35,000 limit indicated above.

**E.** **Rental Reimbursement**

**SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

**1.** We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

**2.** We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

    **a.** The number of days reasonably required to repair the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you; or

    **b.** 30 days.

**3.** Our payment is limited to the lesser of the following amounts:

    **a.** Necessary and actual expenses incurred; or

    **b.** $40 per day.

**4.** This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

**5.** We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for

under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions.**

**F.** **Transportation Expense - Higher Limits**

**SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in Extension a. Transportation Expenses.

**G.** **Airbag Coverage**

**SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

**H.** **Loan or Lease Gap Coverage**

**1.** **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

    **a.** The most we will pay for "loss" in any one "accident" is the greater of:

        **(1)** The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

            **(a)** Overdue lease or loan payments;

            **(b)** Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

            **(c)** Security deposits not refunded by the lessor;

            **(d)** Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

            **(e)** Carry-over balances from previous loans or leases, or

        **(2)** Actual cash value of the stolen or damaged property.

    **b.** An adjustment for depreciation and physical condition will be made in de-

CIC0289

termining actual cash value at the time of "loss".

**2.** **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage**:

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**I.** **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**J.** **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

**1.** You, if you are an individual;

**2.** A partner, if you are a partnership;

**3.** An executive officer or insurance manager, if you are a corporation; or

**4.** A member or manager, if you are a limited liability company.

**K.** **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** is amended by adding the following:

If you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**L.** **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

Includes copyrighted material of ISO Properties, Inc., with its permission.

CIC0290

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY   ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:**   ETD 051 52 30 / ETA 051 52 30

**Policy Period:**   12-12-2018 to 12-12-2021

**Effective Date of Change:**   03-21-2019

**Endorsement Number:**   7        (Replaces # 5)

**Agency Name:**   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**    25
This  premium   is for the time period of   03-21-2019   to  12-12-2019.  You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1625

563-322-3521

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number **ETA 051 52 30** | All Other Policy Number **ETD 051 52 30** | Effective Date of Endorsement **03-21-2019** |

Issued to  **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
        **DAVENPORT, IA**                                        Endorsement # 7
                                                                **REPLACES # 5**

---

## PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by                 $ _____

Revised Monthly Installment Payment(s)                        $ _____

---

**It is agreed that the policy is amended as indicated by**  ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual      ☐ Semi-Annual      ☐ Quarterly
☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

AMENDING AA4004 TO INCLUDE:
METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY IL DBA QUAD CITY
INTERNATIONAL AIRPORT
2200 69TH AVE
MOLINE IL  61265

AMENDING PER REVISED AA4183 ATTACHED

---

**08-19-2019 10:18**

CIC0292

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number __ETA 051 52 30__ , effective __03-21-2019__

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
### State: IL

| | | | |
|---|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage: | INCLUDED |
| UM/UIM: | 1,000,000 | | |
| Med Pay | 5,000 | | |

---

Veh.
No.    Vehicle Information

1    2018 FORD TRANSIT S/N 1FBZX2CM0JKB22543                Class: 5852    Territory 119
     OTC-COMP DED: 1,000                      Coll Ded: 1,000
                                              COST NEW: 41,550    ZIP CODE: 61244

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,283 | INCL | 46 | 126 | 379 | 63 | 1,897 |

ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION    Class:    Territory
OTC-COMP DED: N/A                                  Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 50 | INCL | | | | | 50 |

BUSINESS AUTO EXPANDED ENDORSEMENT                  Class:    Territory
OTC-COMP DED: N/A                                  Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | | | 100 |

HIRED AND NON-OWNED                               Class:    Territory
OTC-COMP DED: N/A                                  Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 541 | INCL | N/A | | | 256 | 797 |

---

SYMBOLS:
| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies | UIM | -- Underinsured Motorists |
| | unless Stated Amount Value is indicated) | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

**AA 4183 02 06**                                        **Page 1 of 1**

CIC0293

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED
# PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 03-21-2019 | ETA 051 52 30 |
| Named Insured: | |
| THE BEND HOTEL DEVELOPMENT COMPANY LLC | |
| Countersigned by: | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

## Schedule

Additional Insured

METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY IL DBA QUAD CITY
INTERNATIONAL AIRPORT

Address:

2200 69TH AVE
MOLINE, IL 61265-8315

**AA 4004 03 06**

CIC0294

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:** THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:** ETD 051 52 30 / ETA 051 52 30

**Policy Period:** 12-12-2018 to 12-12-2021

**Effective Date of Change:** 03-21-2019

**Endorsement Number:** 5

**Agency Name:** ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $** 25
This premium is for the time period of 03-21-2019 to 12-12-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

CIC0295

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  **ETA 051 52 30** | All Other<br>Policy Number  **ETD 051 52 30** | Effective Date<br>of Endorsement  **03-21-2019** |

Issued to  **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
      **DAVENPORT, IA**                                   Endorsement #  **5**

---

**PREMIUM INFORMATION**

---

**Additional** Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by              $ _____

Revised Monthly Installment Payment(s)                    $ _____

---

**It is agreed that the policy is amended as indicated by**   ☒

---

☐ **Policy Installment Premium Amended to:**
  ☐ Annual      ☐ Semi-Annual      ☐ Quarterly
☐ **Named Insured**


☐ **Mailing Address**



☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

AMENDING AA4004 TO INCLUDE:
METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY IL DBA QUAD CITY
INTERNATIONAL AIRPORT
2200 69TH AVE
MOLINE IL  61265

AMENDING PER REVISED AA4183 ATTACHED

---

03-22-2019 14:41

**IA 4329 12 09**                                          Page  **1** of  **1**

CIC0296

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 03-21-2019 | ETA 051 52 30 |
| Named Insured:<br><br>THE BEND HOTEL DEVELOPMENT COMPANY LLC | |
| Countersigned by: | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

## Schedule

Additional Insured

METROPOLITAN AIRPORT AUTHORITY OF ROCK ISLAND COUNTY IL DBA QUAD CITY
INTERNATIONAL AIRPORT

Address:

2200 69TH AVE
MOLINE, IL 61265-8315

**AA 4004 03 06**

CIC0297

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number   __ETA 051 52 30__   , effective   __03-21-2019__

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
State: **IL**

| | | |
|---|---|---|
| Bodily Injury: | **1,000,000 CSL** | Property Damage:   **INCLUDED** |
| **UM/UIM:** | **1,000,000** | |
| **Med Pay** | **5,000** | |

---

Veh.
No.    Vehicle Information

**1    2018 FORD TRANSIT S/N 1FBZX2CM0JKB22543**                    Class: **5852**    Territory **119**
   **OTC-COMP DED: 1,000**                            Coll Ded: **1,000**
                                    **COST NEW: 41,550**    **ZIP CODE: 61244**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,283 | INCL | 46 | 126 | 379 | 63 | 1,897 |

**ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION**    Class:      Territory
**OTC-COMP DED: N/A**                            Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 50 | INCL | | | | | 50 |

**BUSINESS AUTO EXPANDED ENDORSEMENT**            Class:      Territory
**OTC-COMP DED: N/A**                            Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | | | 100 |

**HIRED AND NON-OWNED**                    Class:      Territory
**OTC-COMP DED: N/A**                            Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 541 | INCL | N/A | | | 256 | 797 |

SYMBOLS:

| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies | UIM | -- Underinsured Motorists |
| | unless Stated Amount Value is indicated) | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

CIC0298

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY  ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**  THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:**  ETD 051 52 30 / ETA 051 52 30

**Policy Period:**  12-12-2018 to 12-12-2021

**Effective Date of Change:**  02-26-2019

**Endorsement Number:**  4

**Agency Name:**  ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies.  Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $** NONE
This premium  is for the time period of  02-26-2019  to  12-12-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

CIC0299

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number **ETA 051 52 30** | All Other<br>Policy Number **ETD 051 52 30** | Effective Date<br>of Endorsement **02-26-2019** |

Issued to **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
     **DAVENPORT, IA**                                      Endorsement # **4**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date <u>**REFER TO IA4319**</u>

Subsequent Monthly Installments Increased by      $ _____

Revised Monthly Installment Payment(s)      $ _____

---

**It is agreed that the policy is amended as indicated by**  ☒

☒ **Policy Installment Premium Amended to:**
   ☐ Annual    ☐ Semi-Annual    ☐ Quarterly  **(X) MONTHLY**

☐ **Named Insured**

☐ **Mailing Address**

☐ **Form(s) Added**

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

---

02-26-2019 13:52

**IA 4329 12 09**                     **Page 1 of 1**

CIC0300

# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER: **ETD 051 52 30 / ETA 051 52 30**     Effective Date: **02-26-2019**

Named Insured: **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| | |
|---|---|
| Commercial Property Coverage Part   **W/EBC** | $ 23,326 |
| Commercial General Liability Coverage Part | $ |
| Commercial Auto Coverage Part | $ 2,819 |
| Commercial Umbrella / Excess Liability Coverage Part | $ 2,500 |
| **DATA DEFENDER COVERAGE PART** | $ 143 |
| **NETWORK DEFENDER COVERAGE PART** | $ 187 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Terrorism Coverage | $ 196 |
| Installment Charge | $ |
| **ANNUAL TOTAL** | $ 29,171 |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

IA 102 A 09 08

CIC0301

# NOTICE TO POLICY HOLDERS
# ILLINOIS RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

As of June 1, 2011, the Illinois Religious Freedom Protection and Civil Union Act (Civil Union Act) allows opposite- and same-sex couples to enter into a civil union.

The Civil Union Act defines a "civil union" as a legal relationship between two persons, either of the same or opposite sex.  Further, a "party to a civil union" means and shall be included in any definition or use of the terms spouse, family, immediate family, dependent, next of kin, and other terms that denote the spousal relationship.

Under the Civil Union Act, a person in a civil union is entitled to the same legal obligations, responsibilities, protections and benefits as are afforded or recognized by Illinois law to spouses whether they derive from statute, administrative rule, policy, common law or any other source of civil law.

For purposes of insurance laws, policies, eligibility and benefits governed by Illinois law, all spouses are treated identically.

**IA 4399 IL 07 11**

CIC0302

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY   ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**   THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:**   ETD 051 52 30 / ETA 051 52 30

**Policy Period:**   12-12-2018 to 12-12-2021

**Effective Date of Change:**   12-12-2018

**Endorsement Number:**   6

**Agency Name:**   ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $**   NONE
This premium   is for the time period of   12-12-2018   to   12-12-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1625

563-322-3521

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage<br>Policy Number  **ETA 051 52 30** | All Other<br>Policy Number  **ETD 051 52 30** | Effective Date<br>of Endorsement  **12-12-2018** |

Issued to  **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent  **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
　　　　**DAVENPORT, IA**　　　　　　　　　　　　　　　Endorsement #  **6**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date  **REFER TO IA4319** _____

Subsequent Monthly Installments Increased by　　　　　　$ _____

Revised Monthly Installment Payment(s)　　　　　　　　　$ _____

---

**It is agreed that the policy is amended as indicated by　☒**

☐ **Policy Installment Premium Amended to:**
　　☐ Annual　　　☐ Semi-Annual　　　☐ Quarterly

☐ **Named Insured**



☐ **Mailing Address**




☐ **Form(s) Added**


☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING FA104S FLOOD BLANKET SUBLIMIT TO 5,000,000

---

**Auto / Garage Reason for Change**

---

**08-19-2019 10:17**

**IA 4329 12 09**　　　　　　　　　　　　　　　　　　　　**Page  1 of  1**

CIC0304

# THE **CINCINNATI INSURANCE COMPANY**

### A Stock Insurance Company

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ETD 051 52 30**
Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.** **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | | COVERAGE PROVIDED | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Coin-surance | Covered Cause Of Loss | | | | Business Income Indemnity | | | |
| Item | Coverage | Limits | | | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Ind. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| 1-1 | BUILDING | 28,000,000 SEE FA104 | 80% | SPECIAL EQ FLOOD | | X | | X | | | |
| 1-1 | BUSINESS PERSONAL PROPERTY | 5,300,000 SEE FA104 | 80% | SPECIAL EQ FLOOD | | X | | X | | | |
| 1-1 | BUSINESS INCOME W/EXTRA EXPENSE (b) | 4,000,000 SEE FA104 | 80% | SPECIAL EQ FLOOD | | | | X | | | 180 |

DEDUCTIBLE: $500.00 unless otherwise stated $    25,000
EARTHQUAKE DEDUCTIBLE: 5%
FLOOD DEDUCTIBLE: 25,000

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|
| 1-1 | HALL QUAD CITIES LLC / HSF HOLDINGS II LLC |
| | 2323 ROSS AVE |
| | STE 200 |
| | DALLAS, TX 75201-2720 |

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| CP1515 | 06/95 | BUSINESS INCOME REPORT/WORK SHEET |
| FM101 | 05/16 | BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS) |
| FA104S | 05/15 | FLOOD COVERAGE SUPPLEMENTAL SCHEDULE |
| FA104 | 05/16 | FLOOD COVERAGE ENDORSEMENT |
| FA268 | 05/16 | HOTEL COMMERCIAL PROPERTY ENDORSEMENT |
| FA283IL | 05/16 | CRISIS EVENT EXPENSE COVERAGE ENDORSEMENT - ILLINOIS |
| FA286 | 05/16 | THE BRIDGE ENDORSEMENT |
| FA4028IL | 07/17 | ILLINOIS CHANGES |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA458 | 04/04 | BUSINESS INCOME CHANGES - WAITING PERIOD |
| FA480 | 02/16 | LOSS PAYABLE PROVISIONS |
| IP425 | 08/04 | ILLINOIS MINE SUBSIDENCE WAIVER FORM WAIVER OF INSURANCE |
| FA223 | 05/16 | WATER BACKUP DISCHARGED FROM SEWERS, DRAINS, SEPTIC OR SUMP PUMP SYSTEMS ENDORSEMENT |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |

CIC0305

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

```
FA213IL    05/16  BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM - ILLINOIS
FA240      05/16  EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT
```

CIC0306

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:**  THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:**  ETD 051 52 30 / ETA 051 52 30

**Policy Period:**  12-12-2018 to 12-12-2021

**Effective Date of Change:**  12-12-2018

**Endorsement Number:**  3

**Agency Name:**  ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
                  DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $** 25
This premium is for the time period of 12-12-2018 to 12-12-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

### This is not a bill. No payment is necessary at this time.

IA 4319 08 07

CIC0307

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| | | |
|---|---|---|
| Auto / Garage Policy Number **ETA 051 52 30** | All Other Policy Number **ETD 051 52 30** | Effective Date of Endorsement **12-12-2018** |

Issued to **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
        **DAVENPORT, IA**                              Endorsement # **3**

---

## PREMIUM INFORMATION

**Additional** Premium Due at Endorsement Effective Date **REFER TO IA4319** _____

Subsequent Annual Installments Increased by        $ _____

Revised Annual Installment Payment(s)           $ _____

---

**It is agreed that the policy is amended as indicated by** ☒

☐ **Policy Installment Premium Amended to:**
    ☐ Annual    ☐ Semi-Annual    ☐ Quarterly

☐ **Named Insured**

☐ **Mailing Address**

☒ **Form(s) Added**

    AA4004 03/06        ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

---

**Auto / Garage Reason for Change**

ADDING ADDITIONAL INSURED

AMENDING PER REVISED AA4183 ATTACHED

---

01-21-2019 19:04

CIC0308

# AUTOMOBILE SCHEDULE

### ITEM   THREE

Attached to and forming a part of Policy Number   **ETA  051  52  30**   , effective   **12-12-2018**

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

#### POLICY LIMITS
##### State: IL

| | | |
|---|---|---|
| Bodily Injury: | **1,000,000 CSL** | Property Damage:   **INCLUDED** |
| **UM/UIM:** | **1,000,000** | |
| **Med Pay** | **5,000** | |

---

**Veh. No.**   Vehicle Information

**1**   **2018 FORD TRANSIT S/N 1FBZX2CM0JKB22543**                    Class: **5852**    Territory **119**
     **OTC-COMP DED: 1,000**                          Coll Ded: **1,000**
                                        **COST NEW: 41,550**    **ZIP CODE: 61244**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,283 | INCL | 46 | 126 | 379 | 63 | 1,897 |

**ADDITIONAL INTEREST - DESIGNATED PERSON OR ORGANIZATION**       Class:        Territory
**OTC-COMP DED: N/A**                          Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 25 | INCL | | | | | 25 |

**BUSINESS AUTO EXPANDED ENDORSEMENT**                Class:        Territory
**OTC-COMP DED: N/A**                          Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 100 | | | 100 |

**HIRED AND NON-OWNED**                          Class:        Territory
**OTC-COMP DED: N/A**                          Coll Ded: **N/A**

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 541 | INCL | N/A | | | 256 | 797 |

---

SYMBOLS:
| | | | |
|---|---|---|---|
| BI | -- Bodily Injury | SPEC | -- Specified Perils |
| PD | -- Property Damage | COLL | -- Collision |
| MP | -- Medical Payments | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies unless Stated Amount Value is indicated) | UIM | -- Underinsured Motorists |
| | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | RR | -- Rental Reimbursement |

**AA 4183 02 06**                                                  **Page  1  of  1**

CIC0309

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

### BUSINESS AUTO COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: | Policy Number: |
|---|---|
| 12-12-2018 | ETA 051 52 30 |
| Named Insured:<br><br>THE BEND HOTEL DEVELOPMENT COMPANY LLC | |
| Countersigned by: | |

(Authorized Representative)

The person or organization named in the following schedule is an "insured" to the extent of their liability for the conduct of another "insured" as provided in **SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured,** Paragraph **c.**

**Schedule**

Additional Insured

THE OLYMPIA COMPANIES INC

Address:

PO BOX 508
PORTLAND, ME 04112-0508

**AA 4004 03 06**

CIC0310

# THE
# CINCINNATI INSURANCE COMPANIES

☒ THE CINCINNATI INSURANCE COMPANY ☐ THE CINCINNATI INDEMNITY COMPANY
☐ THE CINCINNATI CASUALTY COMPANY

**Named Insured:** THE BEND HOTEL DEVELOPMENT COMPANY LLC

**Policy Number:** ETD 051 52 30 / ETA 051 52 30

**Policy Period:** 12-12-2018 to 12-12-2021

**Effective Date of Change:** 12-12-2018

**Endorsement Number:** 2

**Agency Name:** ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001
DAVENPORT, IA

### Explanation of Billing

A change was recently made to your policy with The Cincinnati Insurance Companies. Attached to this summary is the endorsement that amends your policy.

**The additional premium for this endorsement is $** NONE
This premium is for the time period of 12-12-2018 to 12-12-2019. You will receive a statement based on the payment option you have selected.

Please contact your agency if you have any questions concerning your policy or statement:
ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

### This is not a bill. No payment is necessary at this time.

**IA 4319 08 07**

CIC0311

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of:

| Auto / Garage | All Other | Effective Date |
|---|---|---|
| Policy Number **ETA 051 52 30** | Policy Number **ETD 051 52 30** | of Endorsement **12-12-2018** |

Issued to **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Agent **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**
        **DAVENPORT, IA**                                              Endorsement # **2**

---

## PREMIUM INFORMATION

Premium Due at Endorsement Effective Date <u>**REFER TO IA4319**</u>

Subsequent Annual Installments Increased by              $ _____

Revised Annual Installment Payment(s)                    $ _____

---

**It is agreed that the policy is amended as indicated by   ☒**

☐ **Policy Installment Premium Amended to:**
    ☐ Annual        ☐ Semi-Annual        ☐ Quarterly

☐ **Named Insured**



☐ **Mailing Address**




☒ **Form(s) Added**

   FA480 02/16        LOSS PAYABLE PROVISIONS

☐ **Form(s) Deleted**

---

**All Other Reason for Change**

AMENDING FM502 MORTGAGE HOLDER TO INCLUDE 1-1:
HALL QUAD CITIES LLC / HSF HOLDINGS II LLC
2323 ROSS AVE
STE 200
DALLAS TX  75201

ADDING LOSS PAYABLE

---

**Auto / Garage Reason for Change**




01-08-2019 19:54

**IA 4329 12 09**                                                    **Page  1 of  1**

CIC0312

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

## SCHEDULE

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 1 | 1 | | B |

HALL QUAD CITIES LLC / HSF HOLDINGS II LLC
2323 ROSS AVE
STE 200
DALLAS, TX 75201-2720

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

1. Adjust losses with you; and

2. Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

1. The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

2. For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

      **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

CIC0313

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

CIC0314

| x | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
| --- | --- |
| | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
| | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

State        Date Processed
IL             01-03-2019

Policy No.      Effective Date     Expiration Date
ETA 051 52 30     12-12-2018      12-12-2019

Insured: THE BEND HOTEL DEVELOPMENT COMPANY LLC

111 BEND BLVD
EAST MOLINE, IL 61244-5501

### MOTOR VEHICLE INSURED

Year     Make
2018     FORD TRANSIT
Vehicle Identification No.
1FBZX2CM0JKB22543
**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES,

220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

P.O. Box 145496, Cincinnati, OH, 45250-5496

**(513) 870-2000**      **AA 4122 IL (10/06)**

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES. **EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

### EXCLUDED DRIVERS:

_____
_____
_____

### SERVICE TO YOU IS OUR MAIN CONCERN

**(cut along line)**

CIC0315



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ETD 051 52 30

**Effective Date:** 12-12-2018

**Named Insured:** THE BEND HOTEL DEVELOPMENT COMPANY LLC

For professional advice and policy questions or changes, please contact your local independent agency:

ARTHUR J. GALLAGHER RISK MANAGEMENT
SERVICES, INC.
220 EMERSON PL STE 200
DAVENPORT, IA 52801-1699

563-322-3521

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

**IA 4443 04 14**

CIC0316



The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   **01-03-2019**

To:   **THE BEND HOTEL DEVELOPMENT COMPANY LLC**

Policy Number:   **ETD 051 52 30**
Expiration Date:   **12-12-2021**
Agency:   **ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001**

**Data breach and identity recovery support and resources included with your insurance policy**

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium, helping to safeguard your business against the rising costs of a data breach and offering services to assist you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

## Policyholder tools and resources

*Data breach portal* - You gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:
- Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
- Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
- Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

**Access code = 12116-868**

*Identity theft services* – You also receive case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4463 (01/16)**

**Mailing Address:** P.O. Box 145496 • Cincinnati, Ohio 45250-5496 ■ **Headquarters:** 6200 S. Gilmore Road • Fairfield, Ohio 45014-5141
*www.cinfin.com* ■ 513-870-2000

CIC0317

Page 2 of 2

**Claims services**

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

Please contact your agent representing Cincinnati with questions about this valuable coverage.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,

**COMMERCIAL LINES DEPARTMENT**

Commercial Lines

IA4463 (01/16)

CIC0318

☒ **The Cincinnati Insurance Company**
☐ **The Cincinnati Casualty Company**
☐ **The Cincinnati Indemnity Company**

# COMMERCIAL LINES DEPARTMENT SPECIAL REQUEST

Date: <u>01-03-2019</u>

Insured:   <u>THE BEND HOTEL DEVELOPMENT COMPANY LLC</u>

Policy Number:   <u>ETD 051 52 30 / ETA 051 52 30</u>

To Agent:   <u>ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC. 14-001</u>

☐ **1.** Coverage has been issued subject to satisfactory driver information. Please complete the enclosed form(s) and return promptly.

☒ **2.** Please return one signed copy of the enclosed endorsement. **IP425 CP1515**

☐ **3.** Please countersign the enclosed policy and return to the producer of record in the enclosed envelope.

☐ **4.** The MVR(s) for _____ has been returned from the state showing the license number is incorrect. Please forward the correct driver's license number(s) or Social Security number (GA, IN, IA, KY, OH, VA).

☐ **5.** The state requires us to report the complete VIN. Please supply us with the entire VIN for every vehicle.

☐ **6.** Please forward a **signed** Statement of Values. This is required whenever Blanket Insurance or Agreed Valued coverage is written.

☐ **7.** A completed _____ application is required. Please submit as soon as possible.

☐ **8.** We suggest that you send a letter to the insured making them aware of the endorsement and the consequences of its application.

☐ **9.** This policy / endorsement has been issued subject to rate. We have ordered the loss costs, and we will endorse the policy when we receive them.

☐ **10.** Please complete and forward the **FA-492**, Actual Loss Sustained Business Income Worksheet. These are required annually.

☐ **11.** Please forward a photograph of the building located at _____ .

☐ **12.** The property (Loc. Number _____ Item Number _____) doesn't appear to be insured to value. Please advise how you determined the current limits.

☐ **13.** Please let us know when the following were updated for each building over 25 years old:

Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____
Bldg. _____ Yr. built _____ Electrical _____ Heating _____ Plumbing _____ Roof _____

☐ **14.** Please find enclosed an Excess UM/UIM Selection Form(s) to be completed and signed by the insured.
Forms attached for Commercial Umbrella and any related Personal Umbrella(s): _____
_____

Thank you.

Cordially,

**COMMERCIAL LINES DEPARTMENT**

**MI1302 06 11**

# BUSINESS INCOME REPORT/WORK SHEET

Date    01-03-2019

Your Name    THE BEND HOTEL DEVELOPMENT COMPANY LLC

Location    _____

_____

This work sheet must be completed on an accrual basis.

The beginning and ending inventories in all calculations should be based on the same valuation method.

---

**APPLICABLE WHEN THE AGREED VALUE COVERAGE OPTION APPLIES:**

I certify that this is a true and correct report of values as required under this policy for the periods indicated and that the Agreed Value for the period of coverage is $ _____ ,based on a Co-insurance percentage of _____ %

Signature    _____

Official Title    _____

---

**APPLICABLE WHEN THE PREMIUM ADJUSTMENT FORM APPLIES:**

I certify that this is a true and correct report of values as required under this policy for the 12 months ended _____

Signature    _____

Official Title    _____

Agent or Broker    _____

Mailing Address    _____

**CP 15 15 06 95**  Copyright, Insurance Services Office, Inc., 1994

CIC0320

**BUSINESS INCOME REPORT/WORK SHEET**
**FINANCIAL ANALYSIS**

|  | 12 Month Period Ending ___ | | Estimated for 12 Month Period Beginning ___ | |
|---|---|---|---|---|
| **Income and Expenses** | **Manufacturing** | **Non-Manufacturing** | **Manufacturing** | **Non-Manufacturing** |
| **A.** Gross Sales | $ _____ | $ _____ | $ _____ | $ _____ |
| **B.** DEDUCT: Finished Stock Inventory (at sales value) at Beginning | - _____ | XXXXXX | - _____ | XXXXXX |
|  | _____ | XXXXXX | _____ | XXXXXX |
| **C.** ADD: Finished Stock Inventory (at sales value) at End | + _____ | XXXXXX | + _____ | XXXXXX |
| **D.** Gross Sales Value of Production | $ _____ | XXXXXX | $ _____ | XXXXXX |
| **E.** DEDUCT: Prepaid Freight - Outgoing | - _____ | - _____ | - _____ | - _____ |
| Returns & Allowances | - _____ | - _____ | - _____ | - _____ |
| Discounts | - _____ | - _____ | - _____ | - _____ |
| Bad Debts | - _____ | - _____ | - _____ | - _____ |
| Collection Expenses | - _____ | - _____ | - _____ | - _____ |
| **F.** Net Sales | | $ _____ | | $ _____ |
| Net Sales Value of Production | $ _____ | | $ _____ | |
| **G.** ADD: Other Earnings from your business operations (not investment income or rents from other properties): Commissions or Rents | + _____ | + _____ | + _____ | + _____ |
| Cash Discounts Received | + _____ | + _____ | + _____ | + _____ |
| Other | + _____ | + _____ | + _____ | + _____ |
| **H.** Total Revenues | $ _____ | $ _____ | $ _____ | $ _____ |

CIC0321

|  | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
|---|---|---|---|---|
| **Income and Expenses** | **Manufacturing** | **Non-Manufacturing** | **Manufacturing** | **Non-Manufacturing** |
| Total Revenues (Line **H.** from previous page | $ _____ _____ | $ _____ _____ | $ _____ _____ | $ _____ _____ |

**I.** DEDUCT:

| Cost of goods sold (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |
|---|---|---|---|---|
| Cost of services purchased from outsiders (not your employees) to resell, that do not continue under contract | - _____ | - _____ | - _____ | - _____ |
| Power, heat and refrigeration expenses that do not continue under contract (if **CP 15 11** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| All ordinary payroll expenses or the amount of payroll expense excluded (if **CP 15 10** is attached) | - _____ | - XXXXXX | - _____ | - XXXXXX |
| Special deductions for mining properties (see next page for instructions) | - _____ | - _____ | - _____ | - _____ |

**J.1.** Business Income exposure for 12 months    $ _____    _____    _____    _____

**J.2.** Combined (firms engaged in manufacturing & non-manufacturing operations)    $ _____    $ _____

The figures in **J.1. or J.2** represent 100% of your actual and estimated Business Income exposure for 12 months

**K.** Additional Expenses:

   **1.** Extra Expenses - form **CP 00 30** only (expenses incurred to avoid or minimize suspension of business & to continue operations)    $ _____    $ _____

   **2.** Extended Business Income

CIC0322

and Extended Period of Indemnity - form **CP 00 30** or **CP 00 32** (loss of Business Income following resumption of operations, up to 30 days or the no. of days selected under Extended Period of Indemnity option)

   **3.** Combined (all amounts in **K.1.** and **K.2.**)

+ _____  + _____

$ _____

"Estimated" column

**L.**   Total of **J.** and **K.**

$ _____

The figure in **L.** represents 100% of your estimated Business Income exposure for 12 months, and additional expenses.  Using this figure as information, determine the approximate amount of insurance needed based on your evaluation of the number of months needed (may exceed 12 months) to replace your property, resume operations and restore the business to the condition that would have existed if no property damage had occurred.

Refer to the agent or Company for information on available Coinsurance levels and indemnity options.  The Limit of Insurance you select will be shown in the Declarations of the policy.

| | Supplementary Information | | | |
| | 12 Month Period Ending _____ | | Estimated for 12 Month Period Beginning _____ | |
| | Manufacturing | Non-Manufacturing | Manufacturing | Non-Manufacturing |
|---|---|---|---|---|
| CALCULATION OF COST OF GOODS SOLD | | | | |
| Inventory at beginning of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | $ _____ | $ _____ | $ _____ | $ _____ |
| Add: The following purchase costs: Cost of raw stock (including transportation charges) | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of factory supplies consumed | + _____ | XXXXXX | + _____ | XXXXXX |
| Cost of merchandise sold including transportation charges (for manufacturing risks, means cost of merchandise sold but not manufactured by you) | + _____ | + _____ | + _____ | + _____ |
| Cost of other supplies consumed (including transportation charges) | + _____ | + _____ | + _____ | + _____ |
| Cost of goods available for sale | $ _____ | $ _____ | $ _____ | $ _____ |
| Deduct: Inventory at end of year (Including raw material and stock in process, but not finished stock, for manufacturing risks) | - _____ | - _____ | - _____ | - _____ |
| Costs of Goods Sold (Enter this figure in Item **I.** on previous page | $ _____ | $ _____ | $ _____ | $ _____ |

CIC0323

**CALCULATION OF SPECIAL
DEDUCTIONS - MINING PROPERTIES**

Royalties, unless specifically
included in coverage                          $ _____        $ _____

Actual depletion, commonly known
as unit or cost depletion (not
percentage depletion)                         + _____        + _____

Welfare and retirement fund
charges based on tonnage                      + _____        + _____

Hired trucks                                  + _____        + _____

Enter this figure in Item **I.** on
previous page                                 $ _____        $ _____

CIC0324

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

- Payments previously applied to your account are deferred.

- The credit that results from the endorsement or audit is applied to the policy generating the credit.

- The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

- Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

- If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

- If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

CIC0325

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below. Following the description of each fee, we list the states where the fee applies and the amount of the fee. Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**

CIC0326